

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COPY

RICHARD WOJTCZAK )
           Plaintiff, )
  vs. )
Pa. Dept. of Corrections, )
          Defendant, et al )
Jeffery A. Beard, Ph.D., )
          Defendant, et al )
Kenneth Kyler, )
          Defendant, et al )
P. Yarger, )
          Defendant, et al )
Roger Kimber, M.D., )
          Defendant, et al )
P. Everhart, )
          Defendant, et al )
Scott Walters, )
          Defendant, et al )

CIVIL ACTION

1: CV No. 01-1163

FILED
SCRANTON

JUN 26 2001

PER _____
DEPUTY CLERK

Claim under:

Americans with Disabilities
Act of 1990 - Rehabilitation
Act of 1973

MEMORANDUM OF LAW

IN SUPPORT OF

42 U.S.C. §1983;

AMERICANS WITH DISABILITIES ACT OF 1990

REHABILITATION ACT OF 1973

CAUSE OF ACTION

Respectfully Submitted,

_Richard Wojtczak_

Richard Wojtczak AF-5977
1100 Pike Street
Huntingdon, PA 16654-1112

Dated: 6-11-01

## TABLE OF CITATIONS

Anderson v. Coughlin, 757 F.2d 33, 35 (2nd Cir. 1985)

Bledsoe v. Palm Beach City Soil & Water Conserv., 133 F.3d 816, 824-825 (11th Cir. 1998)

Bonner v. Lewis, 857 F.2d 559, 561-564 (9th Cir. 1988)

Davidson v. Coughlin, 968 F.Supp. 121, 130 (S.D.N.Y. 1997)

Dertz v. City of Chicago, 912 F.Supp. 319, 328-329 (N.D.Ill. 1995)

Durmer v. O'Carroll, 991 F.2d 64, 68 (3rd Cir. 1993)

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976)

Eversole v. Steele, 59 F.3d 710 (7th Cir. 1995)

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994)

Finley v. Giacoffe, 827 F.Supp. 215, 219 (S.D.N.Y. 1993)

Green v. Johnson, 977 F.2d 1383, 1391 (10th Cir. 1992)

Harris v. Thigpen, 941 F.2d 1495, 1521-1522 (11th Cir. 1990)

Johnson v. Glick, 481 F.2d 1028, 1033-34 (2nd Cir.) cert. denied, 94 S.Ct. 462 (1973)

Jolly v. Coughlin, 76 F.3d 468, 480 (2nd Cir. 1996)

May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)

Mitchell v. Keane, 974 F.Supp. 332 (S.D.N.Y. 1997)

Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2nd Cir. 1991)

Nolan v. Wheatley, 835 F.Supp. 476, 482 (N.D.Ind. 1993)

Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952 (1998)

Pembaur v. Cincinnatti, 475 U.S. 469, 106 S.Ct. 1292 (1986)

Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392 (1981)

Roe v. County Com'n of Monongalia County, 926 F.Supp. 74, 76-77 (N.D.W.Va. 1996)

Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)

Rouse v. Plantuer, 987 F.Supp. 308 (D.N.J. 1997)

Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990)

Sostre v. McGinnis, 442 F.2d 178, 193, n.25 (2nd Cir. 1971)

White v. Napoleon, 897 F.2d 103, 109–111 (3rd Cir. 1990)

Williams v. Goord, 111 F.Supp. 280 (S.D.N.Y. 2000)

Williams v. Greifinger, 97 F.3d 699, 704 (2nd Cir. 1996)

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991)

Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990)

Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994)

### CONSTITUTIONAL PROVISIONS

U.S. Constitution, Eighth Amendment

U.S. Constitution, Fourteenth Amendment

### STATUTORY PROVISIONS

28 U.S.C. §1391(b)

28 U.S.C. §1331

28 U.S.C. §1343

42 U.S.C. §1983

42 U.S.C. §12101 et seq.

### OTHER PROVISIONS

Americans with Disabilities Act of 1990, I, II – Rehabilitation Act of 1973

Pa. Dept. of Corrections Policy Statement DC–ADM 006 – Reasonable Accommodations for inmates with Disabilities

