In the United States District Court

Middle District of Pennsylvania

Richard Wojtczak,
                    Plaintiff

V.S.

Penna. Dept. of Corrections,
                    Defendants et al

and

Jeffery A. Beard, Ph.D., et al
Kenneth Kyler, et al
P. Yarger, et al
R. Kimber M.D, et al
P. Everhart, et al
S. Walters, et al
                    Defendants

Civil Action

1: CV01-1163

FILED
SCRANTON

JAN 21 2004

PER _____ DEPUTY CLERK

ADA - RA

Plaintiff's

Amended Civil Action Complaint

Respectfully Submitted

s/ Richard Wojtczak

/s/ Richard Wojtczak AF 5977
S C I Laurel Highlands
5706 Glades Pike PO B/ 631
Somerset, Pa. 15501-0636
c/c
New address

FiLED : (            )

New Address

# 10A. Table of Citations

Camp V. Brennan, 219 F.3d 1279 (3 Cir. 2000) at 281 [2]

Carroll V. Lightner, 143 F.3d 1210 (9 Cir. 1998)

Koslow V. Pennsa, 302 F.3d 161, 179 (3 Cir. 2002)

Malone V. Godinez, 1997 U.S. Dist. Lexis 6201, 1997 W.L. 222,945 (N.D. Ill. 1997)

Miller V. Stanmore, 636 F.2d 986, 991 n.8 (5 Cir. 1981)

Mitchell V. Horn, 1998 W.L. 685058 #2 (E.D. Pa. Sept. 29, 1982)

Nassau County V. Blue, 107 S.Ct. 223 (1997)

Ramirez V. Reno, No. 97-7314 (3 Cir. 1997)

Underwood V. Wilson, 151 F.3d 292, 296 (5 Cir. 1998)

Wendell V. Lesher, 162 F.3d 887, 890 (5 Cir. 1998)

Wyatt V. Leonard, 193 F.3d 876 (6 Cir. 1999)

PLRA

42 USC § 1997e(a)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD WOJTCZAK,                          )    CIVIL ACTION
                        Plaintiff,         )    No. _1:01-CV-01-1163_
        vs.                                )
                                           )    6-11-01 filed
PA DEPT. OF CORRECTIONS,                   )
                Defendant, et al;          )
        and                                )
JEFFERY A. BEARD, Ph.D., individually and in )
his official capacity as Secretary, Penna. )
Dept. of Corrections                       )
                Defendant, et al;          )
        and                                )
KENNETH KYLER, individually and in his offi- )
cial capacity as Superintendent, State Cor- )
rectional Institution (SCIH) Huntingdon  PA )
                Defendant, et al;          )
        and                                )
P. YARGER, individually and in her official )
capacity as Corrections Health  Administrator,)
State Correctional Institution, (SCIH) Hunt- )
ingdon, Penna.                             )
                Defendant, et al;          )
        and                                )
ROGER KIMBER, M.D., individually and in his )
official capacity as Medical Director, State )
Correctional Institution (SCIH) Huntingdon PA )
                Defendant, et al;          )
        and                                )
P. EVERHART, individually and in her official )
capacity as Nurse Supervisor, State Correc- )
tional Institution (SCIH)Huntingdon , PA   )
                Defendant, et al;          )
        and                                )    JURY TRIAL DEMANDED
SCOTT WALTERS, individually and in his of- )
ficial capacity as Unit Manager, State Cor- )   Claims under;
rectional Institution (SCIH)  Huntingdon, PA )  AMERICANS WITH DISABILITIES ACT
                Defendant, et al.          )    of 1990 & REHABILITATION ACT of
                                                1973

## SUMMONS

        You are hereby summoned and required to serve upon Plaintiff Richard Wojtczak,
AF-5977, whose address is 1100 Pike Street, Huntingdon, PA 16654-1112, an answer to
the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by
default will be taken against you for the relief demanded in the complaint.

Dated ___6-11-01___                        _____

                                           Clerk of the Court

**3**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AF-5977
_____

(Inmate Number)

RICHARD WOJTCZAK
_____

(Name of Plaintiff)

1100 PIKE STREET
_____

(Address of Plaintiff)

HUNTINGDON, PA 16654-1112
_____

vs.

PA DEPT. OF CORRECTIONS;
JEFFERY A. BEARD, Ph.D.;
KENNETH KYLER;
PATRICIA YARGER;
ROGER KIMBER, M.D.;
PATTY EVERHART;
SCOTT WALTERS.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

1:01-CV-01-1163
_____

(Case Number)

COMPLAINT

CLAIM UNDER:

AMERICANS WITH DISABILITIES
ACT of 1990 & REHABILITATION
ACT of 1973

TO BE FILED UNDER: __X__ 42 U.S.C. § 1983 - STATE OFFICIALS

_____ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.    Previous Lawsuits

A.    If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

Wojtczak v. Cuyler, 480 F.Supp. 1288 (E.D.Pa. 1979)(J. Becker)

Civil Action against SCI Huntingdon (M.D.Pa. 1980)

Civil Action against Montgomery County Prison PA (1980)

Civil Action against Holmesburg Prison, Phila. PA (1980)

II.    Exhaustion of Administrative Remedies

A.    Is there a grievance procedure available at your institution?
__X__ Yes ____ No

B.    Have you filed a grievance concerning the facts relating to this complaint? Yes
____ Yes __X__ No

If your answer is no, explain why not  do not have to exhaust administrative remedies for Americans With Disabilities Act - Rehabilitation Act

C.    Is the grievance process completed? ____ Yes

4

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use Item B for the names, positions and places of employment of any additional defendants.)

A.    Defendant — _____ See pages 5 to 7 _____ is employed

as _____ at _____

B.    Additional defendants_____ See pages 5 to 7 _____

_____

_____

_____

IV.  Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

1.    _____ See pages 7 to 14 _____

_____

_____

_____

2.    _____

_____

_____

_____

3.    _____

_____

_____

_____

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See pages 19 - 20

1. _____

_____

_____

_____

2. _____

_____

_____

_____

3. _____

_____

_____

_____

Signed this ___11___ day of ___June___, 2001.

_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

___6-11-01___
(Date)

_____
(Signature of Plaintiff)

6

## JURISDICTION OF THE COURT

Your Plaintiff, Richard Wojtczak, is properly before this Court with a claim under the Americans Disabilities Act of 1990, Title I, II, eff. Jan. 1992 and Rehabilitation Act with a 42 U.S.C.A. § 1983 Civil Action Complaint, 42 U.S.C. § 12101 et seq., ~~and Plaintiff does not have to exhaust administrative remedies~~. See Roe v. County Com'n of Monongalia County, 926 F.Supp. 74, 76-77 (N.D.W.Va. 1996); Bledsoe v. Palm Beach Cty. Soil & Water Conserv., 133 F.3d 816, 824-825 (11th Cir. 1998); Dertz v. City of Chicago, 912 F.Supp. 319, 323-325 (N.D.Ill. 1995); Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952 (1998); Nolan v. Wheatley, 835 F.Supp. 476, 482 (N.D.Ind. 1993); Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990); Harris v. Thigpen, 941 F.2d 1495, 1521-1522 (11th Cir. 1991); Bonner v. Lewis, 857 F.2d at 561-564; Finley v. Giacoffe, 827 F.Supp. 215, 219 n.3 (S.D.N.Y. 1993). 28 U.S.C. §§ 1331, 1343; Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391(b); 42 U.S.C. § 12101 et seq..

## INTRODUCTION

Your Plaintiff, Richard Wojtczak, respectfully submits to this Honorable Court that he is a qualified individual with disabilities.

- 4 -

All defendants were at all times material to this action "employees" of the Penna. Dept. of Corrections (DOC), and/or "sub-contractors" employed by the Penna. Dept. of Corrections (DOC).

All defendants did, under color of State law and in consort with each other, violate Plaintiff's rights guaranteed by the <u>8th and 14th Amendments</u> of the U.S. Constitution . . . and Plaintiff's rights as contained in the <u>Americans with disabilities Act of 1990, the Rehabilitation Act</u> . . . <u>Titles I  II; 42 U.S.C. § 12101 et seq.</u> . . . with deliberate indifference, and acted wantonly with gross disregard to the serious life threatening medical conditions of the Plaintiff as to cause unnecessary and wanton infliction of pain and suffering upon your <u>disabled Plaintiff</u>.

## PARTIES

1. Defendant <u>Penna. Dept. of Corrections</u>, official who supervised the defendants who mistreated Plaintiff, who was supposed to know what was going on and keep it from happening. P.O. Box ~~598~~ 2520 Lisburn Rd., Camp Hill, Pa. 17001-0598.

2. Defendant <u>Jeffery A. Beard, Ph.D.</u>, Secretary Penna. Dept. of Corrections, P.O. Box 598, 2520 Lisburn Rd., Camp Hill, Pa. 17001-0598, Official who supervised other defendants who mistreated Plaintiff, who was supposed to know what was going on and keep it

- 5 -

8

from happening.

3. Defendant <u>Kenneth Kyler</u>, Superintendent of the State Correctional Institution at Huntingdon, Penna. (SCIH), 1100 Pike Street, Huntingdon, PA 16652. Official who supervised other defendants who mistreated Plaintiff.

4. Defendant <u>P. Yargar</u>, Corrections Health Care Administrator, State Correctional Institution at Huntingdon, Penna. (SCIH), 1100 Pike Street, Huntingdon, PA 16652. Official who approves, or denies, treatment to inmates, who also supervised other defendants that mistreated Plaintiff.

5. Defendant <u>Roger Kimber, M.D.</u>, Medical Director, State Correctional Institution at Huntingdon, Penna. (SCIH), 1100 Pike Street, Huntingdon, PA 16652. Official who prescribes and delivers treatment to inmates who also participated with other defendants that mistreated Plaintiff.

6. Defendant <u>P. Everhart</u>, Nurse Supervisor, State Correctional Institution at Huntingdon, Penna. (SCIH), 1100 Pike Street, Huntingdon, PA. 16652. Official who supervises treatment delivered to inmates, who also participated with other defendants that mistreated Plaintiff.

7. Defendant <u>Scott Walters</u>, Unit Manager of BA Block, State

- 6 -

9

Correctional Institution at Huntingdon, Penna. (SCIH). 1100 Pike Street, Huntingdon, PA 16652.  Official who supervises and coordinates treatment delivered to inmates, who also participated with other defendants that mistreated Plaintiff.

### STATEMENT OF CLAIM

8. Plaintiff, Richard Wojtczak, is an incarcerated inmate at the State Correctional Institution at Huntingdon, Penna., Penna. Department of Corrections System. (SCIH).

9. Plaintiff is a qualified individual with disabilities. Plaintiff suffers from a chronic, degenerating bone disease in both knees, hips, and disc in spine.  This chronic disease is an incurable medical condition.

10. Even with the use of a cane, it is extremely difficult and painful for Plaintiff to walk long distances, walk for any length of time, standing for any length of time.  It is extremely painful for Plaintiff to walk up and down stairs.

11. Plaintiff is an insulin dependant diabetic, taking 3 injections of insulin per day, 260 units per day.  Plaintiff must eat at least 3 meals per day in order to achieve the insulin-food balance required to keep his diabetes under control.

10

12. <u>Food</u>, eating at least <u>3 meals per day</u> along with <u>taking insulin</u> is part of the treatment of diabetes.

13. Plaintiff also seffers from a <u>cyst condition</u>.  Plaintiff needs to <u>shower</u> regularly as part of the treatment for this <u>cyst</u> condition.  <u>Cysts</u> occur on <u>face and scalp</u> (and other areas), that get very large, are painful, and turn to open sores with a dischage. <u>Cysts</u> cause disfigurement with scarring.

14. Plaintiff also has <u>respiratory conditions</u>, "Chronic Obstructive Pulmonary Disease" (COPD), <u>shortness of breath</u>, <u>high blood pressure</u>, and some <u>emphysema</u>.

15. All of these medical conditions of the Plaintiff are well documented in Plaintiff's medical records at SCIH.  All of the defendants are well aware of Plaintiff's disabling medical conditions.

<u>INSTITUTIONAL MEALS</u>

16. In the latter part of the <u>year 2000</u>, Plaintiff's degener-ating bone disease deteriorated to where he could no longer walk to and from the dining hall <u>to eat his meals</u>.

17. On or about <u>September 30, 2000</u>, Dr. Reiners approved an order for Plaintiff to <u>eat his meals in his cell</u>.  Approval was

- 8 -

only for one week, Plaintiff was told to see <u>Dr. Bardell</u>, acting medical director, to extend this approval.

18. On <u>October 2, 2000</u>, Plaintiff saw <u>Dr. Bardell</u> and he extended said order for Plaintiff <u>to be fed in his cell for 6 months</u>.

19. On <u>October 5, 2000</u>, Plaintiff was told by Sargt. Heckman that "feed in cell order" had been cut/terminated. Plaintiff then spoke with Defendant Scott Walters, Unit Manager of Plaintiff's cell block, and he (Walters) told Plaintiff that he (Walters) had taken care of "feed in" order . . . "the order has come down, everything is taken care of." However, Plaintiff still had not been fed!

20. On <u>October 6, 2000</u>, Defendant R. Kimber, M.D. (the new Medical Director at SCIH) told Plaintiff that he (Kimber) was instructed by the Deputy Superintendent to tell Plaintiff: (a) that he (Plaintiff) would not be fed in his cell [because this was an "inconvenience for the guards"] and; (b) that he (Plaintiff) would have to walk to the dining hall like everyone else! Plaintiff then asked Defendant Kimber the name of the Superintendent of which there was no response!

21. On or about <u>October 5, 2000</u> to <u>November 8, 2000</u>, Plaintiff received <u>no</u> meals from SCIH: (a) because of Defendants

12

Walters' and Kimber's deliberate, willful and wanton refusal to
have meals delivered to Plaintiff's cell, and: (b) because of
Plaintiff's inability to walk to the dining hall due to his
chronic degenerating bone disease in both knees, hips and disc in
spine.

22. On or about <u>October 5, 2000</u> to <u>November 8, 2000</u>, Plaintiff
advised Defendants Kimber, Walters and Everhart, on numerous
occasions, that he (plaintiff) was not being fed by the institution.
The Defendants' answers ranged from no response at all to "I will
let you know", "we are having meetings on that", "I wll get back
to you", "I'll find out", "I'm waiting to hear from medical", t
"I'm waiting to hear from the unit manager", "we are having
meetings to see what is available for you."

23. <u>Richard Wojtczak</u>, your Plaintiff, is a qualified indivi-
dual with diabetes . . . insulin dependant diabetic, degenerating
bone disease in both knees, hips, disc in spine, respiratory
condition - COPD - shortness of breath - high blood pressure, and
some emphysema.  The deliberate indifference and wanton disregard
for Plaintiff's disabilities exhibited by the defendants inflicted
pain and suffering on Plaintiff, placed Plaintiff in a life
threatening condition.  Plaintiff experienced headaches, dizziness,
blurry vision, nausia, stomach pain, overall body pain, light
headiness, faintness, pain from the large cysts, and disfigurement
of face scalp by scarring from these cysts.

13

## PERSONAL HYGIENE - SHOWERS

24. The Defendants' wanton, capricious, reckless disregard for Plaintiff's disabilities and basic human needs continues.

25. Your Plaintiff, Richard Wojtczak, also suffers disabling respiratory conditions . . . COPD, shortness of breath, high blood pressure, some emphysema.  These conditions are also well documented in Plaintiff's medical file at SCI Huntingdon, Pa..  All of the defendants are well aware of these disabling conditions of the Plaintiff.

26. Because of the aforementioned respiratory conditions, for the last several years the Plaintiff was approved to shower in the infirmary-medical dept..  Due to the heat and steam in the general population cell block showers, the Plaintiff cannot shower there because he gets dizzy, lightheaded, faint, and on the verge of passing out.

27. The latest approval for these shower arrangements in the infirmary was granted by Defendant Dr. R. Kimber for one year, until December 2001.  In addition to Plaintiff, there were several other inmates showering in the infirmary-medical dept. for various reasons.

28. On February 27, 2001, Plaintiff was told by medical

staff that he could no longer <u>shower</u> in the infirmary. These "<u>showers</u> were being closed down." Plaintiff was told to contact <u>Defendant Scott Walters</u> as to where Plaintiff was to <u>shower</u>.

29. On <u>February 27, 2001</u>, your Plaintiff wrote a request slip to <u>Defendant Scott Walters</u>, unit manager, as to where he should <u>shower</u>. <u>Defendant Scott Walters</u>' response was "I have asked medical to re-evaluate your ability to shower with the general population. When they respond to me <u>I will let you know</u>.

30. On <u>March 1, 2001</u>, Plaintiff spoke with <u>Defendant Dr. R. Kimber</u>, as to where he was to <u>shower</u>. Plaintiff and <u>Defendant Kimber</u> discussed again Plaintiff's respiratory conditions and his inability to <u>shower</u> in general population cell block <u>showers</u>. <u>Defendant Kimber</u> told Plaintiff that <u>he would let him know where he could shower</u>.

31. On <u>March 14, 2001</u>, Plaintiff spoke with <u>Defendant Patty Everhart</u>, Nurse Supervisor, about where he was to <u>shower</u>. Plaintiff again discussed his respiratory conditions and general population cell block showers. <u>Defendant Everhart</u> informed Plaintiff that she was <u>waiting to hear</u> from <u>Defendant Scott Walters</u> as to what was available for the Plaintiff.

32. On <u>March 14, 2001</u>, Plaintiff asked <u>Defendant Everhart</u> why he could <u>not shower</u> in the ATA room shower. <u>Defendant Everhart</u>

- 12 -

told Plaintiff "that the deputy superintendent said the ATA room shower is off-limits, absolutely NO one is to shower in the ATA room shower. Plaintiff then asked <u>Everhart</u> which "deputy superintendent" told her that? However, there was no response! Plaintiff then explained to <u>Everhart</u> that there were already three inmates showering in the ATA room shower and, still, there was no response from <u>Everhart</u>!

33. The <u>three inmates showering</u> in the <u>ATA room shower</u> . . . <u>one</u> of these inmates has <u>respiratory conditions</u> . . . <u>one</u> of these inmates has leg and back conditions . . . <u>third</u> inmate's medical problems are unknown to Plaintiff.

34. At least two of the inmates showering in the ATA room shower have almost identical medical conditions as Plaintiff, however, Plaintiff still was not permitted to shower in the ATA room shower.

35. From <u>February 27, 2001 to April 4, 2001</u>, the defendants denied Plaintiff to <u>shower</u>. The defendants were well aware of this situation.

36. Plaintiff suffers from a painful and serious <u>cyst condition</u>. This medical condition is well documented in Plaintiff's medical file at SCI Huntingdon, Penna.. The defendants are well aware of this medical condition.

- 13 -

16

37. When Plaintiff does not <u>shower</u> regularly he breaks out in these <u>cysts</u>. These <u>showers</u> are part of the treatment for these <u>cysts</u>. These <u>cysts</u> occur on face and scalp (and other areas), they get very large, are painfull, and they turn into open sores with discharge. These <u>cysts</u> cause disfigurement with scarring.