## MEMORANDUM OF LAW

Your Plaintiff, Richard Wojtczak, is a qualified individual with disabilities.  The defendants at all times named herein, in their entirety, discriminated against this Plaintiff because of his disabilities, thereby causing Plaintiff unnecessary pain, suffering and injury.  This Plaintiff brings this action before the Court by the Americans with Disabilities Act of 1990 - Rehabilitation Act of 1973, with a 42 U.S.C. §1983 Civil Action.  Plaintiff's disabilities include: insulin dependant diabetic; degenerating bone disease in both knees, hips, disc in spine; respiratory conditions - CQPD (Chronic Obstructive Pulmonary Disease) - shortness of breath - high blood pressure - some emphysema; and a cyst condition.  All of Plaintiff's disabilities are well documented in Plaintiff's medical files at SCI Huntingdon, Penna..  Each defendant, at all times, did have full knowledge of Plaintiff's disabilities.

In the latter part of the year 2000, Plaintiff's degenerating bone disease deteriorated to where he could no longer walk to and from the dining hall, albeit with a cane, to eat his meals.  An order was approved for Plaintiff to eat his meals in his cell. This order was approved, for Plaintiff to eat his meals in his cell, for 6 months, to December 2001.  On Oct. 5, 2000, Plaintiff was told that the "feed in his cell order" had been terminated.  Plaintiff then spoke to Defendant Scott Walters and Walters told Plaintiff that he had taken care of "feed in order" . . . "the order has

come down, everything is taken care of." Still, Plaintiff was not
fed at all! On Oct. 6, 2000, <u>Defendant R. Kimber, M.D.</u>, Medical
Director, told Plaintiff that he would NO longer be fed in his cell,
this was an "inconvenience for the guards" and Plaintiff would have
to walk to the dining hall like everyone else. <u>Defendant Kimber</u>
told Plaintiff the "deputy superintendent" told him (Kimber) this.
The Plaintiff, because of his disability, could NOT walk to and
from the dining hall to eat, yet, the defendants still would NOT
feed Plaintiff in his cell. From Oct. 5, 2000 to Nov. 8, 2000,
Defendants <u>P. Yarger</u>, <u>Roger Kimber, M.D.</u>, <u>P. Everhart</u> and <u>Scott</u>
<u>Walters</u> knew that Plaintiff was NOT being fed, and yet did nothing
about Plaintiff's meals.

There can be no more basic need, minimal, civilized measure
of life's necessities than "prison officials" feeding inmates.
<u>Williams v. Greifinger</u>, 97 F.3d 699, 704 (2nd Cir. 1996); <u>Anderson</u>
<u>v. Coughlin</u>, 757 F.2d 33, 35 (2nd Cir. 1985); <u>Sostre v. McGinnis</u>,
442 F.2d 178, 193, n.25 (2nd Cir. 1971); see also <u>Rouse v. Plantuer</u>,
987 F.Supp. 308 (D.N.J. 1997)(were meals served appropriate for
their diabetic condition?). Deprivation of food for any substan-
tial period of time, violates the Constitution. <u>Green v. Johnson</u>,
977 F.2d 1392, 1391 (10th Cir. 1992); <u>Woods v. Thieret</u>, 903 F.2d
1080, 1082 (7th Cir. 1990). An absolute essential component in
<u>treating diabetes is food intake</u>. This is to say there must be a
balance between the food intake and amount of insulin taken.

Plaintiff takes 260 units of insulin per day, with 3 injec-

- 3 -

tions per day.  Plaintiff must eat at least 3 meals per day in or-
der to achieve the insulin - food balance required to keep his di-
abetes under control.

On numerous occasions this Plaintiff spoke with Defendants
Kimber; Everhart; and Walters about NOT being fed and the effects
this was having on his diabetes, yet, the defendants did nothing!

Because Plaintiff was not being fed, there was no insulin -
food balance, Plaintiff's diabetes was out of control.  Plaintiff
experienced headaches, dizziness, blurry vision, nausia, stomach
pain, overall body pain, lightheadiness and faintness.  The defen-
dants did know all of this and still placed Plaintiff's life in a
lifethreatening situation.  This wanton state of mind by the defen-
dants goes far beyond "negligence - malpractice", far beyond "deli-
berate indifference."