38. By not being permitted to <u>shower</u> for <u>over one month</u>, Plaintiff did break out with these <u>cysts</u> on face, neck and chest.

## CAUSE OF ACTION

This <u>Cause of Action</u> is to be incorporated against <u>each and all defendants</u> herein as though fully set forth <u>to each and all defendants</u>. The allegations in paragraphs 1 to 38 herein are also incorporated by reference herein as though fully set forth.

<u>Your Plaintiff, Richard Wojtczak, is a qualified individual with disabilities as previously discussed herein</u>. All of the defendants, in their entirety, in this cause of action, has shown deliberate indifference and wanton disregard for the health, safety, and life of this Plaintiff, by intentionally refusing to provide to our disabled Plaintiff, the most basic human needs of minimal civilized measures of life's necessities. This offends the evolving standards of decency and being repugnant to the conscience of mankind . . . did with full knowledge, <u>discriminate against Plaintiff because of his disabilities</u>, did violate Plain-

- 14 -

17

tiff's rights under the 8th and 14th Amendments of the U.S. Constitution — and did violate Plaintiff's rights as contained in the Americans With Disabilities Act of 1990 - Rehabilitation Act of 1973.

Each defendant, at all times, did have full knowledge of Plaintiff's disabilities and did have full knowledge of the Penna. Dept. of Corrections policies - directives - customs.

The Penna. Dept. of Corrections issued a policy statement on June 28, 1999, effective August 16, 1999 . . . "Reasonable Accommodations for inmates with Disabilities", DC-ADM 006.  This policy explains the Americans With Disabilities Act of 1990.

With their usual arrogance, these defendants in their entirety, completely ignored their own policies, specifically DC-ADM 006 . . . did not feed Plaintiff for one month . . . did not allow Plaintiff to shower for one month . . . and did not make "Reasonable Accommodations" for this disabled Plaintiff.  These "accommodations" would Not have created an expense or hardship for the defendants.  Plaintiff could have been fed in his cell.  (Other inmates on the same cell block as Plaintiff were fed in their cells).  Plaintiff could have showered in the ATA room shower. (Other inmates were already showering in the ATA room shower).

Defendants failed to remedy violations against this disabled Plaintiff, with deliberate indifference, and with malicious, wanton state of mind.  The defendants, with deliberate indifference, and malicious, wanton state of mind to Plaintiff's disabilities . . . diabetes, degenerating bone disease, respiratory ailments,

- 15 -

18

cyst condition . . . did injure and cause Plaintiff unnecessary pain and suffering.


Penna. Dept. of Corrections, Defendant, et al is a government entity, which is responsible for the health and safety of the inmates incarcerated in the State Correctional Institutions in Penna.. Penna. Dept. of Corrections issues policies - directives to each state correctional institution in Penna., for the maintenance and overall operations of said institutions. Defendant Jeffery A. Beard, Ph. D., the Secretary, Penna. Dept. of Corrections, is a decisionmaker and has the authority to establish "entity" policy, and the authority to enforce the policy statement-directives issued by the Penna. Dept. of Corrections. This establishes the Penna. Dept. of Corrections liability.


Jeffery A. Beard, Ph.D., Defendant, et al, Secretary, Penna. Dept. of Corrections, is a decisionmaker and has the authority to establish "entity" policy and the authority to enforce "entity policy" and the authority to be certain policy is complied with, specifically DC-ADM 006. Under his supervision any action, in the instant case non-action to enforce compliance with DC-ADM 006 reflects the official government entity policy. In this instant case Defendant Beard failed to enforce compliance with policy DC-ADM 006, at SCI Huntingdon, Penna..


Kenneth K. Kyler, Defendant, et al, Superintendent, State

19

Correctional Institution at Huntingdon, Penna.. Defendant Kyler has the supervisory authority to enforce compliance with DC-ADM 006, at SCI Huntingdon, Penna.. In this instant case, Defendant Kyler failed to enforce compliance with DC-ADM 006 at SCI Huntingdon, Penna..

P. Yarger, Defendant, et al, Corrections Health Care Administrator, State Correctional Institution at Huntingdon, Penna.. Approval Orders by doctors for inmates are recorded by Defendant P. Yarger. Defendant P. Yarger has the supervisory authority to enforce compliance with DC-ADM 006 at SCI Huntingdon, Penna.. In this instant case, Defendant P. Yarger failed to enforce compliance with DC-ADM 006 at SCI Huntingdon, PEnna..

Roger Kimber, M.D., Defendant, et al, Medical Director, State Correctional Institution at Huntingdon, Penna.. Defendant Kimber knows of policy DC-ADM 006 because it addresses medical issues. If Defendant Kimber does not have the authority to enforce compliance with policy DC-ADM 006, Defendant Kimber, himself did not comply with policy DC-ADM.

P. Everhart, Defendant, et al, Nurse Supervisor, State Correctional Institution at Huntingdon, Penna.. Defendant Everhart knows of policy DC-ADM 006 because it addresses medical issues. If Defendant Everhart does not have the authority to enforce compliance with policy DC-ADM 006, Defendant Everhart, herself,

20

failed to comply with policy <u>DC-ADM 006</u>.

<u>Scott Walters, Defendant, et al</u>, Unit Manager, State Correctional Institution at Huntingdon, Penna.. <u>Defendant Walters</u> had full knowledge of Plaintiff's disabilities, and was involved in Plaintiff "being fed", and "showers" for the Plaintiff. <u>Defendant Walters</u> failed to act despite his knowledge of a substantial risk of serious harm to Plaintiff. <u>Defendant Walters</u> knows of policy <u>DC-ADM 006</u> by way of his supervisory position as Unit Manager. If Defendant Walters does not have the authority to enforce compliance with <u>DC-ADM 006</u>, Defendant Walters, himself, failed to comply with <u>DC-ADM 006</u>.

## DEFENDANTS

<u>Penna. Dept. of Corrections</u>; <u>Jeffery A. Beard, Ph.D.</u>; <u>Kenneth Kyler</u> all have the necessary authority to enforce compliance with <u>policy DC-ADM 006</u> . . . and were grossly negligent in the management of subordinates, allowing the discrimination against the Plaintiff because of his disabilities. They failed to act despite their knowledge of substantial risk of serious harm, pain and suffering of disabled inmates - Plaintiff. This failure to act caused Plaintiff unnecessary pain, suffering and injury.

<u>Kenneth Kyler</u>; <u>P. Yarger</u>; <u>Roger Kimber, M.D.</u>; <u>P. Everhart</u>; <u>Scott Walters</u> <u>all</u> have the necessary authority to comply with

21

policy DC-ADM 006.  They were grossly negligent in management,
failing to terminate the discrimination against this Plaintiff
because of his disabilities.  They failed to act despite their
knowledge of substantial risk of serious harm, pain and suffering
to the disabled Plaintiff.  This failure to act caused Plaintiff
unnecessary pain, suffering and injury.

All of the defendants acted with a sufficiently culpable
state of mind.  A state of mind of deliberate indifference shown
by actions characterized by wantoness, a wanton infliction of
pain upon this Plaintiff, causing injury.  The defendants' acts
were a serious deprivation of basic human needs, of the minimal,
civilized measure of life's necessities which a civilized society
can not tolerate, NO, must not tolerate.

## RELIEF

Your Plaintiff, Richard Wojtczak, brings this action against
the defendants in BOTH their individual AND official capacities.

Wherefore, Plaintiff respectfully prays that this Honorable
Court enter Judgment granting Plaintiff:

1. Punitive Damages in the amount of $1,500,000.00 to Plain-
tiff from all defendants and each of them;

- 19 -

22

2. Compensatory Damages in the amount of $1,000,000.00 to Plaintiff from all defendants and each of them;

3. Future Damages in the amount of $500,000.00 to Plaintiff from all defendants and each of them for injuries, medical conditions not yet apparent at $50,000.00 a year for ten years;

4. Trial by Jury on all issues triable by jury;

5. The costs and disbursement of this action, including reasonable attorney fees and costs;

6. All federal monies being given to the PA Dept. of Corrections be terminated until such time as the PA Dept. of Corrections fully complies with the Americans with Disabilities Act of 1990, Rehabilitation Act of 1973;

7. Such other and further relief as the Court deems necessary, appropriate and equitable.

Respectfully submitted,

s/ _Richard Wojtczak_

Richard Wojtczak, pro se
AF-5977
1100 Pike Street
Huntingdon, PA 16654-1112

- 20 -

23

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COPY

RICHARD WOJTCZAK                    )          CIVIL ACTION
                    Plaintiff,      )
          vs.                       )     1: CV No. 01-1163
                                    )          FILED
Pa. Dept. of Corrections,           )          SCRANTON
          Defendant, et al          )
Jeffery A. Beard, Ph.D.,            )          JUN 26 2001
          Defendant, et al          )
Kenneth Kyler,                      )
          Defendant, et al          )     PER _____
P. Yarger,                          )          DEPUTY CLERK
          Defendant, et al          )
Roger Kimber, M.D.,                 )          Claim under:
          Defendant, et al          )
P. Everhart,                        )     Americans with Disabilities
          Defendant, et al          )     Act of 1990 - Rehabilitation
Scott Walters,                      )     Act of 1973
          Defendant, et al          )


MEMORANDUM OF LAW

IN SUPPORT OF

42 U.S.C. §1983;

AMERICANS WITH DISABILITIES ACT OF 1990

REHABILITATION ACT OF 1973

CAUSE OF ACTION


Respectfully Submitted,

_____
_____

Richard Wojtczak AF-5977
1100 Pike Street
Huntingdon, PA 16654-1112

Dated: 6-11-01

24

## TABLE OF CITATIONS

Anderson v. Coughlin, 757 F.2d 33, 35 (2nd Cir. 1985)

Bledsoe v. Palm Beach City Soil & Water Conserv., 133 F.3d 816, 824–825 (11th Cir. 1998)

Bonner v. Lewis, 857 F.2d 559, 561–564 (9th Cir. 1988)

Davidson v. Coughlin, 968 F.Supp. 121, 130 (S.D.N.Y. 1997)

Dertz v. City of Chicago, 912 F.Supp. 319, 328–329 (N.D.Ill. 1995)

Durmer v. O'Carroll, 991 F.2d 64, 68 (3rd Cir. 1993)

Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976)

Eversole v. Steele, 59 F.3d 710 (7th Cir. 1995)

Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994)

Finley v. Giacoffe, 827 F.Supp. 215, 219 (S.D.N.Y. 1993)

Green v. Johnson, 977 F.2d 1383, 1391 (10th Cir. 1992)

Harris v. Thigpen, 941 F.2d 1495, 1521–1522 (11th Cir. 1990)

Johnson v. Glick, 481 F.2d 1028, 1033–34 (2nd Cir.) cert. denied, 94 S.Ct. 462 (1973)

Jolly v. Coughlin, 76 F.3d 468, 480 (2nd Cir. 1996)

May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)

Mitchell v. Keane, 974 F.Supp. 332 (S.D.N.Y. 1997)

Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2nd Cir. 1991)

Nolan v. Wheatley, 835 F.Supp. 476, 482 (N.D.Ind. 1993)

Pa. Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952 (1998)

Pembaur v. Cincinnatti, 475 U.S. 469, 106 S.Ct. 1292 (1986)

Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392 (1981)

Roe v. County Com'n of Monongalia County, 926 F.Supp. 74, 76–77 (N.D.W.Va. 1996)

Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)

Rouse v. Plantuer, 987 F.Supp. 308 (D.N.J. 1997)

Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990)

Sostre v. McGinnis, 442 F.2d 178, 193, n.25 (2nd Cir. 1971)

White v. Napoleon, 897 F.2d 103, 109-111 (3rd Cir. 1990)

Williams v. Goord, 111 F.Supp. 280 (S.D.N.Y. 2000)

Williams v. Greifinger, 97 F.3d 699, 704 (2nd Cir. 1996)

Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991)

Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990)

Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994)

## CONSTITUTIONAL PROVISIONS

U.S. Constitution, Eighth Amendment

U.S. Constitution, Fourteenth Amendment

## STATUTORY PROVISIONS

28 U.S.C. §1391(b)

28 U.S.C. §1331

28 U.S.C. §1343

42 U.S.C. §1983

42 U.S.C. §12101 et seq.

## OTHER PROVISIONS

Americans with Disabilities Act of 1990, II II - Rehabilitation Act of 1973

Pa. Dept. of Corrections Policy Statement DC-ADM 006 - Reasonable Accommodations for inmates with Disabilities

## MEMORANDUM OF LAW

Your Plaintiff, Richard Wojtczak, is a qualified individual with disabilities.  The defendants at all times named herein, in their entirety, discriminated against this Plaintiff because of his disabilities, thereby causing Plaintiff unnecessary pain, suffering and injury.  This Plaintiff brings this action before the Court by the Americans with Disabilities Act of 1990 - Rehabilitation Act of 1973, with a 42 U.S.C. §1983 Civil Action.  Plaintiff's disabilities include: insulin dependant diabetic; degenerating bone disease in both knees, hips, disc in spine; respiratory conditions - CQPD (Chronic Obstructive Pulmonary Disease) - shortness of breath - high blood pressure - some emphysema; and a cyst condition.  All of Plaintiff's disabilities are well documented in Plaintiff's medical files at SCI Huntingdon, Penna..  Each defendant, at all times, did have full knowledge of Plaintiff's disabilities.

In the latter part of the year 2000, Plaintiff's degenerating bone disease deteriorated to where he could no longer walk to and from the dining hall, albeit with a cane, to eat his meals.  An order was approved for Plaintiff to eat his meals in his cell.  This order was approved, for Plaintiff to eat his meals in his cell, for 6 months, to December 2001.  On Oct. 5, 2000, Plaintiff was told that the "feed in his cell order" had been terminated.  Plaintiff then spoke to Defendant Scott Walters and Walters told Plaintiff that he had taken care of "feed in order" . . . "the order has

- 2 -

27

come down, everything is taken care of." Still, Plaintiff was not
fed at all! On Oct. 6, 2000, Defendant R. Kimber, M.D., Medical
Director, told Plaintiff that he would NO longer be fed in his cell,
this was an "inconvenience for the guards" and Plaintiff would have
to walk to the dining hall like everyone else. Defendant Kimber
told Plaintiff the "deputy superintendent" told him (Kimber) this.
The Plaintiff, because of his disability, could NOT walk to and
from the dining hall to eat, yet, the defendants still would NOT
feed Plaintiff in his cell. From Oct. 5, 2000 to Nov. 8, 2000,
Defendants P. Yarger, Roger Kimber, M.D., P. Everhart and Scott
Walters knew that Plaintiff was NOT being fed, and yet did nothing
about Plaintiff's meals.

There can be no more basic need, minimal, civilized measure
of life's necessities than "prison officials" feeding inmates.
Williams v. Greifinger, 97 F.3d 699, 704 (2nd Cir. 1996); Anderson
v. Coughlin, 757 F.2d 33, 35 (2nd Cir. 1985); Sostre v. McGinnis,
442 F.2d 178, 193, n.25 (2nd Cir. 1971); see also Rouse v. Plantuer,
987 F.Supp. 308 (D.N.J. 1997)(were meals served appropriate for
their diabetic condition?). Deprivation of food for any substan-
tial period of time, violates the Constitution. Green v. Johnson,
977 F.2d 1399, 1391 (10th Cir. 1992); Woods v. Thieret, 903 F.2d
1080, 1082 (7th Cir. 1990). An absolute essential component in
treating diabetes is food intake. This is to say there must be a
balance between the food intake and amount of insulin taken.
Plaintiff takes 260 units of insulin per day, with 3 injec-

- 3 -

28

tions per day.  Plaintiff must eat at least 3 meals per day in or-
der to achieve the insulin - food balance required to keep his di-
abetes under control.

On numerous occasions this Plaintiff spoke with Defendants
Kimber; Everhart; and Walters about NOT being fed and the effects
this was having on his diabetes, yet, the defendants did nothing!

Because Plaintiff was not being fed, there was no insulin -
food balance, Plaintiff's diabetes was out of control.  Plaintiff
experienced headaches, dizziness, blurry vision, nausia, stomach
pain, overall body pain, lightheadiness and faintness.  The defen-
dants did know all of this and still placed Plaintiff's life in a
lifethreatening situation.  This wanton state of mind by the defen-
dants goes far beyond "negligence - malpractice", far beyond "deli-
berate indifference."

Deliberate indifference is where the prison official knows of
a prisoner's need for "medical treatment" but intentionally refuses
to provide it, delays necessary medical treatment based on nonmedi-
cal reasons.  The defendants persisted to deny Plaintiff meals even
in the face of resultant pain and risk of permanent injury.  Durmer
v. O'Carrol, 991 F.2d 64, 68 (3rd Cir. 1993); White v. Napoleon,
897 F.2d 103, 109-111 (3rd Cir. 1990).  See slso Rouse v. Plantier,
987 F.Supp at 196-198.  This Honorable Court must take special no-
tice that while the defendants were not feeding the Plaintiff in
his cell, other inmates on Plaintiff's cell block were being fed
in their cells!

The defendants' acts deprived Plaintiff of the minimal civil-

- 4 -

29

ized measure of life's necessities.  <u>Williams v. Goord</u>, 111 F.Supp.

280 (S.D.N.Y. 2000); <u>Rhodes v. Chapman</u>, 101 S.Ct. 2392 (1981).

This <u>wanton state of mind</u> by the defendants goes far beyond mere

<u>deliberate indifference</u>.  <u>Estelle v. Gamble</u>, 97 S.Ct. 285 (1976).

The defendants' acts grossly disregarded Plaintiff's serious medi-

cal needs.  <u>Estelle</u>, supra.  The defendants' <u>deliberate indiffer-

ence</u>, and <u>wanton state of mind</u>, was reckless, callous, malicious

with total disregard for the infliction of unnecessary pain, suf-

fering and injury on the Plaintiff as to evidence <u>intentional mis-

treatment</u>.  <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986);

<u>White</u>, 897 F.2d at 109; <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir.

1997); <u>Jolly v. Coughlin</u>, 76 F.3d 468, 480 (2nd Cir. 1996).

The <u>deliberate indifference</u> exhibited by the defendants as to

Plaintiff's serious medical conditions and <u>disabilities</u> states a

cause of action.  <u>Estelle</u>, 97 S.Ct. at 291.  Because diabetes is

such a quiet hideous, disabling disease, all the injuries done to

Plaintiff by the defendants' acts, will not come to light until

some future time.  This is the chronicled, historical knowledge of

diabetes.  The defendants had full knowledge of Plaintiff's disa-

bilities, the defendants knew that Plaintiff could not walk to and

from the dining hall to eat, and the defendants knew that they were

not feeding Plaintiff in his cell (albeit the defendants were feed-

ing other inmates, who were on the same cell block as Plaintiff).