Deliberate indifference is where the prison official knows of
a prisoner's need for "medical treatment" but intentionally refuses
to provide it, delays necessary medical treatment based on nonmedi-
cal reasons.  The defendants persisted to deny Plaintiff meals even
in the face of resultant pain and risk of permanent injury.  Durmer
v. O'Carrol, 991 F.2d 64, 68 (3rd Cir. 1993); White v. Napoleon,
897 F.2d 103, 109-111 (3rd Cir. 1990).  See slso Rouse v. Plantier,
987 F.Supp at 196-198.  This Honorable Court must take special no-
tice that while the defendants were not feeding the Plaintiff in
his cell, other inmates on Plaintiff's cell block were being fed
in their cells!

The defendants' acts deprived Plaintiff of the minimal civil-

- 4 -

ized measure of life's necessities.  <u>Williams v. Goord</u>, 111 F.Supp.
280 (S.D.N.Y. 2000); <u>Rhodes v. Chapman</u>, 101 S.Ct. 2392 (1981).
This <u>wanton state of mind</u> by the defendants goes far beyond mere
<u>deliberate indifference</u>.  <u>Estelle v. Gamble</u>, 97 S.Ct. 285 (1976).
The defendants' acts grossly disregarded Plaintiff's serious medi-
cal needs.  <u>Estelle</u>, supra.  The defendants' <u>deliberate indiffer-
ence</u>, and <u>wanton state of mind</u>, was reckless, callous, malicious
with total disregard for the infliction of unnecessary pain, suf-
fering and injury on the Plaintiff as to evidence <u>intentional mis-
treatment</u>.  <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986);
<u>White</u>, 897 F.2d at 109; <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir.
1997); <u>Jolly v. Coughlin</u>, 76 F.3d 468, 480 (2nd Cir. 1996).

The <u>deliberate indifference</u> exhibited by the defendants as to
Plaintiff's serious medical conditions and <u>disabilities</u> states a
cause of action.  <u>Estelle</u>, 97 S.Ct. at 291.  Because diabetes is
such a quiet hideous, disabling disease, all the injuries done to
Plaintiff by the defendants' acts, will not come to light until
some future time.  This is the chronicled, historical knowledge of
diabetes.  The defendants had full knowledge of Plaintiff's disa-
bilities, the defendants knew that Plaintiff could not walk to and
from the dining hall to eat, and the defendants knew that they were
not feeding Plaintiff in his cell (albeit the defendants were feed-
ing other inmates, who were on the same cell block as Plaintiff).

The defendants made no "reasonable accommodations" for Plain-
tiff's disabilities, to feed Plaintiff in his cell.  There were no
constraints or burdons facing the defendants, no undue hardships

- 5 -

facing the defendants, administrative, financial, or otherwise, to
feed the Plaintiff in his cell.  <u>Davidson v. Coughlin</u>, 968 F.Supp.
121, 130 (S.D.N.Y. 1997); <u>Wilson v. Seiter</u>, 111 S.Ct. 2321 (1991).
The defendants discriminated against Plaintiff because of his dis-
abilities.  <u>The defendants did not feed Plaintiff at all</u>.  Further
confirmation of the defendants' deliberate indifference, wanton
state of mind, the callous, malicious attempts to intentionally
injure this Plaintiff because he is a disabled person, does not
stop.  This Honorable Court should take particular notice of the
following:

The <u>Pa. Dept. of Corrections</u> is a government entity which is
responsible for the health and safety of the inmates incarcerated
in the State Correctional Institutions in Penna..  The <u>Pa. Dept.
of Corrections issues policies - directives</u> to each State Correc-
tional Institution in Penna., for the maintenance and overall oper-
ation of these State institutions, specifically <u>DC-ADM 006</u> (Attach-
ed hereto).  <u>DC-ADM 006</u> was issued by the Pa. Dept. of Corrections,
effective August 16, 1999.  This policy explains <u>the Americans Dis-
abilities Act of 1990, "Reasonable Accommodations for inmates with
Disabilities"</u>.  With their usual arrogance, the defendants, in
their entirety, completely ignored their own <u>Policies</u>.

Your Plaintiff, Richard Wojtczak, suffers with <u>respiratory
condition disability, Chronic Obstructive Pulmonary Disease (COPD);
shortness of breath; high blood pressure; some emphysema</u>.  These
disabilities are well documented in his medical files at SCI Hun-

tingdon, all of the defendants were well aware of Plaintiff's dis-
abilities.  Because of these respiratory conditions, for the last
several years, Plaintiff was approved to <u>shower</u> in the infirmary -
medical dept..  Due to the heat and steam in the general population
block showers, Plaintiff can not shower there because he gets dizzy,
lightheaded, faint, and on the verge of passing out.  In addition
to the Plaintiff, there were several other inmates <u>showering</u> in the
infirmary - medical dept. for various medical reasons.