The defendants made no "reasonable accommodations" for Plain-

tiff's disabilities, to feed Plaintiff in his cell.  There were no

constraints or burdons facing the defendants, no undue hardships

- 5 -

facing the defendants, administrative, financial, or otherwise, to feed the Plaintiff in his cell.  Davidson v. Coughlin, 968 F.Supp. 121, 130 (S.D.N.Y. 1997); Wilson v. Seiter, 111 S.Ct. 2321 (1991). The defendants discriminated against Plaintiff because of his disabilities.  The defendants did not feed Plaintiff at all.  Further confirmation of the defendants' deliberate indifference, wanton state of mind, the callous, malicious attempts to intentionally injure this Plaintiff because he is a disabled person, does not stop.  This Honorable Court should take particular notice of the following:

The Pa. Dept. of Corrections is a government entity which is responsible for the health and safety of the inmates incarcerated in the State Correctional Institutions in Penna..  The Pa. Dept. of Corrections issues policies - directives to each State Correctional Institution in Penna., for the maintenance and overall operation of these State institutions, specifically DC-ADM 006 (Attached hereto).  DC-ADM 006 was issued by the Pa. Dept. of Corrections, effective August 16, 1999.  This policy explains the Americans Disabilities Act of 1990, "Reasonable Accommodations for inmates with Disabilities".  With their usual arrogance, the defendants, in their entirety, completely ignored their own Policies.

Your Plaintiff, Richard Wojtczak, suffers with respiratory condition disability, Chronic Obstructive Pulmonary Disease (COPD); shortness of breath; high blood pressure; some emphysema.  These disabilities are well documented in his medical files at SCI Hun-

- 6 -

31

tingdon, all of the defendants were well aware of Plaintiff's dis-
abilities. Because of these respiratory conditions, for the last
several years, Plaintiff was approved to shower in the infirmary -
medical dept.. Due to the heat and steam in the general population
block showers, Plaintiff can not shower there because he gets dizzy,
lightheaded, faint, and on the verge of passing out. In addition
to the Plaintiff, there were several other inmates showering in the
infirmary - medical dept. for various medical reasons.

On February 27, 2001 the infirmary - medical dept. showers
closed down. Plaintiff had no where to shower. The defendants,
made no "Reasonable Accommodations" for your disabled Plaintiff to
shower. From February 27, 2001 to April 4, 2001, the defendants
denied Plaintiff to shower. During this time 3 other disabled in-
mates had been approved to shower in the ATA room shower. At least
two of these inmates showering in the ATA room shower have almost
identical disabilities as Plaintiff, however, your Plaintiff was
not permitted to shower in the ATA room shower.

Your Plaintiff suffers from a serious and painful cyst condi-
tion. This condition is well documented in Plaintiff's medical
files at Huntingdon, and the defendants are well aware of this
medical condition. When Plaintiff does not shower regularly he
breaks out in these cysts. Regular showers are part of the treat-
ment for these cysts. Cysts occur on face, scalp, and other areas.
They get very large, are painful, and turn into open sores with
discharge. These cysts cause disgigurement with scarring. By not

- 7 -

32

being permitted to shower for over one month, Plaintiff did break
out with these cysts on face, scalp, neck and chest.

Again, these defendants demonstrated their deliberate indif-
ference, wanton state of mind, and gross disregard for Plaintiff's
disabilities.  These defendants' acts were reckless, callous, mali-
cious, with total disregard for the infliction of unnecessary pain,
suffering, injury upon this Plaintiff.  As to evidence intentional
injury to the Plaintiff see Durmer, supra; White, supra; Estelle,
supra; Rogers, supra; May, supra.  The defendants discriminated
against Plaintiff because he is a disabled person.

All of the defendants, in their entirety, are unquestionably
aware and have knowledge of their own policy statement - directive
DC-ADM 006 which describes the Americans Disabilities Act of 1990.
The defendants deprived the Plaintiff of the minimal civilized mea-
sure of life's necessities by not feeding Plaintiff for one month,
and for denying Plaintiff to shower for one month.  Wilson, supra;
Rhodes, supra.  Plaintiff could have showered in the ATA shower,
and this would not have placed an undue burdon, financially or ad-
ministrationally on the defendants.  Davidson, supra; Wilson, supra.

The Defendants, Jeffery A. Beard, Ph.D.; Kenneth Kyler; Pa.
Dept. of Corrections are just as culpable and liable in this cause
of action as are defendants Roger Kimber, M.D.; P. Yarger; P. Ever-
hart; and Scott Walters.  All defendants, at all times, acted under
color of state law and in consort with each other violated Plain-
tiff's 8th and 14th Amendments of the U.S. Constitution, and Plain-
tiff's rights as contained in the Americans with Disabilities Act

- 8 -

33

of 1990 - Rehabilitation Act of 1973, and did knowingly discrimin-
ate against this Plaintiff because of his disabilities.

The Pa. Dept. of Corrections is a government entity, and is
liable under 42 U.S.C.A. §1983.  Your Plaintiff has named Jeffery
A. Beard, Ph.D. and Kenneth Kyler in their <u>official capacities</u>.
This is equivalent to claims against the Pa. Dept. of Corrections,
a government entity.  Plaintiff respectfully submits that Defendant
<u>Beard</u> has the decision/policy making authority required to create
the government entity liability of the Pa. Dept. of Corrections.

There can be no oversimplification of the terms "final policy-
maker" and "official policymaker" for purposes of establishing
§1983 liability of a government entity.  Government entity liabil-
ity attaches where the decisionmaker possesses final authority to
establish entity <u>policy</u> with respect to the action ordered.  <u>Ever-
sole v. Steele</u>, 59 F.3d 710 (7th Cir. 1995); <u>Pembaur v. Cincinnatti</u>,
106 S.Ct. 1292 (1986).  See also <u>Dertz v. City of Chicago</u>, 912 F.
Supp. 319, 328-329 (N.D.Ill. 1995).

Defendants <u>Beard</u>, <u>Kyler</u>, <u>Yarger</u>, <u>Kimber</u>, <u>Everhart</u> and <u>Walters</u>
have the final authority, possess the authority to enforce the po-
licy statements/directives issued by the Pa. Dept. of Corrections,
specifically <u>DC-ADM 006</u>, that is the source of these violations.

When the decision to adopt a particular form of action is pro-
perly made, by authorized decisionmakers, it surely represents an
act of the official government entity "policy" as that term is

- 9 -

34

commonly understood.  Pembaur, 106 S.Ct. at 1298-1299.  Defendants
Beard, Kyler - Yarger, Kimber, Everhart and Walters have the decis-
ionmaking authority to enforce compliance with DC-ADM 006.  Under
their supervision, any action, as in this instant case non-action,
taken pursuant to this authority reflects official government en-
tity policy.  Pursuant to this official government policy, these
non-actions subject the Pa. Dept. of Corrections to §1983 liability.

     The Courts have determined and use the following multi-prong
test to ascertain if the following elements exist in a particular
case to prove deliberate indifference, wanton state of mind and
wantonness of conduct are present.

     (1) Plaintiff must demonstrate that the conditions of his con-
finement result in unquestioned and serious deprivations of basic
human needs;

     (2) prison officials' acts must deprive Plaintiff of the min-
imal civilized measures of life's necessities;

     (3) duration of the deprivation, extent of the duration, jus-
tification for the deprivation;

     (4) did prison officials act with a sufficiently culpable
state of mind;

     (5) State of Mind is one of deliberate indifference;

     (6) official knows of and disregards an excessive risk to in-
mate's Health and Safety;

     (7) defendants had the necessary level of culpability shown
by actions characterized by wantonness, the wantonness of conduct

35

depends on the constraints facing the official;

(8) acted with <u>deliberate indifference</u> in supervising-managing of subordinates who caused the unlawful event, committed infraction;

(9) would a reasonable official know that their conduct violated clearly established statutory or constitutional rights;

(10) were the contours of the rights sufficiently clear that reasonable officials would understand these contours.


The defendants have _failed_ the "test". _Deliberate indifference_; _wanton state of mind_; and _wantonness of conduct_ are all present in this instant case. See _Williams_, 111 F.3d at 291-294; _Rhodes_, supra; _Farmer v. Brennan_, 114 S.Ct. 1970 (1994); _Jolly_, 76 at 480; _Anderson_, supra; _Wilson_, supra; _May_, supra; _Wright v. Smith_, 21 F.3d 496, 501 (2nd Cir. 1994); _Mitchell v. Keane_, 974 F.Supp. 332 (S.D.N.Y. 1997); _Moffitt v. Town of Brookfield_, 950 F.2d 880, 885 (2nd Cir. 1991); _Johnson v. Glick_, 481 F.2d 1028, 1033-34 (2nd Cir.) cert. denied, 94 S.Ct. 462 (1973).


Respectfully Submitted,

Richard Wojtczak AF-5977
1100 Pike Street
Huntingdon, PA 16654-1112

Dated: 6-11-01

- 11 -

36.



**POLICY STATEMENT**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| REASONABLE ACCOMMODATIONS FOR INMATES WITH DISABILITIES | DC-ADM 006 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| June 28, 1999 | *Martin F. Horn* Martin F. Horn | August 16, 1999 |

## I. AUTHORITY

The authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

The purpose of this document is to establish policy and procedure regarding reasonable accommodations for disabled inmates who qualify under the Americans with Disabilities Act (ADA).

## III. APPLICABILITY

This policy is applicable to all Department of Corrections employees, contract staff, and inmates.

## IV. DEFINITIONS

### A. ADA

The Americans with Disabilities Act (ADA) is a comprehensive civil rights law for people with disabilities. The Act prohibits a "public entity" from discriminating against a "qualified individual with a disability" because of that individual's disability.[1]

---

[1] Federal Register, Vol. 56, No. 144, Friday, July 26, 1991 (28 C.F.R. §35.102)

57

### B. Auxiliary Aids and Services

Refers to qualified interpreters, note takers, transcription services, written
telephone handset amplifiers, assistive listening systems, telephones con
hearing aids, closed caption decoders, open and closed captioning,
telecommunications devices for deaf persons (TDD's), videotext displays
effective methods of making aurally delivered materials available to indivi
hearing impairments; qualified readers, taped texts, or other effective me
making visually delivered materials available to individuals with visual imp
acquisition or modification of equipment or devices; and other similar serv
actions.[2]

### C. Centralized ADA Coordinator

The Chief Hearing Examiner will serve as the Centralized ADA Coordinat
reviewing ADA grievances pursuant to Department policy **DC-ADM 804,**
**"Consolidated Inmate Grievance Review System"**.  At the time of this
the Centralized ADA Coordinator is Chief Hearing Examiner Robert S. Bit
address for the Centralized ADA Coordinator is Training Academy, 1451
Street, Elizabethtown, PA, 17022-1299.  His phone number is (717) 367-

### D. Department

The Pennsylvania Department of Corrections.

### E. Direct Threat

A significant risk of substantial harm to the health or safety of any person
disability that cannot be eliminated or reduced by reasonable accommoda

### F. Disability

**For purposes of coverage** under the Americans with Disabilities Act (AD
with a **qualified disability** is defined as an individual who:[3]

1. has a **physical or mental impairment that substantially limits one**
**major life activities**; or

2. has a record or history of such an impairment; or

3. is perceived or regarded as having such an impairment.



The following conditions do not constitute disabilities: transvestitism, tran
pedophilia, exhibitionism, voyeurism, gender identity disorders not resulti
physical impairments, other sexual disorders, compulsive gambling, klept

---

2 ADA Title II Action Guide (28 C.F.R. §35.104)
3 ADA Title II Action Guide (28 C.F.R. §35.104)

pyromania, psychoactive substance abuse disorders resulting from current illegal use of drugs, the current use of illegal drugs, homosexuality or bisexuality.[4]

G. **Essential Job Function**

The fundamental job duties of the position the individual with a disability holds or seeks. The term essential function does not include the marginal functions of the position.

H. **Facility ADA Coordinator**

XX The Facility Health Care Administrator will serve as the Facility ADA Coordinator for reviewing ADA claims submitted by inmates.

XX I. **Major Life Activities**

Means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[5]

XX J. **Physical or Mental Impairments (which affects a major life activity)**

Physical impairments include physiological disorders or conditions; cosmetic disfigurement; or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs (which would include speech organs that are not respiratory such as vocal cords, soft palate, tongue, etc.);

XX respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.[6]

XX Specific examples of physical impairments include orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, HIV disease (symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.[7]

Mental impairments include mental or psychological disorders, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.[8]

K. **Qualified Individual with a Disability**

An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

---

4 ADA Title II Action Guide (28 C.F.R. §35.104)
XX 5 ADA Title II Action Guide (28 C.F.R. §35.104)
XX 6 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
7 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
8 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)

requirements for the receipt of services or the participation in programs or activities provided by a public entity.[9]

L. Reasonable Accommodation

A modification or adjustment to a job or work environment that will enable a qualified applicant or employee with a disability to participate in the application process or perform all the essential job functions and which does not create an undue hardship for the employer.

M. Undue Hardship

An action requiring significant difficulty or expense in this implementation of an accommodation under this Act.

V. POLICY

It is the policy of the Department of Corrections to establish procedure for an inmate to request an accommodation for a qualified disability under the Americans with Disabilities Act (ADA) that affects a major life activity and to ensure that:

A. Every inmate, including an inmate with an ADA qualified disability, shall be housed in a manner that provides for his or her safety and security, with security being the overriding concern; and that

B. Reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on the Department; and that

C. Reasonable accommodations will be made to the physical structure of housing used by inmates with ADA qualified disabilities to accommodate for the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;[10] and that

D. Reasonable accommodations will be made to facility programs and activities to permit participation by ADA qualified inmates with disabilities;[11] and that

E. No ADA qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department.[12]

9 ADA Title II Action Guide (28 C.F.R. §35.104)

10 ACA Standard ACI-3-4137, 1-ABC-2C-08, 3-ACRS-2C-04

11 ACA Standard 1-ABC-3D-04

12 ACA Standard ACI Supplement 1998 3-4265, 3-4380-1, 3-ACRS-3D-03

40

## VI.  PROCEDURES

### A. Facility Placement

**1.  Facility Placement[13]**

In addition to all other factors considered by the Department in making facility assignments of inmates, consideration may be given to facilities and programming available at various facilities to accommodate an inmate's particular disability(s)[14]

### 2.  Community Corrections Center Placement

In addition to all other factors considered by the Department in making assignments of inmates for Community Corrections Placement, disabled inmates who are accepted for Community Corrections Placement, shall be placed in Community Corrections Centers or contracted facilities that provide accommodations according to the individual needs of the inmate.

### 3.  Transfers

The sending facility is responsible for material submitted requesting the transfer of disabled inmates from one facility to another. Clear indication that the inmate is disabled and the proposed level of accommodation and resulting services needed must be included.[15]

### 4.  Request for Accommodation

a.  An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department shall submit a written request for accommodation on form **DC-135A, "Inmate's Request to Staff Member"** to the Facility ADA Coordinator or designee.

b.  The **DC-135A** must include the inmate's specific disability(s) and the specific accommodation or service the inmate seeks.

c.  The Facility ADA Coordinator or designee shall evaluate the request, assess the claim for medical validity, evaluate the inmate's needs (if any), and recommend accommodations that may be necessary.

d.  The Facility ADA Coordinator will submit the recommendations to the Facility Manager and the Regional Deputy Secretary for final determination. The safety and security of the inmate and the security of the facility will always be the overriding concern.

---

13 ACA Standard ACI 3-4360
14 ACA Standard 3-ACRS-4A-01, 3-ACRS-5A-01
15 ACA Standard ACI 3-4360

41

e. The Facility Manager will notify the inmate in writing of the final determination within 20 working days of the inmate making the initial request.

f. An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department may submit a grievance under Department policy **DC-ADM 804, "Consolidated Inmate Grievance Review System"**. Such grievance must state the inmate's specific disability or disabilities and the specific accommodation or service the inmate seeks. The Centralized ADA Coordinator will conduct final review of all ADA grievances pursuant to DC-ADM 804.

### B. Inmate Work Programs

1. No inmate will be discriminated against from participating in work programs due to a disability. The Department is required to make reasonable accommodations to the known disability of qualified inmate applicants with disabilities. Compensation and job titles will be in accordance with Department policy, **7.9.1, "Inmate Compensation System".**[16]

2. Accommodations that pose undue hardships for the Department or pose a threat to security need not be provided. Inmates will not be placed in a work program which clearly jeopardizes their safety or security.

## VII. SUSPENSION DURING EMERGENCY

In an emergency or extended disruption of normal facility operation, any provision or section of this policy may be suspended by the Secretary or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

---

[16] ACA Standard 1-ABC-5A-03, ACI 3-4396

42

IX.    RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

A. Release of Information

1.  Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and or inmates upon request.

2.  Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

B. Distribution of Policy

1.  General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

2.  Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

X.    SUPERSEDED POLICY AND CROSS-REFERENCE

A. Superseded Policy

1.  Department Policy

08.02.18, Americans with Disabilities Act of 1990 , issued June 17, 1996 by Secretary Martin F. Horn

2.  Facility Policy and Procedure

This document supersedes all facility policy and procedures on this subject.

*DC-ADM 006 Reasonable Accommodations for Inmates with Disabilities*                *Page 3*

### B. Cross References

1. **Administrative Manuals**

   a. DC-ADM 804, "Consolidated Inmate Grievance Review System"

   b. 07.09.01, "Inmate Compensation System"

2. **Accreditation Standards**

   a. **Administration of Correctional Agencies** – 2-CO-4E-01

   b. **Adult Correctional Institutions** - 3-4343, 3-4344, 3-4345, 3-4346, 3-4356, 3-4360, 3-4265, 3-4380-1, 3-4137, 3-4396, 3-4272, 3-4273, 3-4358

   c. **Adult Community Residential Services** – 3-ACRS-4E-28, 3-ACRS-2C-09, 3-ACRS-3D-03, 3-ACRS-4A-01, 3-ACRS-5A-01, 3-ACRS-4E-08, 3-ACRS-4E-11,3-ACRS-2A-01, 3-ACRS-2A-02, 3-ACRS-4E-22

   d. **Adult Correctional Boot Camp Programs** – 1-ABC-4E-19, 1-ABC-4E-20, 1-ABC-4E-21, 1-ABC-4E-23, 1-ABC-2A-01, 1-ABC-2A-02, 1-ABC-2C-08, 1-ABC-3D-04, 1-ABC-4A-03, 1-ABC-5A-03

   e. **Correctional Training Academies** – None

**A10.** Exhaustion of Administrative Remedies

(See Exhibits 1 to 80 attached)

I, Richard Wojtczak, the plaintiff, hereby Verifies, Certifies, that he has Exhausted Administrative Remedies. ___ as to **ALL** issues contained in this Civil Action Complaint 1:01-CV-01-1163.