On February 27, 2001 the infirmary - medical dept. showers
<u>closed down</u>.  Plaintiff had no where to <u>shower</u>.  The defendants,
made no "Reasonable Accommodations" for your disabled Plaintiff to
<u>shower</u>.  From <u>February 27, 2001 to April 4, 2001</u>, the defendants
denied Plaintiff to shower.  During this time <u>3 other disabled in-
mates</u> had been approved to shower in the <u>ATA room shower</u>.  At least
two of these inmates showering in the <u>ATA room shower</u> have almost
identical disabilities as Plaintiff, however, your Plaintiff was
<u>not</u> permitted to shower in the <u>ATA room shower</u>.
Your Plaintiff suffers from a serious and painful <u>cyst condi-
tion</u>.  This condition is well documented in Plaintiff's medical
files at ~~SCI~~ Huntingdon, and the defendants are well aware of this
medical condition.  When Plaintiff does not shower regularly he
breaks out in these cysts.  Regular showers are part of the treat-
ment for these cysts.  Cysts occur on face, scalp, and other areas.
They get very large, are painful, and turn into open sores with
discharge.  These cysts cause disgigurement with scarring.  By not

- 7 -

being permitted to shower for over one month, Plaintiff did break
out with these cysts on face, scalp, neck and chest.

Again, these defendants demonstrated their deliberate indif-
ference, wanton state of mind, and gross disregard for Plaintiff's
disabilities.  These defendants' acts were reckless, callous, mali-
cious, with total disregard for the infliction of unnecessary pain,
suffering, injury upon this Plaintiff.  As to evidence intentional
injury to the Plaintiff see Durmer, supra; White, supra; Estelle,
supra; Rogers, supra; May, supra.  The defendants discriminated
against Plaintiff because he is a disabled person.

All of the defendants, in their entirety, are unquestionably
aware and have knowledge of their own policy statement - directive
DC-ADM 006 which describes the Americans Disabilities Act of 1990.
The defendants deprived the Plaintiff of the minimal civilized mea-
sure of life's necessities by not feeding Plaintiff for one month,
and for denying Plaintiff to shower for one month.  Wilson, supra;
Rhodes, supra.  Plaintiff could have showered in the ATA shower,
and this would not have placed an undue burdon, financially or ad-
ministrationally on the defendants.  Davidson, supra; Wilson, supra.

The Defendants, Jeffery A. Beard, Ph.D.; Kenneth Kyler; Pa.
Dept. of Corrections are just as culpable and liable in this cause
of action as are defendants Roger Kimber, M.D.; P. Yarger; P. Ever-
hart; and Scott Walters.  All defendants, at all times, acted under
color of state law and in consort with each other violated Plain-
tiff's 8th and 14th Amendments of the U.S. Constitution, and Plain-
tiff's rights as contained in the Americans with Disabilities Act

- 8 -

of 1990 - Rehabilitation Act of 1973, and did knowingly discrimin-
ate against this Plaintiff because of his disabilities.


The Pa. Dept. of Corrections is a government entity, and is
liable under 42 U.S.C.A. §1983.  Your Plaintiff has named Jeffery
A. Beard, Ph.D. and Kenneth Kyler in their official capacities.
This is equivalent to claims against the Pa. Dept. of Corrections,
a government entity.  Plaintiff respectfully submits that Defendant
Beard has the decision/policy making authority required to create
the government entity liability of the Pa. Dept. of Corrections.

There can be no oversimplification of the terms "final policy-
maker" and "official policymaker" for purposes of establishing
§1983 liability of a government entity.  Government entity liabil-
ity attaches where the decisionmaker possesses final authority to
establish entity policy with respect to the action ordered.   Ever-
sole v. Steele, 59 F.3d 710 (7th Cir. 1995); Pembaur v. Cincinnatti,
106 S.Ct. 1292 (1986).  See also Dertz v. City of Chicago, 912 F.
Supp. 319, 328-329 (N.D.Ill. 1995).


Defendants Beard, Kyler, Yarger, Kimber, Everhart and Walters
have the final authority, possess the authority to enforce the po-
licy statements/directives issued by the Pa. Dept. of Corrections,
specifically DC-ADM 006, that is the source of these violations.