Plaintiff, Richard Wojtczak, has Exhausted Administrative Remedies by; Letters, Request slips, notes, and Verbally Aggrieved **ALL** issues-complaints to **ALL Defendants etc.**, to the Highest Levels of the Penna. Dept. of Corrections even to the Governors of Penna.

Plaintiff continually and repeatedly **DENIED RELIEF, IGNORED.**

All the **DEFENDANTS** received more than adequate **NOTICE** as to **ALL** plaintiff's complaints and were fully **AWARE** of **ALL** plaintiff's complaints ___

Camp V Brennan, 219 F3d 279 (3 Cir. 2000) at 281 [2]
Wyatt V. Leonard, 193 F3d 876 (6 Cir. 1999)
Wendell V. Asher, 162 F3d 887, 890 (5 Cir. 1998)
Mitchell V. Horn, 1998 WL 695058 #2 (E.D. Pa. Sept. 29, 1982)
contra Underwood V. Wilson, 151 F3d 292, 296 (5 Cir. 1998) ___

___ Your plaintiff has complied with the **PLRA**; 42 U.S.C. § 1997 e (a)

45

The Exhaustion Provision requirement is **NOT** jurisdictional, therefore This Honorable Court does have the descreation to hear plaintiff's Complaint.

Plaintiff's efforts to contact **ALL** the defendants -- see Exhibits 1 to 80 -- is sufficient to satisfy the Exhaustion Requirements -- Wyatt V. Leonard, supra, at 879 [3].

Miller V. Stanmore, 636 F.2d 986, 991 m.8 (5 Cir. 1981)

Ramirez V. Reno, No. 97-7314 (3 Cir. 1997)

Malone V. Godinez, 1997 U.S. District Lexis 6201, 1997 W.L. 222, 945 (N.D. Ill. 1997).

Also -- Plaintiff is **Not** barred from receiving Compensatory Damages -- Canell V. Lightner, 143 F.3d 1210 (9 Cir. 1998) ---

Rehab Act (Section 504) does **Not** require a showing of physical injury or emotional injury -- Nassau County V. Arline, 107 Sct. 1223 (1987). -- Rehab Act (Section 504) money damages are **NoT** barred by Heck V. Humphrey -- See -- Koslow V. Penna, 302 F.3d 161, 179 (3 Cir. 2002).

46

_Supporting Exhaustion Exhibits_

An examination of these **80** exhibits clearly show plaintiff's medical problems starts to worsen while at SCI Huntingdon. Worst still at SCI Smithfield, and now at SCI Laurel Highlands (5-21-02) where plaintiff now confined to a wheelchair etc. etc. (from 1982 to 2003) (21 years of additional pain and suffering).

In addition to these **80** exhibits, plaintiff verbally acquired his painful medical condition up the "chain of command" to the highest level, The Governor of Penna. Results: plaintiff ignored, no response to his complaints, and agreements with "chain of command".

Plaintiffs quest to "Exhaust Administrative Remedies" started, for purposes of this court, with a civil action filed in The U.S. District Court, Middle District of Penna. in **1985** - 85-0403 - E#4 - Civil action INCLUDED knee pain, back pain AND CYST problems.

_Listing of Exhibits "Exhaustion"_

1982 - **E#1** - need 2 mattresses, can not walk up steps,
1984 - (back & knees) -
1984 - **E#2** - need 2 mattresses for back & knee pain -
1984 - **E#3** - can not work because of back & knees -
1985 - **E#4** - Civil Action 85-0463, cyst problem, back to **1979**
1989 - **E#5** - letter to David S. Owens Jr. Commissioner Pa. D.O.C. -
1992 - **E#6** - needed bedboard for back -
1995 - **E#7** - list of items for my SPECIAL NEEDS (DISABILITIES) -
1996 - **E#8** - another list of items for my SPECIAL NEEDS (DISABILITIES) -
1996 - **E#9** - INMATE GRIEVANCE 0173-96 FOR 2 MATTresses, "back"
1996 - **E#10** - X-RAYS show degenerative disc disease

Con't 'Exhibits'

1996 — Ex 11 — more run-around on 'Mattresses'

1998 — Ex 12 — Doctor approval list of items for my Special Needs

1998 — Ex 13 — Health care administrator approval for my Special Needs

1998 — Ex 14 — Request for new mattress

2000 — Ex 15 — Doctor approved list of items for my Special Needs

2000 — slip for Keflex and Glucosamine (renewal) Ex 16

1999

2001 — slip on my Special Need for Shower    Ex 17

2001 — slip on Shower problems for me (steam-heat) — Ex 18

2001 — Ex 19 — letter to Jeffrey A. Beard, Ph.D., Secretary, P.a.
D.O.C., on my Medical Conditions — Special Needs

2001 — Ex 20 — letter to Kenneth D. Kyler, Superintendant SCI Huntingdon,
on my Medical Conditions — Special Needs

2001 — Ex 21 — letter to Scott Walters, unit Manager SCI Huntingdon,
on my Medical Conditions — Special Needs

2001 — Ex 22 — letter to Roger Leighty, counselor SCI Huntingdon,
on my Medical Conditions — Special Needs

2001 — Ex 23 — letter to Dr. Roger Kimber, MD., Medical Director, SCI
Huntingdon on my Medical Conditions — Special Needs

2001 — Ex 24 — letter to Rnr Dr. Donald Moyer, on my Medical
Conditions, Special Needs

2001 — Ex 25 — slip about ATA showers — Special Needs

2001 — Ex 26 — slip about ATA showers — Special Needs

2001 — Ex 27 — slip about SCI Laurel Highlands - Level 2

2001 — Ex 28 — slip about Level 2 - Laurel Highlands

2001 — Ex 29 — letter from U.S. Dept. Justice — ADA

2001 — Ex 30 — letter my request for Transfer To Level 2

2001 — Ex 31 — letter from Rnr Dr. Donald Moyer, my Transfer to
Level 2 - copies to Beard, Kyler, Walters, Leighty, Yarbinski

2001 — Ex 32 — letter from D.O.C. Security Classification

2001 — Ex 33 — notations of Scott Walters Lies

428

Con't, Exhibits

2001  Ex 34 - letter from Rev. Dr. Donald Moyer To HONORABL
  *  John Barley, CHAIRPERSON, PA. House of Rep.
  MY TRANSFER - MEDICAL CONDITIONS  **

2001  Ex 35 - letter from Rev. Dr. Donald Moyer To HONORABLE
  Richard Tilgham, chairperson, Pa SENATE

2001  Ex 36 - letter from Rev. Dr. Donald Moyer To HONORABLE
  Stewart Greenleaf, chairperson, Pa, SENATE

2001  Ex 37 - letter from Rev. Dr Donald Moyer To HONORABLE
  Thomas Gannon, chairperson, Pa. House of Rep
  ** letter on my TRANSFER and MEDICAL conditions **
  X X Ex. 34-35-36-37 XX

2001  Ex 38 - letter from D.O.C. to Rev Dr. Donald Moyer - Level 2
  and SPECIAL NEEDS

2001  Ex 39 - slip To [SCOTT WALTERS] SCI LAUREL HIGHLANDS, SINGLE Cell

2001  Ex 40 - slip to [SCOTT WALTERS] - my Disabilities

2001  Ex 41 - slip to [SCOTT WALTERS] - my Disabilities
2001  Ex 42 - slip to [SCOTT WALTERS] - sci Laurel Highlands, SINGLE cell
2001  Ex 43 - letter from [D.O.C.] TRANSFER - my MEDICAL conditions
2001  Ex 44 - P.P.C. from handbook - goes with Ex 43
2001  Ex 45 - LETTER to [MR. Rosencyer] - my TRANSFER to Sci LAU
  SINGLE cell - MEDICAL PROBLEMS, conditions
2001  Ex 46 - notations, TRANSFER - Level 2
2001  Ex 47 - notations, SINGLE Cell - TRANSFER to sci LAU
2001  Ex 48 - notations [SCOTT WALTERS] SHOWERS - TRANSFER
2002  Ex 49 - my letter to [JOAN TREES D.O.C.] HCA - MEDICAL
  CONDITIONS - ADA - TRANSFER - Level 2
2002  Ex 50 - MEALS IN INFIRMARY PASS

49

Con't Exhibits __ __

2002 __ Ef 51 __ letter to Honorable GOVERNOR MARK
                Schweiker, from Rev. Dr. Donald Mozer __
                TRANSFER, LEVEL 2, MEDICAL PROBLEMS, ADA,
                DC-ADM006, UNPROFESSIONAL CONDUCT, COURT
                MONEY AWARDS - INCOMPETENT MEDICAL TREATMENT

2002 __ Ef 52 __ letter from Pa. DOC to Rev. Dr. Donald Mozer __
                Transfer to a facility that is more suitable to my medical
                needs __ __

2002 __ Ef 53 __ slip to Nurse Supervisor __ my Disabilities
                P. Everhart __

2002 __ Ef 54 __ my letter to P. Everhart Nurse Supervisor __ __
                ALL my DISABILITIES - LEVEL 2 - SPECIAL NEEDS -
                SINGLE cell, - SHOWERS - CAN'T WALK - ELECTRIC RAZOR -
                copies to P. YARGER HCA, Sci Huntingdon ; DR. MAUE
                MEDICAL DIRECTOR, Pa. DOC __

2002 __ Ef 55 __ slip to DR. LONG Med. Director - SCI SMITHFIELD __
                STOMACH MEDICATIONS __

2002 __ Ef 56 __ slip to DR. LONG same as Ef 55 __

2002 __ Ef 57 __ slip, Sci LAU, approval slip for Wheelchair and
                2 Elastic knee braces and 2 extra pillows __

2002 __ Ef 58 __ letter from ERNIE PREATE on ADA - SCi LAU __

2002 __ Ef 59 __ slip from F. Rosemeyer Superintendent SCi LAU,
                approving WHEELCHAIR for Visits __

2002 __ Ef 60 __ my letter to BEARD ph.D , Rosemeyer , PAUL ,
                Williamson , HUNDBURGER , KowalewskI ,
                Level 2 , MEDICAL CONDITIONS , SEARCHES ; ADA __

2002 __ Ef 61 __ letter of Doc , Mistreatment by S Ci LAU __

50

Con't Exhibits ---

2003  E-62 --- my letter to -- Gov. Rendell; O'Hara; Beard Ph.D;
McVey; Thomas; Dr. Mave; Sprenkle; Farnan;
Trees; DeSousa; Preate; Graterfriends; Senator
Greenleaf; Senator Wozniak; Rosemeyer;
Hunsberger; Paul; Dr. Salameh; Kowalewski -
- Level 2 - Personel Not Trained - Searches - my medical
Treatment - my medical problems - PA. Rep. Thomas
Druce -- Waste of out of court money settlement

2003  E-63 --- my letter Kowalewski, My Special Needs
Single cell --

2003  E-64 --- letter from Rosemeyer   Single Cell
Taken -- (Special Need) ---

2003  E-65 --- letter from PA Office of Inspector General --
everything at SCI LAU just fine

2003  E-66 --- my letter to Beard Ph.D; Dr. Mave; Dr. Salameh;
Wilkison; Rosemeyer; Sines --- about my
medical conditions - Special Needs - Single cell -
Transfer ---

2003 (1998)  E-67 --- is DC-ADM006 - ADA inmates with
Disabilities --

2003 (1997)  E-68 --- article 1997 - 3rd Circuit - ADA applies
To State prisons --

2003  E-69 --- Graterfriends article on SCI LAU

2003  E-70 --- Article on SCI LAU ---

51

Con't Exhibits ----

Ex.71

Additional   Vindictive -   Retalistory -

Harassing   "Misconducts", THREATS of

Misconducts  AND overabundance - excessive,

unnecessary  Searches of ONLy the

PLAiNTiFF - who is classified as a "Minimum

Security Inmate" - 'Housed A a MiNiMUM

SECURiTy FAciLiTy'. ----

2001 - Ex.72 - slip to Tim GemBiNski about re getting
"MisconducTs" --

2001 - Ex.73 - "MisconducT" by Riley McCall CO, he
LieD, AFTer Discovered EVidence -
See - (Ex.74 - MEDicAL DAiLY AssigNMeNT
SheeT) - My Appeal was DeNieD!

2001 - Ex.75 - more RETALiATioN Because of my DisABiLiTies

2002 - Ex.76 - my letter to Thomas D.O.C.  SEARches
in AUG, 2002 - Rosemeyer LieD --

2002 - Ex.77 - letter by Rosemeyer To Thomas D.O.C. (Ex.76)
Rosemeyer Lies -

2002 - Ex.78 - my letter To Thomas assistant to BeARD ph.D.
I write More of same  TRANSFer - LeveL 2 - A1A -
My MEDicAL CARE  etc  ----

52

Con't Exhibits ---

2603   Ex 79 --- notations of MORE THREATS of
          Misconduct's BECAUSE of MY DISABiLiTies

2063   Ex 80 --- INMATE GRiEVANCE #68280 I will get
          a MiscoNDuct because of my Disabilities ..
          I was Transfered to sci Laurel Highlands because
          of my Disabilities --- ---


              Also
          SCi Laurel Highlands

          Verbally aggrieved my medical complaints etc.

7-3-02  --- I talked with [Nurse Cook] about my medical
7-14-02 --- I talked with [Nurse Cook] problems & Special Needs
7-15-02 --- I argued with physician assistant [Kauffman] over
          Keflex antibiotic for cysts (he said 'you take what
          we give you') --
7-16-02 --- not treating CYsTs PROPERLY, I argued with
          P.A. [Kauffman] he said 'I decide what you take' ---

7-26-02; 7-30-02; 8-30-02; Grievance #27113; 8-4-02; 8-6-02;
10-4-02; 12-1-02; 1-2-03; 1-7-03 --- NoThing but
          arguments with [Nurse Cook] [Nurse LeChene]; P.A.
          [Kauffman], Dr. [Waterson]; Dr [Salameh]; PA [Turgeon].
7-31-02 sci Lau stopped =sinus meds; Glucosamine; Keflex;
          Prilosec; pill for prostate.

                                              ⑤③

Plaintiff has placed brackets around the Pa. Dept. of Corrections AND other state officials which he has notified concerning his painful medical conditions -

## Listing:

| | |
|---|---|
| T.R. Meloy, M.D. | Stewart Greenleaf, Sen. |
| P.F. Dunn, M.D. | Thomas Hannon, Pa. Rep. |
| Officer Gladfelder | Thomas L. James, CSC |
| David S. Owens, commissioner | Fredric Rosemeyer, SCi. LRV |
| Dr. Minor, Chief Medical officer | Joan Trees, CHCA |
| P.A. Yarger, RN, CHCA | Mark Schweiker, Pa. Governor |
| D. J. Baney | Catherine McVey, H.S |
| Deputy Williamson | Dr. Maue, Med. Doctor |
| Deputy Myers | Dr. Long, SCi. SMiTh |
| P. Everhart | J. D. Wiser, unit Manager |
| T. Stotsky | Ms. Kowalewski, CHCA |
| DC-15 | John Paul, D.O.C. |
| George Weaver, CHCA | Mardi Hamburger, Deputy |
| S. Walters, unit Manager | E. Rendell, Pa. Governor |
| Officer Henry | Clifford O'Hara, Doc |
| Dr. Reiners | John Thomas, DOC |
| Dr. Stehley | William D. Sprenkle, Doc |
| Dr. Kimbel | Michael Farnan, Doc |
| Dr. Mohadjerin | Robert DeSousa |
| Jeffrey A Beard, Ph.D. Secretary Pa. Doc | |
| Kenneth D. Kyler, Superintendant SCi H | |
| Roger Leighty, counselor | John Wozniak, Pa. Senator |
| Major Grace | **Dr. Jawad Salameh** |
| Donald Williamson, D.O.C. | Gabrielle J. Ovens, Doc |
| John Bosley, Pa. Rep. | Tom Gembinski, Doc |
| Richard A. Tilghman, Senator Pa. | |

Listing Con't.

R. Norris    Doc
Robert S. Bitner    Doc
Co, Evenesco    Doc
Co, Plis    Doc
Dr. Watterson    Doc
Capt. / Hiler    Doc
dr. Chowdrey    Doc
P. Sines    Doc
MA. Nightengola    Doc

58 people contacted, some more than once.

BL___ C

STATE CORRECTIONAL INSTITUTION
HUNTINGDON, PENNSYLVANIA
MEDICAL DEPARTMENT PASS

NAME _Whitezak_ NUMBER _F-5977_ DATE _9-13-83_

Report to the Dispensary Pill Line at the following times for prescribed medication
at 7:00 A.M. ( ), 11:00 A.M. ( ), 3:45 P.M. ( ) until; Cut Date_____

Report to the Dispensary Treatment Line at the following times for prescribed
treatment of_____. Report at 7:45 A.M. ( ), 12:15 P.M. ( ),
4:30 P.M. ( ) until; Cut Date_____

Report to the Dispensary for Whirlpool Treatment at the following times,
_____, until; Cut Date_____. Bring your own towel.

Report to the Infirmary for _____ Treatment at the following times,
_____, until; Cut Date_____.

By order of: [T. R. Meloy, M.D. (✓),] P. F. Dunn, M.D. ( ), F. E. Wawrose, M.D. ( ),
Dr. _____ ( )

Infirmary Supervisor___(as)___

Special Instructions___May have double mattress___
_____
_____

see second mattress 10-24-83 RW

---

BLOCK _D_

STATE CORRECTIONAL INSTITUTION
HUNTINGDON, PENNSYLVANIA
MEDICAL DEPARTMENT PASS

NAME _Whitezak_ NUMBER _F5977_ DATE _9-10-84_

Report to the Dispensary Pill Line at the following times for prescribed medication
at 7:00 A.M. (✓), 11:00 A.M. (X), 3:45 P.M. (X) until; Cut Date _9-17-84_
EQUAGESIC + DID

Report to the Dispensary Treatment Line at the following times for prescribed
treatment of_____. Report at 7:45 A.M. ( ), 12:15 P.M. ( ),
4:30 P.M. ( ) until; Cut Date_____

Report to the Dispensary for Whirlpool Treatment at the following times,
_____, until; Cut Date_____. Bring your own towel.

Report to the Infirmary for _____ Treatment at the following times,
_____, until; Cut Date_____.

By order of: T. R. Meloy, M.D. ( ), [P. F. Dunn, M.D. (✓),] F. E. Wawrose, M.D. ( ),
Dr. _____ ( )

Infirmary Supervisor___lrm___

Special Instructions_dr. Dunn Recommended Ground tier Housing 9-8-84_
___2 mattresses   -   No Heavy object lifting___
___medical lay___

FORM    BC-135A

*extra*

INMATE'S REQUEST TO STAFF MEMBER

Replaces JBC-135 which may be used.