When the decision to adopt a particular form of action is pro-
perly made, by authorized decisionmakers, it surely represents an
act of the official government entity "policy" as that term is

commonly understood.  <u>Pembaur</u>, 106 S.Ct. at 1298-1299.  Defendants
<u>Beard</u>, <u>Kyler</u>, <u>Yarger</u>, <u>Kimber</u>, <u>Everhart</u> and <u>Walters</u> have the decis-
ionmaking authority to enforce compliance with <u>DC-ADM 006</u>.  Under
their supervision, any action, as in this instant case non-action,
taken pursuant to this authority reflects official government en-
tity policy.  Pursuant to this official government policy, these
non-actions subject the Pa. Dept. of Corrections to §1983 liability.


The Courts have determined and use the following <u>multi-prong</u>
<u>test</u> to ascertain if the following elements exist in a particular
case to prove <u>deliberate indifference</u>, <u>wanton state of mind</u> and
<u>wantonness of conduct</u> are present.

(1) Plaintiff must demonstrate that the conditions of his con-
finement result in unquestioned and serious deprivations of basic
human needs;

(2) prison officials' acts must deprive Plaintiff of the min-
imal civilized measures of life's necessities;

(3) duration of the deprivation, extent of the duration, jus-
tification for the deprivation;

(4) did prison officials act with a sufficiently culpable
<u>state of mind</u>;

(5) <s>State</s> of Mind is one of <u>deliberate indifference</u>;

(6) official knows of and disregards an excessive risk to in-
mate's Health and Safety;

(7) defendants had the necessary level of culpability shown
by actions characterized by <u>wantonness</u>, the <u>wantonness of conduct</u>

depends on the constraints facing the official;

(8) acted with <u>deliberate indifference</u> in supervising-managing of subordinates who caused the unlawful event, committed infraction;

(9) would a reasonable official know that their conduct violated clearly established statutory or constitutional rights;

(10) were the contours of the rights sufficiently clear that reasonable officials would understand these contours.


The defendants have <u>failed</u> the "test". <u>Deliberate indifference</u>; <u>wanton state of mind</u>; and <u>wantonness of conduct</u> <u>are all present</u> in this instant case. See <u>Williams</u>, 111 F.3d at 291-294; <u>Rhodes</u>, supra; <u>Farmer v. Brennan</u>, 114 S.Ct. 1970 (1994); <u>Jolly</u>, 76 at 480; <u>Anderson</u>, supra; <u>Wilson</u>, supra; <u>May</u>, supra; <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>Mitchell v. Keane</u>, 974 F.Supp. 332 (S.D.N.Y. 1997); <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2nd Cir. 1991); <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033-34 (2nd Cir.) cert. denied, 94 S.Ct. 462 (1973).



Respectfully Submitted,


Richard Wojtczak AF-5977
1100 Pike Street
Huntingdon, PA 16654-1112

Dated: 6-11-01

**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| REASONABLE ACCOMMODATIONS FOR INMATES WITH DISABILITIES | DC-ADM 006 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| June 28, 1999 | *Martin F. Horn* | August 16, 1999 |

## I.  AUTHORITY

The authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  PURPOSE

The purpose of this document is to establish policy and procedure regarding reasonable accommodations for disabled inmates who qualify under the Americans with Disabilities Act (ADA).

## III.  APPLICABILITY

This policy is applicable to all Department of Corrections employees, contract staff, and inmates.

## IV.  DEFINITIONS

### A. ADA

The Americans with Disabilities Act (ADA) is a comprehensive civil rights law for people with disabilities. The Act prohibits a "public entity" from discriminating against a "qualified individual with a disability" because of that individual's disability.[1]

---

[1] Federal Register, Vol. 56, No. 144, Friday, July 26, 1991 (28 C.F.R. §35.102)

## B. Auxiliary Aids and Services

Refers to qualified interpreters, note takers, transcription services, writte[n]
telephone handset amplifiers, assistive listening systems, telephones con[...]
hearing aids, closed caption decoders, open and closed captioning,
telecommunications devices for deaf persons (TDD's), videotext displays[...]
effective methods of making aurally delivered materials available to indiv[...]
hearing impairments; qualified readers, taped texts, or other effective me[...]
making visually delivered materials available to individuals with visual imp[...]
acquisition or modification of equipment or devices; and other similar serv[...]
actions.[2]