COMMONWEALTH OF PENNSYLVANIA
BUREAU OF CORRECTION

INSTRUCTIONS

Complete items Number 1-6. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

1. TO: (NAME AND TITLE OF OFFICER) Officer Gladfelder - Sanatation Dept

2. DATE 11-13-84

2. BY: (INSTITUTIONAL NAME AND NUMBER) Richard Wojtczak F-5977

3a. COUNSELOR'S NAME Quinn

4. WORK ASSIGNMENT

5. QUARTERS ASSIGNMENT C Block 4+5 cell

6. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

The medical doctors have prescribed 2 mattresses as part of my medical treatment. (I have enclosed doctors slips dated 9-13-79; 9-10-74) I have had 2 mattresses since 1979 at S.C. i Grateful.

The 2 mattresses I have now, I have had for Quite some time (approx 2 yrs) and they have crushed down to where they do not give me any relief anymore.

I talked to Dr. Melon, he said see block capt. i I talked to block capt. He said write request slip to you for 2 new mattresses. So I write to you. Could you please, replace my 2 old mattresses with 2 new mattresses.

Thank You

7. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

Due to limited amount of mattress that I have at this time + with double celling going on it will not be possible to exchange your mattresses at this time As you state you do have two mattress this will have to suffice till we can Get them exchanged at a later date
+ Gladfelter. C.C.I

☐ TO BC-14 CAR ONLY    ☐ TO BC-14 CAR AND BC-15 CARS

STAFF MEMBER

DATE

STATE CORRECTIONAL INSTITUTION
HUNTINGDON, PENNSYLVANIA

Subject: Medical Lay-in/Light Duty

To: _D_ Block Sargeant

From: Dispensary

_ES971_ _WOJHACAK_ is placed on:
Number          Name

☒ Medical Lay-in until _INDefinite MEDICAL LAY-in_

☐ Light Duty for
   Limitations: _____ weeks/days.

Date: _9-10-84_     Signed: _DR. DUNN (JHROR)_

*U.S District Court Middle District of Penna,*

*85-0403*

*1985*

## SKIN LESIONS/CYSTS

### SCI-GRATERFORD

| DATE | TREATMENT |
|------|-----------|
| 2/01/79 | Examination<br>Diagnosis of Lesion<br>Recommended excision |
| 6/11/79 | Examination |
| 6/21/79 | Examination<br>Recommended surgery |
| 7/12/79 | Examination<br>Recommended surgery |
| 8/09/79 | Excision of Lesion |
| 8/23/79 | Post-op examination |
| 9/13/79 | Post-op examination |
| 11/15/79 | Post-op examination |
| 3/11/80 | Examination |
| 6/30/81 | Examination - refuses<br>recommended surgery |
| 7/25/81 | Examination |

*Cysts*

*Cysts*

### SCI-HUNTINGDON

| DATE | TREATMENT |
|------|-----------|
| 6/28/82 | Examination<br>Prescriptions<br>Dermatology consult.<br>recommended |
| 11/17/82 | X Scalp infection<br>Prescription |
| 8/04/83 | Culture done on scalp |
| 8/08/83 | Prescriptions<br>Dermatology consult. reques |
| 8/13/83 | Prescription<br>Dermatology consult. reques |
| 8/22/83 | Examination<br>Prescriptions |
| 8/23/83 | Examination<br>Prescription |
| 8/29/83 | Examination- culture taken<br>Prescription<br>Dermatology request |
| 9/10/83 | Examination- cultures<br>Prescriptions |
| 9/15/83 | Prescription<br>Awaiting culture report |
| 9/27/83 | Examination<br>Prescription |
| 10/13/83 | Examination<br>Prescription |
| 3/21/84 | Prescription<br>X Scalp cond. improving |
| 8/13/84 | Prescription for skin cond.<br>on back |
| 12/18/84 | Examination - no cysts in<br>groin area |

-6-

*Ex 4*

*U S District Court Middle District of Penna,*

*85 - 0403*

*1985*

## S K I N   L E S I O N S / C Y S T S

### SCI-GRATERFORD

| DATE | TREATMENT |
|------|-----------|
| 2/01/79 | Examination<br>Diagnosis of Lesion<br>Recommended excision |
| 6/11/79 | Examination |
| 6/21/79 | Examination<br>Recommended surgery |
| 7/12/79 | Examination<br>Recommended surgery |
| 8/09/79 | Excision of Lesion |
| 8/23/79 | Post-op examination |
| 9/13/79 | Post-op examination |
| 11/15/79 | Post-op examination |
| 3/11/80 | Examination |
| 6/30/81 | Examination - refuses<br>recommended surgery |
| 7/25/81 | Examination |

*Cysts* →

### SCI-HUNTINGDON

| DATE | TREATMENT |
|------|-----------|
| 6/28/82 | Examination<br>Prescriptions<br>Dermatology consult.<br>recommended |
| 11/17/82 | X Scalp infection ←<br>Prescription |
| 8/04/83 | Culture done on scalp ← |
| 8/08/83 | Prescriptions<br>Dermatology consult. reques |
| 8/13/83 | Prescription<br>Dermatology consult. reques |
| 8/22/83 | Examination<br>Prescriptions |
| 8/23/83 | Examination<br>Prescription |
| 8/29/83 | Examination- culture taken<br>Prescription<br>Dermatology request |
| 9/10/83 | Examination- cultures<br>Prescriptions |
| 9/15/83 | Prescription<br>Awaiting culture report |
| 9/27/83 | Examination<br>Prescription |
| 10/13/83 | Examination<br>Prescription |
| 3/21/84 | Prescription<br>X Scalp cond. improving |
| 8/13/84 | Prescription for skin cond.<br>on back ← |
| 12/18/84 | Examination - no cysts in<br>groin area |

-6-

*Ex 4*

# *Falkner Swamp Reformed Church* 3-24-8
## *of the*
## *United Church of Christ*

2077 Swamp Pike
Gilbertsville, Pennsylvania 19525

2085 Swamp Pike
Gilbertsville, PA 19525

Donald E. Moyer
Church Phone: 323-6455
Parsonage Phone: 323-2212



March 1, 1989

See Date

March 1989

Mr. David S. Owens, Jr.
Commissioner
Pa. Dept. of Corrections
P. O. Box 598
Camp Hill, PA  17011

Dear Mr. Owens:

The enclosed letter -- plus attached sheets -- come to you from Mr. Wojtczak, an in-
mate at Huntingdon Prison.  I am mailing this for Mr. Wojtczak to insure that you do
in fact receive it.

I sincerely hope that you read Mr. Wojtczak's letter and related material.  His story
is one of continued neglect and harassment by the administration at Huntingdon Prison.
The prison staff continues to minimize Mr. Wojtczak's condition and the suffering and
the pain that he continually endures.

Your speedy, serious investigation of this situation would be most appreciated.  How-
ever, I warn you that a mere contact with prison staff to "check out" the authenticity
of Mr. Wojtczak's account will merely result in more excuses and well-thought-out ex-
planations of justifiable neglect; I know, because this is what I have received when-
ever I have inquired of the prison staff who are always quick to tell me to please
contact them if there is ever a problem!  The fact is, the staff's attitude toward
Richard and his continuing, worsening condition is the problem!

I would appreciate any assistance you can give toward rectifying this deplorable
situation!

Thankyou!

Sincerely,

The Reverend Donald E. Moyer, Pastor
Spiritual Advisor to Mr. Richard Wojtczak, #F5977

# *Falkner Swamp Reformed Church*
## *of the*
# *United Church of Christ*

2077 Swamp Pike
Gilbertsville, Pennsylvania 19525



Parsonage
2085 Swamp Pike
Gilbertsville, PA 19525

Donald E. Moyer
Church Phone: 323-6055
Parsonage Phone: 323-4214

March 1, 1989

*Tee
Date*    March 1 1989

Mr. David S. Owens, Jr.
Commissioner
Pa. Dept. of Corrections
P. O. Box 598
Camp Hill, PA 17011

Dear Mr. Owens:

The enclosed letter -- plus attached sheets -- come to you from Mr. Wojtczak, an in-
mate at Huntingdon Prison.  I am mailing this for Mr. Wojtczak to insure that you do
in fact receive it.

I sincerely hope that you read Mr. Wojtczak's letter and related material.  His story
is one of continued neglect and harassment by the administration at Huntingdon Prison.
The prison staff continues to minimize Mr. Wojtczak's condition and the suffering and
the pain that he continually endures.

Your speedy, serious investigation of this situation would be most appreciated.  How-
ever, I warn you that a mere contact with prison staff to "check out" the authenticity
of Mr. Wojtczak's account will merely result in more excuses and well-thought-out ex-
planations of justifiable neglect; I know, because this is what I have received when-
ever I have inquired of the prison staff who are always quick to tell me to please
contact them if there is ever a problem!  The fact is, the staff's attitude toward
Richard and his continuing, worsening condition is the problem!

I would appreciate any assistance you can give toward rectifying this deplorable
situation!

Thankyou!

Sincerely,

The Reverend Donald E. Moyer, Pastor
Spiritual Advisor to Mr. Richard Wojtczak, #F5977

*Ef*

5

STATE CORRECTIONAL INSTITUTION
AT HUNTINGDON, PA 16652

DATE _____

SUBJECT: _____

TO: _____

FROM:   M. A. Suomela
        Corrections Health Care Administrator

| | | |
|---|---|---|
| INMATE'S NAME: | *Whitfield, Rashid* | |
| INMATE'S NUMBER: | *AF 5977* | BLOCK *D* |
| INMATE'S DIAGNOSIS: | | |
| INMATE'S TREATMENT REQUESTED: | | |
| DOCTOR WHO WROTE PRESCRIPTION: | *Dr. Mooy* | DATE: *1/7/92* |
| ASSISTING NURSE: | | DATE: *2/13/92* |

IF TREATMENT RENDERED OUT OF INSTITUTION INCLUDE:

SS#:
RACE:
D.O.B:
M. STATUS:
ALLERGIES:
NEXT OF KIN:

# 115

*AF597  2-13-92*

846

DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

*C/C*

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF CORRECTIONS

INSTRUCTIONS

Complete Items Number 1-7. If you follow instructions in preparin
your request, it can be disposed of more promptly and intelligentl

1. TO: (NAME AND TITLE OF OFFICER) Dr. Minor - Chief medical officer SCIH

2. DATE 3-1-95

3. BY: (INSTITUTIONAL NAME AND NUMBER) — Richard Woitenak AF5977

4. COUNSELOR'S NAME Walters

5. WORK ASSIGNMENT

6. QUARTERS ASSIGNMENT C block

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

I need current authorization slips for the following items:
(previous authorization slips attached)

2 mattresses ---- back pain; hip, knee joint pain,
Medically unable to work ---- rheumatism,
Ground tier clearance ----- rheumatism,
bedboard ---- back pain;
2 EXTRA pillows ---- Hiatel Hernia reflux,
electric razor --- facial & scalp dermatitis;
Canvas shoes --- state leather shoes pinch nerve in left foot
single cell status --- security

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

CC:
Tom Gembinski MHC
Scott Walters Counselor

Thank you
8-24-95 Seen Dr. Minor

E47

☐ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER

DATE

STD-501  1-84

**COMMONWEALTH OF PENNSYLVANIA**
**STATE CORRECTIONAL INSTITUTION**
**at HUNTINGDON, PA 16654-1112**
January 9, 1996

(6)

*(example)*

SUBJECT:  Your Request to Staff Member of 1/2/96

TO:  AF-5977, Wojtczak
     C-Block

FROM:  P. A. Yarger, RN
       Corrections Health Care Administrator

Upon reviewing your medical chart I find you have already been granted approval for the following:

1. Ground Tier
2. Single Cell ~~XXXX~~ *include on list!*
3. Medical Lay-In
4. New Shoes--Turn your old ones in at the Shoe Shop and they will give you new ones *Canvas shoes*
5. You have three (3) pillows already
6. You have a solid (hard) metal bed--not a bed with springs ~~XXX~~ *include on list*
   *my N. lone solid metal be in future — include belboard — No bed with,*

I do not see that additional approval for the above is necessary.

PAY:cb

cc:  Unit Manager Crilly

*Plus → 2 mattresses electric shower*

48

DC-80
PART 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | 0173-96

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| D. G. Baney | S.C.I. Huntingdon | 9-1-96 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Richard Wortysek AF5977 | Richard Wortysek |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| medically unable to work | C Block 136 cell |

**INSTRUCTIONS:**

1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Due to severe back, hip and leg pain I have had 2 mattresses for 20 years. In January 1995 my second mattress was taken. Since March 1, 1995 --- 1½ years --- I have tried to get my 2 mattresses back, with No results. S.C.i. Huntingdon refuses to Re-issue my second mattress to me, pain and suffering is not part of the sentence the courts imposed on me ----- 3-1-95 Dr. Misori Re Approved 2 mattresses for me; 8-24-95 Dr. Misori again Re approved my 2 mattresses; 8-8-96 Dr. Mangino again Re approved my 2 mattresses ----- 8-30-96 Dr. Mohadquin told me the X rays taken early August 1996 showed I have a degenerated disc in my spine also a curvature of the spine, this is causing all the pain ----- this is the medical reason for 2 mattresses, a "medical necessity", S.C.i. Huntingdon Refuses to Re issue my 2 mattresses.

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator

Date

DC-80
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

*rec*
*9-18-96 [?]*

OFFICIAL INMATE GRIEVANCE

GRIEVANCE N[o]

INITIAL REVIEW RESPONSE

0173-96

| TO: (NAME & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE |
|---|---|---|---|
| RICHARD WOJTCZAK, AF-5977 | SCI-HUNTINGDON | C-BLOCK | 9/1/96 |

The following is a summary of my findings regarding your grievance:

Your grievance in which you complain that you had a 2nd mattress for 20 years until January 199[?] has been received and a review of your chart has been completed.

3/1/95 - No note re: mattress was found. You were not seen that date--seen 2/12/95 for back pain and no mention made of a mattress.

✱ 8/24/95 - Note from Dr. Minor indicates you have used two (2) mattresses because they are too thin and using one (1) causes your hips to grind into the bed. At that visit it was recommende[d] you use two (2) mattresses for one (1) year. *I am not issued 2 mattresses (J) Never received!*

X-ray of cervical spine on 4/2/92 shows normal appearance *✱ X-ray of L/S spine in August 1996* shows mild diffuse degenerative disc disease with minimal levoscoliosis. *degenerated disc and curvature of spine*

✱ 8/8/96 - Order reads new mattress due to back strain---it does not say two (2) mattresses. *no new mattress issued J Never received!*

Between 8/24/95 and 8/8/96 - You were seen many times by the Medical staff. Your concerns expressed were related to multiple problems, none of which is documented as arthritic or back problems. The majority were to assess you for GED, folliculitis, and follow up of diabetes. *I was told ONLY Manzino issue slip for Mattress —*

The last order does not substantiate your claim that the MD ordered two (2) mattresses. It is not the policy of the Medical Department to issue extra mattresses. *then why does it?*

If your mattress is too thin and needs replaced, please let your block officer know and, if appropriate, the exchange may be made.

PAY:cb

cc: Deputy Williamson
Deputy Myers
D. Baney
P. Everhart
T. Stotsky
DC-15
File

*see above:*
*8-24-95 = I never received "2 mattresses for one (1) year" Why?*
*8-8-96 = I never received "new mattress" Why?*
*8-24-95 & 8-8-96 — I was told by "medical staff ONLY Dr. Manzino issues slip for mattress. I saw Manzino on 8-8-96.*

*E[?]*
*10*

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE OFFICER *Pat Vaughn CHCA* | DATE 9/16/96 |

DC-135A

(C)

**INMATE'S REQUEST TO STAFF MEMBER**

136

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF CORRECTIONS

C/copies

INSTRUCTIONS

Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.

| 1. TO: (NAME AND TITLE OF OFFICER) P. Yarger, Health Care Adm. S.C.I.H. | 2. DATE 9-20-96 |
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) Richard Wojtyak AF5977 | 4. COUNSELOR'S NAME Zienty |
| 5. WORK ASSIGNMENT medically unable to work | 6. QUARTERS ASSIGNMENT C block 136 cell |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

1. Why didn't I receive the 2 mattress "for one (1) yr" on 8-24-95?

2. Why didn't I receive a new mattress on 8-8-96?

see attached response to grievance #0173-96.

Thank You

What is the difference between "ordered" - "recommendation" "prescribed"
medical treatment? When I see the "doctor" ?????

C/
C/

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

#1. Because it was only recommended - It was not
what is the difference? Ordered -

#2. Because Medical is not the mattress inspector
or the authorized DOC person who decides this
Who is the authorized doc personnel to decide this?

Mr Wojtyak this issue is closed — I'll not
deal with it again

☐ TO DC-14 CAR ONLY

☐ TO DC-14 CAR AND DC-15 IRS

Cf 11

STAFF MEMBER
Pat Yarger

DATE

DC-135A

*Must re-new "every year" as per Scott Walters unit Manager on 4-8-98, 1:45 pm. This is FIRST Time I heard about this. RW*

**INMATE'S REQUEST TO STAFF MEMBER**

c/c

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

**INSTRUCTIONS** (10)

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Mr. George Weaver — Health Care Adm.  2. DATE 4-8-98

3. BY: (INSTITUTIONAL NAME AND NUMBER) Richard Stoptyck AF5977  4. COUNSELOR'S NAME Gephart

5. WORK ASSIGNMENT medically unable to work  6. QUARTERS ASSIGNMENT B-1-058

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

I need up to date Medical approval for the following:

2 mattresses

3 pillows

1 Electric razor

Canvas shoes

bedboard — I have solid metal bed

Ground tier clearance

single cell status

Medically unable to work

*I do have previous Medical approval*

Thank You

Richard Stoptyck

copy to Doy 4-4-98

E12

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

mr. Wojtzak,

I met with mr. Weaver this date to discuss your medical approval for 2 mattresses, 3 pillows, 1 Electric razor, Canvas shoes, ground tier clearance and your medically unable to work status. Those items are approved for you to retain in your cell. Please keep this request as documentation of your approval. Your medical record should also reflect

☐ TO DC-14 CAR ONLY  Same.

☑ TO DC-14 CAR AND DC-15 IRS  mr. Weaver.

STAFF MEMBER  Scott Walters UM  DATE 4-8-98

*Miscondut — etc.*
*# 946874*
*4-28-03*

*per*
*4-23-98*
*6⁴⁵ pm Rw*

*(6)*

COMMONWEALTH OF PENNSYLVANIA
STATE CORRECTIONAL INSTITUTION
at HUNTINGDON, PA 16654-1112
April 23, 1998

SUBJECT:    YOUR INMATE'S REQUEST TO STAFF MEMBER
OF 4/17/98

TO:    Richard Wojtczak, AF5977
B-Block

FROM:    George Weaver, RN
Corrections Health Care Administrator

You currently have a steel bed. Therefore, a bedboard is not necessary. In the future, all beds within the institution will be steel. It is noted that you require a steel bed.

I do not control single cell status. Due to your medical conditions it is prudent to be single celled. I do not foresee any reason this will change unless your health greatly improves. As far as the wording "indefinite", there should be no items that are ordered indefinitely because health status does change. It is unlikely that your condition will improve. Therefore, as long as it is medically required you will have the needed items. Please do not get disturbed related to the wording indefinite vs. tolerated.