## C. Centralized ADA Coordinator

The Chief Hearing Examiner will serve as the Centralized ADA Coordinat[...]
reviewing ADA grievances pursuant to Department policy **DC-ADM 804**, [...]
**"Consolidated Inmate Grievance Review System"**.  At the time of this [...]
the Centralized ADA Coordinator is Chief Hearing Examiner Robert S. Bit[...]
address for the Centralized ADA Coordinator is Training Academy, 1451 [...]
Street, Elizabethtown, PA, 17022-1299.  His phone number is (717) 367-9[...]

## D. Department

The Pennsylvania Department of Corrections.

## E. Direct Threat

A significant risk of substantial harm to the health or safety of any person
disability that cannot be eliminated or reduced by reasonable accommoda[...]

## F. Disability

**For purposes of coverage** under the Americans with Disabilities Act (A[...]
with a **qualified disability** is defined as an individual who:[3]

1. has a **physical or mental impairment that substantially limits one**
   **major life activities**; or

2. has a record or history of such an impairment; or

3. is perceived or regarded as having such an impairment.

The following conditions **do not constitute** disabilities: transvestitism, tra[...]
pedophilia, exhibitionism, voyeurism, gender identity disorders not result[...]
physical impairments, other sexual disorders, compulsive gambling, klept[...]

---

2 ADA Title II Action Guide (28 C.F.R. §35.104)
3 ADA Title II Action Guide (28 C.F.R. §35.104)

pyromania. psychoactive substance abuse disorders resulting from current illegal use of drugs, the current use of illegal drugs, homosexuality or bisexuality.[4]

### G. Essential Job Function

The fundamental job duties of the position the individual with a disability holds or seeks The term <u>essential function</u> does not include the marginal functions of the position.

### H. Facility ADA Coordinator

XX The Facility Health Care Administrator will serve as the Facility ADA Coordinator for reviewing ADA claims submitted by inmates.

### XX I. Major Life Activities

Means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[5]

### XX J. Physical or Mental Impairments (which affects a major life activity)

Physical impairments include physiological disorders or conditions; cosmetic disfigurement; or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs (which would include speech organs that are not respiratory such as vocal cords, soft palate, tongue, etc.);
XX respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.[6]

XX Specific examples of physical impairments include orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, HIV disease (symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.[7]

Mental impairments include mental or psychological disorders, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.[8]

### K. Qualified Individual with a Disability

An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

---

4 ADA Title II Action Guide (28 C.F.R. §35.104)
XX 5 ADA Title II Action Guide (28 C.F.R. §35.104) •
XX 6 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
7 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
8 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)

requirements for the receipt of services or the participation in programs or activities provided by a public entity.[9]

### L.  Reasonable Accommodation

A modification or adjustment to a job or work environment that will enable a qualified applicant or employee with a disability to participate in the application process or perform all the essential job functions and which does not create an undue hardship for the employer.

### M.  Undue Hardship

An action requiring significant difficulty or expense in this implementation of an accommodation under this Act.

## V.  POLICY

It is the policy of the Department of Corrections to establish procedure for an inmate to request an accommodation for a qualified disability under the Americans with Disabilities Act (ADA) that affects a major life activity and to ensure that:

A.  Every inmate, including an inmate with an ADA qualified disability, shall be housed in a manner that provides for his or her safety and security, with security being the overriding concern; and that

B.  Reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on the Department; and that

C.  Reasonable accommodations will be made to the physical structure of housing used by inmates with ADA qualified disabilities to accommodate for the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;[10] and that

D.  Reasonable accommodations will be made to facility programs and activities to permit participation by ADA qualified inmates with disabilities;[11] and that

E.  No ADA qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department.[12]

---

9 ADA Title II Action Guide (28 C.F.R. §35.104)
10 ACA Standard ACI-3-4137, 1-ABC-2C-08, 3-ACRS-2C-04
11 ACA Standard 1-ABC-3D-04
12 ACA Standard ACI Supplement 1998 3-4265, 3-4380-1, 3-ACRS-3D-03

## VI.  PROCEDURES

### A. Facility Placement

#### 1. Facility Placement[13]

In addition to all other factors considered by the Department in making facility assignments of inmates, consideration may be given to facilities and programming available at various facilities to accommodate an inmate's particular disability(s)[14]

#### 2. Community Corrections Center Placement

In addition to all other factors considered by the Department in making assignments of inmates for Community Corrections Placement, disabled inmates who are accepted for Community Corrections Placement, shall be placed in Community Corrections Centers or contracted facilities that provide accommodations according to the individual needs of the inmate.