GW:cb

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

INSTRUCTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

*Complete Items Number. 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

*my copy*  C/C

| 1. TO: (NAME AND TITLE OF OFFICER) Officer Henry / Sanitation | 2. DATE XXX 9-16-98 |
| --- | --- |
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) Richard Wojtczak AF5977 | 4. COUNSELOR'S NAME Depart |
| 5. WORK ASSIGNMENT medically unable to work | 6. QUARTERS ASSIGNMENT B-1-058 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.   GIVE DETAILS.

Dear Mr. Henry,

I have approval for 2 mattresses — I have given you a copy of that approval. The 2 mattresses are for severe back-hip-leg pain. These cotton-felt mattresses CRUSH DOWN, then do Not support my back + hips (in aprox 8 month). The 2 mattresses I have, have Crushed Down — I need 2 New mattresses for this chronic medical condition.

Is it possible for me to be issued 2 Foam mattresses as are in the RHU? This would eliminate the crushing down problem every 8 months.

Thank You

C/C

| 8. DISPOSITION: (DO NOT WRITE IN THIS SPACE) | |
| --- | --- |
| 10-1-98 I have Not received Mattresses I have to go again on the Mattress thing ! XXX | Henry 1st tells me — I will get mattresses Tomorrow or next week — |
| | Henry Tells me 2nd time — I will get mattresses Tomorrow or next week |
| 10-26-98 I have not received 2 new mattresses | XXX 11-12-98 Henry tells me he has no mattresses, maybe in 2 weeks. |
| 11-5-98 I have not received 2 new mattresses | 11-24-98 I have not received 2 mattresses Henry told me that deputy Myers said I am not to receive foam mattresses |
| 12-18-98 2PM received 2 new mattresses. Hary in Hosp. for back surgery. | 12-9-98 Henry said I would receive 2 cotton felt Mattresses NeXT FRIDAY = 12-18-98 |
| X 2-16-2000 rec 1 new mattress Henry 11AM XXX | |
| 1-20-99 rec new canvas shoes | |
| ☐ TO DC-14 CAR ONLY | ☐ TO DC-14 CAR AND DC-15 IRS |
| X 4-19-2000 rec 1 Mattress from Henry 10:15 AM XXX | |
| STAFF MEMBER X 4-19-2000 10:15 took both mattresses Henry would not put on (Key Colson) XXX | DATE |

E/14

DC-135A

**COMMONWEALTH OF PENNSYLVANIA**

DEPARTMENT OF CORRECTIONS

*C/C*

INSTRUCTIONS

**INMATE'S REQUEST TO STAFF MEMBER**

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

1. TO: (NAME AND TITLE OF OFFICER) Dr. Reiners, M.D. S.Ci. Huntingdon Pa.

2. DATE 7-14-2000

3. BY: (INSTITUTIONAL NAME AND NUMBER) Richard Wojteyak AF5977

4. COUNSELOR'S NAME Lugby

5. WORK ASSIGNMENT medically unable to work

6. QUARTERS ASSIGNMENT BA-1040 cell

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE. GIVE DETAILS.

I need up to date approval for the following:

2 Mattresses (degenerated bone in both knees and disc in spine)
3 Pillows (acid reflux)
1 electric razor (cyst problem on scalp)
Canvas shoes (nerve problem in foot)
Ground Tier clearance (I cannot go up and down stairs)
Medically unable to work
✗ Single cell status                              I have Previous approval
Cane (need cane to walk)                          Thank you.
C/C

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

7/15/00 · Above problems + solutions are long standing + are necessary. The above special orders are approved as necessary.

C.R. Reiner M.D.

EF15

☐ TO DC-14 CAR ONLY                    ☐ TO DC-14 CAR AND DC-15 IRS

STAFF MEMBER                                      DATE

## What can I do to maintain healthy, flexible joints?

It is a common misconception that inflexible, stiff joints are a natural part of aging, and that there is little we can do about it. Eating healthy foods, maintaining proper weight, exercising, getting needed support from family and friends, and supplementing your diet with Osteo-Bi-Flex® are all important steps you can take to help maintain health.*

## What is Osteo Bi-Flex®?



Osteo-Bi-Flex®, America's No.1 selling dietary supplement for healthy joints,* offers you long-term nutritional approach to healthy joints.* Unlike many pain relievers which have side effects, Osteo-Bi-Flex® is safe for daily use. Osteo-Bi-Flex® is a natural supplement that contains a combination of clinically studied ingredients, glucosamine and chondroitin — critical nutrients which help to improve flexibility, comfort and range of motion.*

## How does Osteo-Bi-Flex® work?

Osteo-Bi-Flex® contains glucosamine and chondroitin, nutrients that occur naturally in the body and help to maintain and rebuild cartilage.* As our bodies age, the ability to produce some of the nutrients necessary for cartilage building declines. This is why supplementing your diet with Osteo-Bi-Flex® is so important.

- Glucosamine is needed for the body to manufacture the building blocks of cartilage, and it helps keep cartilage tissue lubricated and maintain its naturally slippery texture.*

- Chondroitin helps attract and hold fluid in cartilage. It inhibits the activity of enzymes that break down the cartilage.*

- When taken in combination, glucosamine and chondroitin work together to repair, rebuild and renew cartilage.*

## When will I see the benefits?

Unlike analgesics, which offer only temporary pain relief, Osteo-Bi-Flex® actually promotes long-term joint comfort by helping to improve the structure and function of joints and cartilage.*

The process of restoring healthy joints takes time and will depend on your individual nutritional needs. However, with daily use, you are likely to notice **changes in four to eight weeks.**

In order for you to receive the maximum joint health benefit, it is important for you to consistently follow the easy directions for use.

| Directions for Use | Start-Up Phase (Initial 60 Days) | Maintenance Phase (After 60 Days) |
|---|---|---|
| Maximum Strength | 3 tablets or softgels daily with meals | 1–3 tablets or softgels daily with meals, according to individual needs |

- **Please be patient and stick with your regimen — cartilage repair and joint health are long-term benefits!**

Si Lowe (Highland Stopped)
Glucosamine manufacturing; Si Low STOPPED iT!
Glucosamine.
E/16



**$3.00 COUPON ENCLOSED**

**EXERCISE TIPS FROM THE ARTHRITIS FOUNDATION® INSIDE**

## Maintain healthy, flexible joints every day



**Osteo Bi-Flex®**

**Glucosamine/Chondroitin**

Dietary Supplement

*Chondroitin* [handwritten: found not to be metabol...]

[handwritten annotations]

Investigating for elevated bone disease

sci based if lglenol stopped

glucosamine (5-21-02)



## Exercise can help!

Regular exercise can help to maintain healthy, mobile joints. By choosing the right type of exercises, with the aid of your physician or physical therapist, you can help protect your joints while reducing stiffness and improving overall joint comfort and motion.

### 10 Exercise Tips from the Arthritis Foundation

1. Before exercising, apply heat or ice treatment to the area you will be working.
2. Warm up first for at least 10-15 minutes.
3. Exercise at a comfortable, steady pace.
4. Breathe out as you do the exercise and breathe in as you relax between repetitions.
5. Be alert for warning signs. Stop exercising if you have chest tightness or severe shortness of breath or feel dizzy, faint or sick to your stomach. Contact your doctor immediately if these symptoms occur.
6. If you develop muscle pain or a cramp, gently rub and stretch the muscle.
7. Know your body's signals.
8. Don't do too much too fast.
9. Cool down for five minutes after exercising.
10. Keep a positive attitude about yourself and your exercise program.

© *Exercise and Your Arthritis*, excerpted and reprinted with the permission of the Arthritis Foundation. You can order copies of the entire booklet from the website www.arthritis.org or by contacting your local chapter of the Arthritis Foundation.

The makers of Osteo-Bi-Flex are pleased to help fund the Arthritis Foundation's scientific and educational work to improve the quality of life for millions of Americans with arthritis. For free arthritis information call the Arthritis Foundation at 1-800-283-7800 or visit www.arthritis.org

**ARTHRITIS FOUNDATION®**

Ex 16

## Certain nutrients can help to maximize joint health

According to Jason Theodosakis, M.D., author of *Maximizing The Arthritis Cure*, certain nutrients can actually complement the beneficial effects of glucosamine and chondroitin to maximize joint health. These nutrients, available from both diet and supplement sources, fall into four categories:

• Your body needs **minerals** such as calcium, magnesium, zinc, boron, chromium and copper for the enzymes to function optimally and maximize the impact of chondroitin and glucosamine.

• **Antioxidants**, including Vitamin A, Vitamin C, Vitamin E and selenium neutralize the "scavenger" radicals that speed the degeneration of cartilage.

• **Bioflavonoids** such as quercetin, hesperidin, rutin and the catechins enhance the ability of collagen to build and maintain strong cartilage and also have antioxidant properties.

• **Vitamin D** is also necessary to inhibit cartilage breakdown.

© *Maximizing The Arthritis Cure*, excerpted and reprinted with the permission of Jason Theodosakis, M.D.

*These statements have not been evaluated by the Food & Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

---

## Save $3.00
### On Any Sundown
### OSTEO-BI-FLEX Supplement

MANUFACTURER'S COUPON EXPIRES 12/31/00

57031

5 30768 57087 8

Retailer: For payment of face value plus 8¢ handling, send to Rexall Sundown, Inc. c/o CMS, Dept. 30768, 1 Fawcett Drive, Del Rio, TX 78840. Coupon will be paid only if presented by a retailer of our merchandise. This coupon is nonreimbursable, nonassignable, nonreproducible and any sales tax must be paid by the consumer. Offer good only in U.S.A., APOs, FPOs and void where prohibited, taxed or otherwise restricted. Cash redemption value 1/20th of one cent. This coupon is good toward the purchase of any Sundown Osteo-Bi-Flex product. Any other use constitutes fraud. Limit one coupon per purchase. May not be used in conjunction with any other coupon.

PLEASE HAND PRINT YOUR NAME AND ADDRESS TO BE INCLUDED IN FUTURE OSTEO-BI-FLEX COUPON MAILINGS.

NAME                                              AGE
ADDRESS                                           APT#
CITY                          STATE               ZIP

---

## Quality you can trust.

Osteo-Bi-Flex® is produced under stringent quality control standards. Both the raw materials and finished product are subject to rigorous testing for quality, purity and potency. The Osteo-Bi-Flex brand name guarantees that you are getting what the label lists. In fact, Rexall Sundown, the maker of Osteo-Bi-Flex, has consistently been awarded the highest quality rating of its manufacturing facility by Shuster Laboratories, Inc., a leading independent auditing firm used by many pharmaceutical and supplement companies.

### AMERICA'S #1 CHOICE




**REPAIR, REBUILD, RENEW™**

Glucosamine
Chondroitin
Dietary Supplement

*This statement has not been evaluated by the Food & Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

Visit our website at www.osteobiflex.com or call toll free 1-888-VITAHELP (848-2435) with questions or comments, Mon-Fri, 9am-5pm EST.



Sundown is a division of


Sundown.

© Copyright 2000
02210D

1/2/78

GX 16



#30 CLEOCIN T GEL
(30GM-Ea)(CLINDAMYCIN) 1%
USE AS DIRECTED 2 TIMES A DAY
FOR 180 DAYS >>>
NON-FORMULARY APPROVED <<<
1 REFILLS LEFT
HUN47      1-C
START ON 05/16/97  EXP: 0379B
MOHADJERIN, M RX# 1288112 OVS

See package insert for complete product information.
For external use only.
Avoid contact with eyes.
Store at controlled room temperature 15° to 30° C (59° to 86° F).

813 743 309

NDC 0009-333-02
Cleocin T*
1% Topical Gel
Gel
clindamycin phosphate topical gel
30 gram

773283

*frozen*
*SCI Huntingdon*

DIAMOND PHARMACY SERVICES
45 KOLTER DRIVE • INDIANA, PA 15701 • DEA No. BD1753642
PHONE: 724-465-6337 or 1-800-882-6337
CAUTION: Federal law prohibits transfer of this drug to any person other than patient for whom it was prescribed.

7471438 DR. STEHLEY DADC:01/22/99
WOJTCZAK R/AF5977          B
TAKE ONE CAPSULE ORALLY 3
TIMES DAILY

CEPHALEXIN 500MG CAP    QN= 21
SUB FOR: KEFLEX 500MG CAPS
HWOJ59 01/15/99  01/13/99 MFG BICFT JFH   HC

TAKE MEDICATION ON AN
EMPTY STOMACH
1 HOUR BEFORE or 2 TO 3 HOURS
AFTER A MEAL UNLESS OTHERWISE
DIRECTED BY YOUR DOCTOR.

START

DIAMOND
PHARMACY SERVICES

JUL 15 1999

REORDER

8
7
6
5
4
3
2

16
15
14
13
12
11
10

30  23
29  22

*for*
*scipt*
*Problem*

DIAMOND PHARMACY SERVICES
45 KOLTER DRIVE • INDIANA, PA 15701 • DEA No. BD1753640
PHONE: 724-349-1111 or 1-800-882-6337
CAUTION: Federal law prohibits transfer of this drug to any person other than patient for whom it was prescribed.

6501820 DR. KIMBER    C
WOJTCZAK RICHARD, AF5977  RF  00
TAKE ONE TABLET ORALLY 3X
DAILY  11-17-2000
GLUCOSAMINE CHONDROITIN QN= 30
F2   10/21/00 10/21/00 NATUR   MMS   HC

*this is for*
*regenerating bone*
*disease in my knees,*
*hip, vertebrae in back!*
*2,000 Mg per day*
*should be taken!*

*Chondroitin found to*
*be effective!*

10-21-2000
25  18
29

£16

(6)

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

C/C    **Commonwealth of Pennsylvania**
Department of Corrections    C/C

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)

S. Walters – Unit Manager BA

2. Date: 2001

3. By: (Print Inmate Name and Number)

Richard Wojtczak AF5977

*Richard Wojtczak*
Inmate Signature

4. Counselor's Name  Leidy

5. Unit Manager's Name  Walters

6. Work Assignment

Medically Unable to work

7. Housing Assignment

BA 1040 cell

8. Subject: State your request completely but briefly. Give details.

I have attached to this request slip copies of documents sent to you, secretary J. Beard PhD, Superintendent SCIH K.D. Kyler, Dr. Roger Kimber Medical Director SCIH, Roger Leidy counselor – concerning my Disabilities "Reasonable Accommodations" for me to Shower among other things AGAIN for your records and information. As per you telling me now that I CANNOT SHOWER in THE ATA room SHOWER any longer — & — I CANNOT SHOWER in the cell block Shower room because of my MEDICAL CONDITIONS – SPECIAL NEEDS which are well documented in my medical, the great SCI Huntingdon (chronic, incurable degenerative bone disease in knees, bliss disc in spine) I can barely walk, even with a Cane (COPD, some emphysema, shortness of breath, high blood pressure, dizziness). Now I go through this NO PLACE TO SHOWER AGAIN (see 2-27-01 & 4-4-01 No PLACE To SHOWER).

9. Response: (This Section for Staff Response Only)

No response

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

EC 17

Staff Member Name _____ / _____    Date _____
                            Print                    Sign

Revised July 2000

*1040*

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

*C/C*

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

*S. Walters – Unit Mang. BA unit*

1. To: (Name and Title of Officer)
   *Richard Wojtczak AF5997*

2. Date: *2-27-2001*

3. By: (Print Inmate Name and Number)
   *Richard Wojtczak*
   Inmate Signature

4. Counselor's Name *R. Leighty*

5. Unit Manager's Name *S. Walters*

6. Work Assignment
   *medically unable to work*

7. Housing Assignment
   *BA 1040 cell*

8. Subject: State your request completely but briefly. Give details.

*Today I attempted to shower in the general population shower on the block. Due to the heat and steam in the shower I could not shower. I have shortness of breath and high blood pressure, with all that heat and steam in the shower I pass out. This was the original reason that I showered in the infirmary. And before my knees, hips, and back got so bad. What do I do now?*

*Thank you.*

9. Response: (This Section for Staff Response Only)

*EF18*

*Richard,*

*I have asked medical to re-evaluate your ability to shower with general population. When they respond to me I will let you know*

To DC-14 CAR only ☐    *S Walters*    To DC-14 CAR and DC-15 IRS ☑

Staff Member Name _____    _____ Sign    Date *2-28-01*
Print



# Falkner Swamp Reformed Church
## of the United Church of Christ

2077 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4053

Parsonage:    2085 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4424 (6)

**Pastor**
The Rev. Dr. Donald E. Moyer

March 24, 2001

**The 2001 Consistory**
Lisa Barto
Ken Berkowitz
Gennaro DeLena
Barry Hess
Brenda Hess
Donna Hoffman
Paul Kopec
Russell Miller
Doris Moser
Sue Novosel
Frank Straub
Becky Tyson

Dr. Jeffrey A. Beard, Ph. D.
Executive Deputy Secretary
Pennsylvania Department of Corrections
P. O. Box 598
Camp Hill, PA    17001-0598

Dear Dr. Beard,

In a recent letter dated March 19, 2001, Mr.
Richard Wojtczak, #AF5977, an inmate at SCI
Huntingdon, informed me of a deplorable situ-
ation affecting Mr. Wojtczak.  I seek out your
assistance in addressing certain circumstances
that directly affect Mr. Wojtczak's welfare,
health, and on-going treatment.

Mr. Wojtczak suffers from a degenerating bone disease in both
knees and his hips, and a degenerative disc in his spine.  This is
a chronic and incurable condition, and it is well documented in Mr.
Wojtczak's medical file.

Even with the use of a cane, it is extremely difficult and very
painful for Mr. Wojtczak to walk a long distance, as well as walk-
ing for any extended period of time.  Standing for any length of
time is also difficult and painful.

Last year, Mr. Wojtczak's condition deteriorated to the point
where he could no longer walk to and from the dining hall to eat
his meals.

For a long time, Dr. Kimber -- the Medical Director at SCI Hunt-
ingdon -- and the medical department have been well aware of Mr.
Wojtczak's disabling condition.  And yet, I am puzzled by Dr.
Kimber's refusal to authorize Mr. Wojtczak's taking his meals in
his cell, thus eliminating difficult and painful extended walking.

Subsequently, from October 5, 2000, to November 8, 2000, Mr. Wojt-
czak was not fed by the prison since he could not walk the dist-



Page 2

ance to the dining hall.



A second concern involves Mr. Wojtczak's showering ar-
rangements. For the past several years, Mr. Wojtczak
has been allowed to shower in the infirmary-medical de-
partment. This was allowed because of a respiratory
condition that Mr. Wojtczak has; he suffers from short-
ness of breath, high blood pressure, and some emphysema
(all documented in Mr. Wojtczak's medical file).

Due to the heat and steam in the general population / cell block
showers, Mr. Wojtczak cannot shower there. He gets dizzy, light-
headed, feels faint, and at times, was even on the verge of pass-
ing out. Mr. Wojtczak's latest approval for these shower arrange-
ments in the infirmary was granted by Dr. Kimber for one year (un-
til December, 2001).