#### 3. Transfers

The sending facility is responsible for material submitted requesting the transfer of disabled inmates from one facility to another. Clear indication that the inmate is disabled and the proposed level of accommodation and resulting services needed must be included.[15]

#### 4. Request for Accommodation

a. An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department shall submit a written request for accommodation on form **DC-135A, "Inmate's Request to Staff Member"** to the Facility ADA Coordinator or designee.

b. The **DC-135A** must include the inmate's specific disability(s) and the specific accommodation or service the inmate seeks.

c. The Facility ADA Coordinator or designee shall evaluate the request, assess the claim for medical validity, evaluate the inmate's needs (if any), and recommend accommodations that may be necessary.

d. The Facility ADA Coordinator will submit the recommendations to the Facility Manager and the Regional Deputy Secretary for final determination. The safety and security of the inmate and the security of the facility will always be the overriding concern.

---

13 ACA Standard ACI 3-4360
14 ACA Standard 3-ACRS-4A-01, 3-ACRS-5A-01
15 ACA Standard ACI 3-4360

    e.  The Facility Manager will notify the inmate in writing of the final determination within 20 working days of the inmate making the initial request.

    f.  An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department may submit a grievance under Department policy **DC-ADM 804, "Consolidated Inmate Grievance Review System"** Such grievance must state the inmate's specific disability or disabilities and the specific accommodation or service the inmate seeks. The Centralized ADA Coordinator will conduct final review of all ADA grievances pursuant to DC-ADM 804.

## B. Inmate Work Programs

1.  No inmate will be discriminated against from participating in work programs due to a disability. The Department is required to make reasonable accommodations to the known disability of qualified inmate applicants with disabilities. Compensation and job titles will be in accordance with Department policy, **7.9.1, "Inmate Compensation System"**.[16]

2.  Accommodations that pose undue hardships for the Department or pose a threat to security need not be provided. Inmates will not be placed in a work program which clearly jeopardizes their safety or security.

## VII. SUSPENSION DURING EMERGENCY

In an emergency or extended disruption of normal facility operation, any provision or section of this policy may be suspended by the Secretary or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX.    RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.   Release of Information

#### 1.   Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and or inmates upon request.

#### 2.   Procedure Manual (if applicable)

The procedure manual for this policy is not public information and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee.  This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B.   Distribution of Policy

#### 1.   General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2.   Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.    SUPERSEDED POLICY AND CROSS-REFERENCE

### A.   Superseded Policy

#### 1.   Department Policy

08.02.18, Americans with Disabilities Act of 1990 , issued June 17, 1996 by Secretary Martin F. Horn

#### 2.   Facility Policy and Procedure

This document supersedes all facility policy and procedures on this subject.

B. Cross References

   1. Administrative Manuals

      a. DC-ADM 804, "Consolidated Inmate Grievance Review System"

      b. 07.09.01, "Inmate Compensation System"

   2. Accreditation Standards

      a. **Administration of Correctional Agencies** – 2-CO-4E-01

      b. **Adult Correctional Institutions** - 3-4343, 3-4344, 3-4345, 3-4346, 3-4356, 3-4360, 3-4265, 3-4380-1, 3-4137, 3-4396, 3-4272, 3-4273, 3-4358

      c. **Adult Community Residential Services** – 3-ACRS-4E-28, 3-ACRS-2C-09, 3-ACRS-3D-03, 3-ACRS-4A-01, 3-ACRS-5A-01, 3-ACRS-4E-08, 3-ACRS-4E-11,3-ACRS-2A-01, 3-ACRS-2A-02, 3-ACRS-4E-22

      d. **Adult Correctional Boot Camp Programs** – 1-ABC-4E-19, 1-ABC-4E-20, 1-ABC-4E-21, 1-ABC-4E-23, 1-ABC-2A-01, 1-ABC-2A-02, 1-ABC-2C-08, 1-ABC-3D-04, 1-ABC-4A-03, 1-ABC-5A-03

      e. **Correctional Training Academies** – None