In addition to Mr. Wojtczak, there were several other inmates
showering in the infirmary for various medical reasons.

On February 27, 2001, Mr. Wojtczak was told by a nurse named Ivon
that he could no longer shower in the infirmary. Mr. Wojtczak was
told that the infirmary showers were being closed down. He was
told to speak to Unit Manager Scott Walters as to where he was to
shower.

On February 27, 2001, Mr. Wojtczak wrote a request slip to Mr.
Scott Walters (Unit Manager, BA Unit) asking where he was to
shower. Mr. Walter's response: "I have asked medical to re-
evaluate your ability to shower with general population. When
they respond to me I will let you know."

On March 1, 2001, Mr. Wojtczak spoke with Dr. Kimber. Dr. Kimber
was aware of Mr. Wojtczak's respiratory problems, etc., therefore,
making it impossible for Mr. Wojtczak to shower in the cell block
showers. Dr. Kimber said that he would let Mr. Wojtczak know where
he could shower.

On March 14, 2001, Mr. Wojtczak spoke with Nurse Patty Everhart
about where he was to shower. Mr. Wojtczak reviewed with Nurse
Everhart the situation regarding the heat and steam of the showers
in the cell block showers. Nurse Everhart told Mr. Wojtczak that
she was waiting to hear from Unit Manager Walters as to what was
available for Mr. Wojtczak. At that time, Mr. Wojtczak informed
Nurse Everhart that it had been two weeks since he had had a sho-
wer, and he questioned how long it was going to take to work out a
solution so that he could shower. There was no response from
Nurse Everhart.

It became apparent that Nurse Everhart was waiting to hear from
Unit Manager Walters, and Unit Manager Walters was waiting to hear
from the medical department!.... As I learn of this dilemma, it
appears to be an attempt to not make a decision and resolve the
situation, while simply telling Mr. Wojtczak that "someone else"
will decide -- and yet, everyone is waiting for the "other" person

Page 3

to act?!



Mr. Wojtczak had asked Nurse Everhart why he could not
shower in the ATA Room shower. Nurse Everhart said that
"...the Deputy Superintendent said the ATA Room shower
is 'off limits', absolutely no one is to shower in the
ATA shower."

Mr. Wojtczak asked Nurse Everhart what she was talking
about, since there are already three inmates showering in the ATA
Room shower. There was no response from Nurse Everhart.

Mr. Wojtczak informs me that one inmate has a respiratory problem.
(Mr. Wojtczak has a respiratory problem.) One inmate has leg and
back problems, but does not need a cane to walk. (Mr. Wojtczak
has leg and back problems and does need a cane to walk.) Mr. Wojt-
czak does not know the medical problems of the third inmate.

The obvious point here is that at least two of these inmates have
very similar medical problems to Mr. Wojtczak; thus, why can't Mr.
Wojtczak shower in the ATA Room shower?

Also, at this point in time (as of March 19th), it has been almost
one month since Mr. Wojtczak has had a shower!!

If Mr. Wojtczak does not shower regularly, he breaks out in very
large cysts; this is also documented in his medical file. Since
Mr. Wojtczak has not showered in almost one month, he is now start-
ing to break out with these cysts.

Within this current situation of apparent contradictory standards
for inmates with similar medical problems, and the inability of
various "correctional professionals" to work and communicate in a
cooperative and effective manner, I am left with grave concerns
regarding Mr. Wojtczak's welfare, health, and on-going treatment,
or lack thereof!

I appeal to you for your assistance in remedying this deplorable
situation affecting Mr. Wojtczak. I would appreciate a written
response from you regarding this disturbing matter.

Thank you for your anticipated assistance!

Sincerely,

Reverend Dr. Donald E. Moyer          Spiritual Advisor to
2085 Swamp Pike                          Mr. Richard Wojtczak, #AF5977
Gilbertsville, PA    19525
610-323-4424
610-323-4053



# Falkner Swamp Reformed Church
## of the United Church of Christ

2077 Swamp Pike
Gilbertsville, PA 19525
(610) 323-4053

Parsonage:     2085 Swamp Pike
Gilbertsville, PA 19525
(610) 323-4424

Pastor
The Rev. Dr. Donald E. Moyer

March 24, 2001

The 2001 Consistory
Lisa Barto
Ken Berkowitz
Gennaro DeLena
Barry Hess
Brenda Hess
Donna Hoffman
Paul Kopec
Russell Miller
Doris Moser
Sue Novosel
Frank Straub
Becky Tyson

Mr. Kenneth D. Kyler, Superintendent
SCI Huntingdon
1100 Pike Street
Huntingdon, PA   16652

Dear Superintendent Kyler,

In a recent letter dated March 19, 2001, Mr.
Richard Wojtczak, #AF5977, an inmate at SCI
Huntingdon, informed me of a deplorable situ-
ation affecting Mr. Wojtczak.  I seek out your
assistance in addressing certain circumstances
that directly affect Mr. Wojtczak's welfare,
health, and on-going treatment.

Mr. Wojtczak suffers from a degenerating bone disease in both
knees and his hips, and a degenerative disc in his spine.  This is
a chronic and incurable condition, and it is well documented in Mr.
Wojtczak's medical file.

Even with the use of a cane, it is extremely difficult and very
painful for Mr. Wojtczak to walk a long distance, as well as walk-
ing for any extended period of time.  Standing for any length of
time is also difficult and painful.

Last year, Mr. Wojtczak's condition deteriorated to the point
where he could no longer walk to and from the dining hall to eat
his meals.

For a long time, Dr. Kimber -- the Medical Director at SCI Hunt-
ingdon -- and the medical department have been well aware of Mr.
Wojtczak's disabling condition.  And yet, I am puzzled by Dr.
Kimber's refusal to authorize Mr. Wojtczak's taking his meals in
his cell, thus eliminating difficult and painful extended walking.

Subsequently, from October 5, 2000, to November 8, 2000, Mr. Wojt-
czak was not fed by the prison since he could not walk the dist-

Page 2

ance to the dining hall.



A second concern involves Mr. Wojtczak's showering arrangements. For the past several years, Mr. Wojtczak has been allowed to shower in the infirmary-medical department. This was allowed because of a respiratory condition that Mr. Wojtczak has; he suffers from shortness of breath, high blood pressure, and some emphysema (all documented in Mr. Wojtczak's medical file).

Due to the heat and steam in the general population / cell block showers, Mr. Wojtczak cannot shower there. He gets dizzy, lightheaded, feels faint, and at times, was even on the verge of passing out. Mr. Wojtczak's latest approval for these shower arrangements in the infirmary was granted by Dr. Kimber for one year (until December, 2001).

In addition to Mr. Wojtczak, there were several other inmates showering in the infirmary for various medical reasons.

On February 27, 2001, Mr. Wojtczak was told by a nurse named Ivon that he could no longer shower in the infirmary. Mr. Wojtczak was told that the infirmary showers were being closed down. He was told to speak to Unit Manager Scott Walters as to where he was to shower.

On February 27, 2001, Mr. Wojtczak wrote a request slip to Mr. Scott Walters (Unit Manager, BA Unit) asking where he was to shower. Mr. Walter's response: "I have asked medical to re-evaluate your ability to shower with general population. When they respond to me I will let you know."

On March 1, 2001, Mr. Wojtczak spoke with Dr. Kimber. Dr. Kimber was aware of Mr. Wojtczak's respiratory problems, etc., therefore, making it impossible for Mr. Wojtczak to shower in the cell block showers. Dr. Kimber said that he would let Mr. Wojtczak know where he could shower.

On March 14, 2001, Mr. Wojtczak spoke with Nurse Patty Everhart about where he was to shower. Mr. Wojtczak reviewed with Nurse Everhart the situation regarding the heat and steam of the showers in the cell block showers. Nurse Everhart told Mr. Wojtczak that she was waiting to hear from Unit Manager Walters as to what was available for Mr. Wojtczak. At that time, Mr. Wojtczak informed Nurse Everhart that it had been two weeks since he had had a shower, and he questioned how long it was going to take to work out a solution so that he could shower. There was no response from Nurse Everhart.

It became apparent that Nurse Everhart was waiting to hear from Unit Manager Walters, and Unit Manager Walters was waiting to hear from the medical department!.... As I learn of this dilemma, it appears to be an attempt to not make a decision and resolve the situation, while simply telling Mr. Wojtczak that "someone else" will decide -- and yet, everyone is waiting for the "other" person

Page 3

to act?!

Mr. Wojtczak had asked Nurse Everhart why he could not shower in the ATA Room shower. Nurse Everhart said that "...the Deputy Superintendent said the ATA Room shower is 'off limits', absolutely no one is to shower in the ATA shower."

Mr. Wojtczak asked Nurse Everhart what she was talking about, since there are already three inmates showering in the ATA Room shower. There was no response from Nurse Everhart.

Mr. Wojtczak informs me that one inmate has a respiratory problem. (Mr. Wojtczak has a respiratory problem.) One inmate has leg and back problems, but does not need a cane to walk. (Mr. Wojtczak has leg and back problems and does need a cane to walk.) Mr. Wojt-czak does not know the medical problems of the third inmate.

The obvious point here is that at least two of these inmates have very similar medical problems to Mr. Wojtczak; thus, why can't Mr. Wojtczak shower in the ATA Room shower?

Also, at this point in time (as of March 19th), it has been almost one month since Mr. Wojtczak has had a shower!!

If Mr. Wojtczak does not shower regularly, he breaks out in very large cysts; this is also documented in his medical file. Since Mr. Wojtczak has not showered in almost one month, he is now start-ing to break out with these cysts.

Within this current situation of apparent contradictory standards for inmates with similar medical problems, and the inability of various "correctional professionals" to work and communicate in a cooperative and effective manner, I am left with grave concerns regarding Mr. Wojtczak's welfare, health, and on-going treatment, or lack thereof!

I appeal to you for your assistance in remedying this deplorable situation affecting Mr. Wojtczak. I would appreciate a written response from you regarding this disturbing matter.

Thank you for your anticipated assistance!

Sincerely,

*Donald E Moyer*

Reverend Dr. Donald E. Moyer          Spiritual Advisor to
2085 Swamp Pike                           Mr. Richard Wojtczak, #AF5977
Gilbertsville, PA    19525
610-323-4424
610-323-4053



# Falkner Swamp Reformed Church
## of the United Church of Christ

*this letter also sent to:*
*Jeffrey A. Beard, Ph.D.*
*Kenneth D. Kyler*
*Roger Leidy*
*Dr. Roger Kimber, M.D.*

2077 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4053

Parsonage:        2085 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4424

**Pastor**
The Rev. Dr. Donald E. Moyer

March 24, 2001

**The 2001 Consistory**
Lisa Barto
Ken Berkowitz
Gennaro DeLena
Barry Hess
Brenda Hess
Donna Hoffman
Paul Kopec
Russell Miller
Doris Moser
Sue Novosel
Frank Straub
Becky Tyson

Mr. Scott Walters
Unit Manager BA Unit
SCI Huntingdon
1100 Pike Street
Huntingdon, PA    16652

Dear Mr. Walters,

In a recent letter dated March 19, 2001, Mr. Richard Wojtczak, #AF5977, an inmate at SCI Huntingdon, informed me of a deplorable situation affecting Mr. Wojtczak. I seek out your assistance in addressing certain circumstances that directly affect Mr. Wojtczak's welfare, health, and on-going treatment.

Mr. Wojtczak suffers from a degenerating bone disease in both knees and his hips, and a degenerative disc in his spine. This is a chronic and incurable condition, and it is well documented in Mr. Wojtczak's medical file.

Even with the use of a cane, it is extremely difficult and very painful for Mr. Wojtczak to walk a long distance, as well as walking for any extended period of time. Standing for any length of time is also difficult and painful.

Last year, Mr. Wojtczak's condition deteriorated to the point where he could no longer walk to and from the dining hall to eat his meals.

For a long time, Dr. Kimber -- the Medical Director at SCI Huntingdon -- and the medical department have been well aware of Mr. Wojtczak's disabling condition. And yet, I am puzzled by Dr. Kimber's refusal to authorize Mr. Wojtczak's taking his meals in his cell, thus eliminating difficult and painful extended walking.

Subsequently, from October 5, 2000, to November 8, 2000, Mr. Wojtczak was not fed by the prison since he could not walk the dist-



Page 2

ance to the dining hall.



A second concern involves Mr. Wojtczak's showering ar-
rangements.  For the past several years, Mr. Wojtczak
has been allowed to shower in the infirmary-medical de-
partment.  This was allowed because of a respiratory
condition that Mr. Wojtczak has; he suffers from short-
ness of breath, high blood pressure, and some emphysema
(all documented in Mr. Wojtczak's medical file).

Due to the heat and steam in the general population / cell block
showers, Mr. Wojtczak cannot shower there.  He gets dizzy, light-
headed, feels faint, and at times, was even on the verge of pass-
ing out.  Mr. Wojtczak's latest approval for these shower arrange-
ments in the infirmary was granted by Dr. Kimber for one year (un-
til December, 2001).

In addition to Mr. Wojtczak, there were several other inmates
showering in the infirmary for various medical reasons.

On February 27, 2001, Mr. Wojtczak was told by a nurse named Ivon
that he could no longer shower in the infirmary.  Mr. Wojtczak was
told that the infirmary showers were being closed down.  He was
told to speak to Unit Manager Scott Walters as to where he was to
shower.

On February 27, 2001, Mr. Wojtczak wrote a request slip to you ask-
ing where he was to shower.  Your response at that time:  "I have
asked medical to re-evaluate your ability to shower with general
population.  When they respond to me I will let you know."

On March 1, 2001, Mr. Wojtczak spoke with Dr. Kimber.  Dr. Kimber
was aware of Mr. Wojtczak's respiratory problems, etc., therefore,
making it impossible for Mr. Wojtczak to shower in the cell block
showers.  Dr. Kimber said that he would let Mr. Wojtczak know where
he could shower.

On March 14, 2001, Mr. Wojtczak spoke with Nurse Patty Everhart
about where he was to shower.  Mr. Wojtczak reviewed with Nurse
Everhart the situation regarding the heat and steam of the showers
in the cell block showers.  Nurse Everhart told Mr. Wojtczak that
she was waiting to hear from Unit Manager Walters as to what was
available for Mr. Wojtczak.  At that time, Mr. Wojtczak informed
Nurse Everhart that it had been two weeks since he had had a sho-
wer, and he questioned how long it was going to take to work out a
solution so that he could shower.  There was no response from
Nurse Everhart.

It became apparent that Nurse Everhart was waiting to hear from
you, and you were waiting to hear from the medical department!....
As I learn of this dilemma, it appears to be an attempt to not
make a decision and resolve the situation, while simply telling
Mr. Wojtczak that "someone else" will decide -- and yet, everyone
is waiting for the "other" person to act?!

Page 3

Mr. Wojtczak had asked Nurse Everhart why he could not shower in the ATA Room shower. Nurse Everhart said that "...the Deputy Superintendent said the ATA Room shower is 'off limits', absolutely no one is to shower in the ATA shower."

Mr. Wojtczak asked Nurse Everhart what she was talking about, since there are already three inmates showering in the ATA Room shower. There was no response from Nurse Everhart.

Mr. Wojtczak informs me that one inmate has a respiratory problem. (Mr. Wojtczak has a respiratory problem.) One inmate has leg and back problems, but does not need a cane to walk. (Mr. Wojtczak has leg and back problems and does need a cane to walk.) Mr. Wojtczak does not know the medical problems of the third inmate.

The obvious point here is that at least two of these inmates have very similar medical problems to Mr. Wojtczak; thus, why can't Mr. Wojtczak shower in the ATA Room shower?

Also, at this point in time (as of March 19th), it has been almost one month since Mr. Wojtczak has had a shower!!

If Mr. Wojtczak does not shower regularly, he breaks out in very large cysts; this is also documented in his medical file. Since Mr. Wojtczak has not showered in almost one month, he is now starting to break out with these cysts.

Within this current situation of apparent contradictory standards for inmates with similar medical problems, and the inability of various "correctional professionals" to work and communicate in a cooperative and effective manner, I am left with grave concerns regarding Mr. Wojtczak's welfare, health, and on-going treatment, or lack thereof!

I appeal to you for your assistance in remedying this deplorable situation affecting Mr. Wojtczak. I would appreciate a written response from you regarding this disturbing matter.

Thank you for your anticipated assistance!

Sincerely,

*Donald E. Moyer*

Reverend Dr. Donald E. Moyer          Spiritual Advisor to
2085 Swamp Pike                           Mr. Richard Wojtczak, #AF5977
Gilbertsville, PA    19525
610-323-4424
610-323-4053



# Falkner Swamp Reformed Church
## of the United Church of Christ

2077 Swamp Pike
Gilbertsville, PA 19525
(610) 323-4053

Parsonage:    2085 Swamp Pike
Gilbertsville, PA 19525
(610) 323-4424

**Pastor**
The Rev. Dr. Donald E. Moyer

March 24, 2001

**The 2001 Consistory**
Lisa Barto
Ken Berkowitz
Gennaro DeLena
Barry Hess
Brenda Hess
Donna Hoffman
Paul Kopec
Russell Miller
Doris Moser
Sue Novosel
Frank Straub
Becky Tyson

Mr. Roger Leighty, Counselor
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16652

Dear Mr. Leighty,

In a recent letter dated March 19, 2001, Mr.
Richard Wojtczak, #AF5977, an inmate at SCI
Huntingdon, informed me of a deplorable situ-
ation affecting Mr. Wojtczak. As his counse-
lor, I seek out your assistance in addressing
certain circumstances that directly affect Mr.
Wojtczak's welfare, health, and on-going treatment.

Mr. Wojtczak suffers from a degenerating bone disease in both
knees and his hips, and a degenerative disc in his spine. This is
a chronic and incurable condition, and it is well documented in Mr.
Wojtczak's medical file.

Even with the use of a cane, it is extremely difficult and very
painful for Mr. Wojtczak to walk a long distance, as well as walk-
ing for any extended period of time. Standing for any length of
time is also difficult and painful.

Last year, Mr. Wojtczak's condition deteriorated to the point
where he could no longer walk to and from the dining hall to eat
his meals.

For a long time, Dr. Kimber -- the Medical Director at SCI Hunt-
ingdon -- and the medical department have been well aware of Mr.
Wojtczak's disabling condition. And yet, I am puzzled by Dr.
Kimber's refusal to authorize Mr. Wojtczak's taking his meals in
his cell, thus eliminating difficult and painful extended walking.

Subsequently, from October 5, 2000, to November 8, 2000, Mr. Wojt-
czak was not fed by the prison since he could not walk the dist-





ance to the dining hall.

A second concern involves Mr. Wojtczak's showering ar-
rangements. For the past several years, Mr. Wojtczak
has been allowed to shower in the infirmary-medical de-
partment. This was allowed because of a respiratory
condition that Mr. Wojtczak has; he suffers from short-
ness of breath, high blood pressure, and some emphysema
(all documented in Mr. Wojtczak's medical file).

Due to the heat and steam in the general population / cell block
showers, Mr. Wojtczak cannot shower there. He gets dizzy, light-
headed, feels faint, and at times, was even on the verge of pass-
ing out. Mr. Wojtczak's latest approval for these shower arrange-
ments in the infirmary was granted by Dr. Kimber for one year (un-
til December, 2001).

In addition to Mr. Wojtczak, there were several other inmates
showering in the infirmary for various medical reasons.

On February 27, 2001, Mr. Wojtczak was told by a nurse named Ivon
that he could no longer shower in the infirmary. Mr. Wojtczak was
told that the infirmary showers were being closed down. He was
told to speak to Unit Manager Scott Walters as to where he was to
shower.

On February 27, 2001, Mr. Wojtczak wrote a request slip to Mr.
Scott Walters (Unit Manager, BA Unit) asking where he was to
shower. Mr. Walter's response: "I have asked medical to re-
evaluate your ability to shower with general population. When
they respond to me I will let you know."

On March 1, 2001, Mr. Wojtczak spoke with Dr. Kimber. Dr. Kimber
was aware of Mr. Wojtczak's respiratory problems, etc., therefore,
making it impossible for Mr. Wojtczak to shower in the cell block
showers. Dr. Kimber said that he would let Mr. Wojtczak know where
he could shower.

On March 14, 2001, Mr. Wojtczak spoke with Nurse Patty Everhart
about where he was to shower. Mr. Wojtczak reviewed with Nurse
Everhart the situation regarding the heat and steam of the showers
in the cell block showers. Nurse Everhart told Mr. Wojtczak that
she was waiting to hear from Unit Manager Walters as to what was
available for Mr. Wojtczak. At that time, Mr. Wojtczak informed
Nurse Everhart that it had been two weeks since he had had a sho-
wer, and he questioned how long it was going to take to work out a
solution so that he could shower. There was no response from
Nurse Everhart.

It became apparent that Nurse Everhart was waiting to hear from
Unit Manager Walters, and Unit Manager Walters was waiting to hear
from the medical department!.... As I learn of this dilemma, it
appears to be an attempt to not make a decision and resolve the
situation, while simply telling Mr. Wojtczak that "someone else"
will decide -- and yet, everyone is waiting for the "other" person

Page 3



to act?!

Mr. Wojtczak had asked Nurse Everhart why he could not shower in the ATA Room shower. Nurse Everhart said that "...the Deputy Superintendent said the ATA Room shower is 'off limits', absolutely no one is to shower in the ATA shower."

Mr. Wojtczak asked Nurse Everhart what she was talking about, since there are already three inmates showering in the ATA Room shower. There was no response from Nurse Everhart.

Mr. Wojtczak informs me that one inmate has a respiratory problem. (Mr. Wojtczak has a respiratory problem.) One inmate has leg and back problems, but does not need a cane to walk. (Mr. Wojtczak has leg and back problems and does need a cane to walk.) Mr. Wojtczak does not know the medical problems of the third inmate.

The obvious point here is that at least two of these inmates have very similar medical problems to Mr. Wojtczak; thus, why can't Mr. Wojtczak shower in the ATA Room shower?

Also, at this point in time (as of March 19th), it has been almost one month since Mr. Wojtczak has had a shower!!

If Mr. Wojtczak does not shower regularly, he breaks out in very large cysts; this is also documented in his medical file. Since Mr. Wojtczak has not showered in almost one month, he is now starting to break out with these cysts.

Within this current situation of apparent contradictory standards for inmates with similar medical problems, and the inability of various "correctional professionals" to work and communicate in a cooperative and effective manner, I am left with grave concerns regarding Mr. Wojtczak's welfare, health, and on-going treatment, or lack thereof!

I appeal to you for your assistance in remedying this deplorable situation affecting Mr. Wojtczak. I would appreciate a written response from you regarding this disturbing matter.

Thank you for your anticipated assistance!

Sincerely,

*Donald E. Moyer*

Reverend Dr. Donald E. Moyer
2085 Swamp Pike
Gilbertsville, PA    19525
610-323-4424
610-323-4053

Spiritual Advisor to
   Mr. Richard Wojtczak, #AF5977



# Falkner Swamp Reformed Church
## of the United Church of Christ

2077 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4053

Parsonage:    2085 Swamp Pike
Gilbertsville, PA  19525
(610) 323-4424

Pastor
The Rev. Dr. Donald E. Moyer

March 24, 2001

The 2001 Consistory
Lisa Barto
Ken Berkowitz
Gennaro DeLena
Barry Hess
Brenda Hess
Donna Hoffman
Paul Kopec
Russell Miller
Doris Moser
Sue Novosel
Frank Straub
Becky Tyson

Dr. Roger Kimber, M.D.
Medical Director
SCI Huntingdon
1100 Pike Street
Huntingdon, PA    16652

Dear Dr. Kimber,

In a recent letter dated March 19, 2001, Mr.
Richard Wojtczak, #AF5977, an inmate at SCI
Huntingdon, informed me of a deplorable situ-
ation affecting Mr. Wojtczak.  I seek out your
assistance in addressing certain circumstances
that directly affect Mr. Wojtczak's welfare,
health, and on-going treatment.

Mr. Wojtczak suffers from a degenerating bone disease in both
knees and his hips, and a degenerative disc in his spine.  This is
a chronic and incurable condition, and it is well documented in Mr.
Wojtczak's medical file.

Even with the use of a cane, it is extremely difficult and very
painful for Mr. Wojtczak to walk a long distance, as well as walk-
ing for any extended period of time.  Standing for any length of
time is also difficult and painful.

Last year, Mr. Wojtczak's condition deteriorated to the point
where he could no longer walk to and from the dining hall to eat
his meals.

According to Mr. Wojtczak, for a long time you and the medical
department have been well aware of Mr. Wojtczak's disabling con-
dition.  And yet, I am puzzled by your refusal to authorize Mr.
Wojtczak's taking his meals in his cell, thus eliminating diffi-
cult and painful extended walking.

Subsequently, from October 5, 2000, to November 8, 2000, Mr. Wojt-
czak was not fed by the prison since he could not walk the dist-



Page 2

ance to the dining hall.



A second concern involves Mr. Wojtczak's showering ar-
rangements.  For the past several years, Mr. Wojtczak
has been allowed to shower in the infirmary-medical de-
partment.  This was allowed because of a respiratory
condition that Mr. Wojtczak has; he suffers from short-
ness of breath, high blood pressure, and some emphysema
(all documented in Mr. Wojtczak's medical file).

Due to the heat and steam in the general population / cell block
showers, Mr. Wojtczak cannot shower there.  He gets dizzy, light-
headed, feels faint, and at times, was even on the verge of pass-
ing out.  Fortunately, you granted Mr. Wojtczak's latest approval
for these shower arrangements in the infirmary for one year (un-
til December, 2001).

In addition to Mr. Wojtczak, there were several other inmates
showering in the infirmary for various medical reasons.

On February 27, 2001, Mr. Wojtczak was told by a nurse named Ivon
that he could no longer shower in the infirmary.  Mr. Wojtczak was
told that the infirmary showers were being closed down.  He was
told to speak to Unit Manager Scott Walters as to where he was to
shower.

On February 27, 2001, Mr. Wojtczak wrote a request slip to Mr.
Scott Walters (Unit Manager, BA Unit) asking where he was to sho-
wer.  Mr. Walter's response:  "I have asked medical to re-evaluate
your ability to shower with general population.  When they respond
to me I will let you know."

On March 1, 2001, Mr. Wojtczak spoke with you.  You were aware of
Mr. Wojtczak's respiratory problems, etc., therefore, making it
impossible for Mr. Wojtczak to shower in the cell block showers.
According to Mr. Wojtczak, you told him that you would let him
know where he could shower.

On March 14, 2001, Mr. Wojtczak spoke with Nurse Patty Everhart
about where he was to shower.  Mr. Wojtczak reviewed with Nurse
Everhart the situation regarding the heat and steam of the showers
in the cell block showers.  Nurse Everhart told Mr. Wojtczak that
she was waiting to hear from Unit Manager Walters as to what was
available for Mr. Wojtczak.  At that time, Mr. Wojtczak informed
Nurse Everhart that it had been two weeks since he had had a sho-
wer, and he questioned how long it was going to take to work out a
solution so that he could shower.  There was no response from
Nurse Everhart.

It became apparent that Nurse Everhart was waiting to hear from
Unit Manager Walters, and Unit Manager Walters was waiting to hear
from the medical department!.... As I learn of this dilemma, it
appears to be an attempt to not make a decision and resolve the
situation, while simply telling Mr. Wojtczak that "someone else"
will decide -- and yet, everyone is waiting for the "other" person



to act?!

Mr. Wojtczak had asked Nurse Everhart why he could not shower in the ATA Room shower. Nurse Everhart said that "...the Deputy Superintendent said the ATA Room shower is 'off limits', absolutely no one is to shower in the ATA shower."

Mr. Wojtczak asked Nurse Everhart what she was talking about, since there are already three inmates showering in the ATA Room shower. There was no response from Nurse Everhart.

Mr. Wojtczak informs me that one inmate has a respiratory problem. (Mr. Wojtczak has a respiratory problem.) One inmate has leg and back problems, but does not need a cane to walk. (Mr. Wojtczak has leg and back problems and does need a cane to walk.) Mr. Wojtczak does not know the medical problems of the third inmate.

The obvious point here is that at least two of these inmates have very similar medical problems to Mr. Wojtczak; thus, why can't Mr. Wojtczak shower in the ATA Room shower?

Also, at this point in time (as of March 19th), it has been almost one month since Mr. Wojtczak has had a shower!!

If Mr. Wojtczak does not shower regularly, he breaks out in very large cysts; this is also documented in his medical file. Since Mr. Wojtczak has not showered in almost one month, he is now starting to break out with these cysts.

Within this current situation of apparent contradictory standards for inmates with similar medical problems, and the inability of various "correctional professionals" to work and communicate in a cooperative and effective manner, I am left with grave concerns regarding Mr. Wojtczak's welfare, health, and on-going treatment, or lack thereof!

I appeal to you for your assistance in remedying this deplorable situation affecting Mr. Wojtczak. I would appreciate a written response from you regarding this disturbing matter.

Thank you for your anticipated assistance!

Sincerely,

*Donald E. Moyer*

Reverend Dr. Donald E. Moyer
2085 Swamp Pike
Gilbertsville, PA   19525
610-323-4424
610-323-4053

Spiritual Advisor to
   Mr. Richard Wojtczak, #AF5977



**JEFFREY A. BEARD, Ph.D.**
SECRETARY
DEPARTMENT OF CORRECTIONS

**COMMONWEALTH OF PENNSYLVANIA**

**STATE CORRECTIONAL INSTITUTION**

**AT HUNTINGDON**

1100 Pike Street
Huntingdon, PA 16654-1112
Phone: 814-643-2400

**KENNETH D. KYLER**
SUPERINTENDENT

Address All Replies
To Superintendent

April 3, 2001

Reverend Dr. Donald E. Moyer
2085 Swamp Pike
Gilbertsville, PA  19525

Dear Reverend Moyer:

Your recent letter of March 24, 2001 regarding Inmate Wojtczak, AF5977 was received and reviewed.

Your questions and concern regarding his medical needs are noted.  However, due to the medical confidentiality aspect of health care, Mr. Wojtczak's medical problems and his medical plan of care will not be discussed. What I can tell you is that we have no inmates here at SCI-Huntingdon who are unable to walk to the dining room, walk to the commissary, walk to the visiting area, walk outside to the yard, or even negotiate the steps to the library or chapel.

*Wrong*

If we had an inmate who was unable to get around in our institution due to medical needs, he would be transferred to SCI-Smithfield and placed in the inpatient infirmary. *the Hole*

*wrong*

We take great pride in providing a quality service to the public, the inmates, and the staff.

*Lies*

Sometimes it is necessary to make a change in policies and procedures to make improvements.  Showering in medical was discontinued so that we could provide a more confidential and secure area to do sick call and doctor line.  Also, the institution is in the process of making physical changes in the general showers to accommodate inmates with special needs.  In the meantime, Mr. Wojtczak has the choice to either shower on his block or do a sponge bath in his cell.  Furthermore, comparing Mr. Wojtczak's situation to an inmate who has only one leg and another inmate who requires a full-trunk appliance in order to stand is a pitiful comparison.

*wrong*

*Lie*

*"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*



Page 2
Reverend Dr. Donald E. Moyer
April 3, 2001

You need to be aware that all people do not tell the complete truth when those individuals are seeking to gain or keep special privileges.

This institution has been fully ACA accredited for at least 15 years. ACA accreditation is not readily attainable by all institutions. Furthermore, the Medical Department has been recognized by the DOC, BHCS for excellency in patient care.

It is my belief that you were mislead by what this inmate told you. Hopefully, my response has given you some reassurance as to the care we provide the inmates incarcerated here at SCI-Huntingdon.

Sincerely,

Kenneth D. Kyler
Superintendent

KDK:PAY:cb

cc: Deputy Williamson
    Unit Manager Walters
    File

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P. O. BOX 598
CAMP HILL, PENNSYLVANIA 17001-0598

April 3, 2001

OFFICE OF THE
SECRETARY OF CORRECTIONS

Rev. Dr. Donald E. Moyer
2077 Swamp Pike
Gilbertsville, PA 19525

Dear Rev. Moyer:               RE: Richard Wojtczak, AF-5977

This is in response to your letter dated March 24, 2001, concerning inmate Richard Wojtczak, AF-5977. Your letter included several allegations about improper treatment, and they will be addressed.

Your first concern is that inmate Wojtczak is not authorized to take meals in his cell. He has been evaluated by medical personnel, and it was determined that he should use a walker to get to the dining room and whenever he was out of his cell. He refused the walker and declined canes, yet he was still able to walk past the inmate dining hall and make it to commissary. If he were not fed, it was not because food was unavailable to him.

Your next concern involves showering arrangements. According to SCI Huntingdon staff, inmate Wojtczak has had the opportunity to shower daily in the ATA room or with general population on his unit. The nurse supervisor will speak with him and clarify this issue, although an ATA shower requires him to walk a further distance.

It appears the staff at SCI Huntingdon have addressed inmate Wojtczak's concerns. If you need any additional information, please feel free to contact the institution directly or share your concerns with me.

Sincerely,

Jeffrey A. Beard, Ph.D.
Secretary of Corrections

JAB/SRM:dk

cc:   Deputy Secretary Erhard
      Superintendent Kyler
      Central File
      File

(3)



| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

C/C

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
*Major Grace SCiH*

2. Date: *4-11-2001*

3. By: (Print Inmate Name and Number)
*RICHARD WOJTCZAK AF5977*
*Richard Wojtczak*
Inmate Signature

4. Counselor's Name
*Leighty*

5. Unit Manager's Name
*Walters*

6. Work Assignment
*medically unable to work*

7. Housing Assignment
*BA 1040 cell*

8. Subject: State your request completely but briefly. Give details.

*Dear Sir,*
*Concerning the ATA room shower — — —*
*We need a wooden chair to sit on to dress & undress & dry off — —*
*Also need a Shower Head for shower.*

*Thank you.*

9. Response: (This Section for Staff Response Only)

To DC-14 CAR only ☐                To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date
Print                Sign

Revised July 2000

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

*C/C*

Commonwealth of Pennsylvania
Department of Corrections

*pee*
*4-30-2001*
*pee*

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

*K- Kyler Superintendent SCiH*

1. To: (Name and Title of Officer)

*Richard Wojtczak AF5977*

2. Date: *4-17-2001*

3. By: (Print Inmate Name and Number)

_____ Inmate Signature

4. Counselor's Name *Leighty*

5. Unit Manager's Name *Walter*

6. Work Assignment *medically unable to work*

7. Housing Assignment *BA 1040 cell*

8. Subject: State your request completely but briefly. Give details.

*Concerning the ATA room showers. I wrote to Major Grace on 4-11-01 (attached) with no response. So I write to you.*

*We need a chair to sit on to dress & undress - dry off.*

*We need a place to hang our clothes so they don't get wet.*

*We need a showerhead on the shower.*

*Thank you,*

9. Response: (This Section for Staff Response Only)

*Not true* ✗

Wojtczak:

I have received and reviewed your request. A chair is being provided. There is a showerhead on the shower. You may place your clothing on the countertop to keep it dry.

cc: DC-15
    File

*The "showerhead" Does NoT WORK* | *He didn't Turn on the water* |
*Not!!*

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

*64*
*26*

Staff Member Name *J L. Grace* / _____ Date *4/26/01*
                    Print                  Sign

Revised July 2000





*rec*
*5-19-2001 rec*

(■)
(10)

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PENNSYLVANIA 17001-0598**
**(717) 975-4859**
May 14, 2001

Richard Wojtczak, AF-5977
SCI Huntingdon

Dear Mr. Wojtczak:

I am responding to your recent letter in which you are questioning our minimum custody and security guidelines and facilities.

First of all a custody level 2 (minimum) inmate is one who demonstrates patterns of non-aggressive behavior. By their behavior and record, they require intermittent, direct observation by staff.

Security level 2 facilities have a less restrictive environment with more open space and less restriction of activities.

Our current custody level 2 facilities for men are SRCF Mercer, SCI Waynesburg, SCI Laurel Highlands and SCI Waymart.

There are a few inmates with higher custody level at those facilities that have been placed there for medical, psychological reasons, protection or special needs.

Hopefully this information addressed your concerns.

*one of my special needs XX*
*is ___ I MUST have a SINGLE X*
*CELL (No inmates in cell with me.)*
*Z status is single cell*

Sincerely,

Donald Williamson
Coordinator/Diagnostic & Classification
Bureau of Inmate Services

DW/jk

cc:    Supt.  Kenneth Kyler (HUN)
       File



(6)

PENNSYLVANIA DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PENNSYLVANIA 17001-0598
(717) 975-4859
May 14, 2001

Richard Wojtczak, AF-5977
SCI Huntingdon

Dear Mr. Wojtczak:

I am responding to your recent letter in which you are questioning our minimum custody and security guidelines and facilities.

First of all a custody level 2 (minimum) inmate is one who demonstrates patterns of non-aggressive behavior. By their behavior and record, they require intermittent, direct observation by staff.

Security level 2 facilities have a less restrictive environment with more open space and less restriction of activities.

Our current custody level 2 facilities for men are SRCF Mercer, SCI Waynesburg, SCI Laurel Highlands and SCI Waymart.

There are a few inmates with higher custody level at those facilities that have been placed there for medical, psychological reasons, protection or special needs.

Hopefully this information addressed your concerns.

Sincerely,

Donald Williamson
Coordinator/Diagnostic & Classification
Bureau of Inmate Services

DW/jk

cc:    Supt.  Kenneth Kyler (HUN)
       File

