FORM DC-141 PART 1
Rev 3/80

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

A 472303

☑ MISCONDUCT REPORT    ☐ OTHER    ☐ DC-ADM 801 INFORMAL RESOLUTION

| DC Number | Name | Institution | Incident Time 24 Hr. Base | Incident Date | Date of Report |
|---|---|---|---|---|---|
| AF5977 | ~~Wojtcook~~ Wojtczak | SCIH | 1525 | 10-18-01 | 10-18-01 |

| Quarters | Place of Incident |
|---|---|
| BA 1040 | 1st floor of medical dept. |

**OTHER INMATES OR STAFF INVOLVED OR WITNESSES (CHECK I OR W)**

| DC Number | Name | I | W | DC Number | Name | I | W |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**MISCONDUCT CHARGE OR OTHER ACTION** Class 1 - #35 Refusing to obey an order #43 Presence in an unauthorized area.

**STAFF MEMBER'S VERSION** Sir, on the above date and time, while working as the infirmary complex officer, inmate Wojtzcak came to the medical dept for his evening meal as he usually does. Inmate Wojtzcak has a doctors order that he is to eat in the medical dept. The kitchen worker had delivered his tray and it was on the side of the desk. Inmate Wojtzcak came in and recieved his insulin and instead of sitting at the desk to eat he entered the treatment area where a doctor was on the phone and two nurses were talking. I asked inmate Wojtzcak where he was going and he stated "I'm going to get a table." I then ordered inmate Wojtzcak out of room. Inmate Wojtzcak proceeded into the room and got the table before exiting the room. I again told inmate Wojtzcak that the room was an unauthorized area to which he stated "Well, I'll have to have someone talk to you.

**IMMEDIATE ACTION TAKEN AND REASON** INVESTIGATED - No further inquiry NEEDED. Inmate informed of report. Remain present Status Till hearing. INAppropriate for informal resolution due to security concerns.

| PRE-HEARING CONFINEMENT | | | FORMS GIVEN TO INMATE |
|---|---|---|---|
| IF YES | | | ☐ REQUEST FOR WITNESSES AND REPRESENTATION    ☑ INMATE'S VERSION |
| ☐ YES | TIME | DATE | |
| ☑ NO | | | |

| REPORTING STAFF MEMBER SIGNATURE AND TITLE | ACTION REVIEWED AND APPROVED BY RANKING C.O. ON DUTY    SIGNATURE AND TITLE | DATE AND TIME INMATE GIVEN COPY |
|---|---|---|
| R. McCall C01 | | DATE 10/18/01    TIME 24 HOUR BASE 1720 |

| YOUR HEARING MAY BE SCHEDULED ANY TIME AFTER | | MISCONDUCT CATEGORY | Signature of Person Serving Notice |
|---|---|---|---|
| DATE 10-20-01 | TIME 0800 | ☑ CLASS 1  ☐ CLASS 2 | Co II D. Arnold |

**NOTICE TO INMATE**

You are scheduled for a hearing on the allegation on the date and time indicated or as soon thereafter as possible. You may remain silent if you wish. Anything you say will be used against you both at the misconduct hearing and in a court of law, if this matter is referred for criminal prosecution. If you choose to remain silent, the hearing committee/examiner may use your silence as evidence against you. If you indicate that you wish to remain silent, you will be asked no further questions. If you are found guilty of a Class 1 misconduct, any pre-release status you have will be removed.

WHITE — DC-15    YELLOW — Inmate    PINK — Reporting Staff Member    GOLDENROD — Deputy Superintendent Facility Management

ADM 801 Inmate Discipline Policy Attachment C-1

(19)

| DC-141 Rev. 6-84 | PART II B | COMMONWEALTH OF PENNSYLVANIA | | | | |
|---|---|---|---|---|---|---|
| DISCIPLINARY HEARING REPORT | | DEPARTMENT OF CORRECTIONS | | | | |

| DC Number | Name | Institution | Hearing Date | Hearing Time | No. from Part I |
|---|---|---|---|---|---|
| AF-5977 | Wojtczak, Richard | SCIH | 10/22/01 | 0820 | A472303 |

| INMATE PLEA | ☐ Guilty ☒ Not Guilty | ☐ No Plea ☐ Other | Verdict | ☒ Guilty ☒ Not Guilty |
|---|---|---|---|---|

**HEARING ACTION**

CHARGES   35 Refusing to obey an order
          43 Presence in an unauthorized area

FINDINGS OF FACT, VERDICT, AND SANCTIONS IMPOSED

Wojtczak pleads not guilty.

Wojtczak testifies he gets this table every day to eat. CO McCall has seen him do it & never said anything. On the 18th he did as usual & as he exited the room with the table CO McCall said "I should write you up." Contends he received no order prior to entering the room.

Examiner points out this is not an issue as to what Wojtczak has done in the past. It is an issue if — was there an order issued & did Wojtczak comply to the order. The report is believed Wojtczak entered the treatment area & was asked where he was going. Wojtczak responded "to get a table." CO McCall then ordered him out but Wojtczak "proceeded into the room & got the table before exiting ... The handbook requires inmates to immediately comply to the last order given. If inmate he is to comply & file a grievance at a later time. As per the report Wojtczak did not comply to the order.  Guilty 35 Dismiss 43

| ☒ YES | ☐ NO | The inmate has heard the decision and has been told the reason for it and what will happen. | 30 days loss Blackout 4 m & 84m phone |
|---|---|---|---|
| ☒ YES | ☐ NO | The circumstances of the charge have been read and fully explained to the inmate. | |
| ☒ YES | ☐ NO | The opportunity to have the inmate's version reported as part of the record was given. | SEE APPENDICES Reversal ☐ 1-3 A Jackd |
| ☒ YES | ☐ NO | The inmate has been advised that within 15 days a request for a formal review may be submitted and that this request must contain specific reasons for the review. | 10/22/01 |

not misc was '97

DC 141 II A, C

NAME(S) OF HEARING EXAMINER/COMMITTEE
(TYPED OR PRINTED)

Mr. Richard Norris
Hearing Examiner

Hearing Report and all appended information must be signed. Signature indicates finished report with appendices.

SIGNATURE OF HEARING EXAMINER/COORDINATOR

(4)

DC-141    PART II E                COMMONWEALTH OF PENNSYLVANIA
MISCONDUCT HEARING APPEAL          DEPARTMENT OF CORRECTIONS

| DC Number | Name | | Institution | No. from PART I |
|---|---|---|---|---|
| AF5977 | RICHARD WOJTCZAK | C/C | SCiH | A472303 |

Sent 10-31-01 RW

I was found guilty of misconduct # ___A 472303___ on ___10-22-01___ (date) by the
Hearing Committee/Examiner, and I wish to appeal that decision on the following grounds:
Check Area(s) Involved

a. The procedures employed were contrary to law,
Administrative Directive 801, or to the ICU
Consent Decree;                                          

b. The punishment is disproportionate to the offense;    

c. The evidence was insufficient to support the decision. 

Below is a brief statement of the facts relevant to my claim(s). It includes the identity of all
persons who may have information which may be helpful in resolving this matter.

I have attached documents concerning this Misconduct, including inmate versions of the incident. I was Not in an Unauthorized Area; I did Not refuse to obey an order. The hearing examiner, R. Norris, denied my request to call witnesses who did have information that would have been helpful in resolving this Matter. The witnesses - persons information would clearly show that I was NOT in an Unauthorized Area, therefore I could Not have refused to obey an order. Persons are: Nurse supervisor Patty Everhart, officers F. States, Evening, B. Craig, K. Owens. (and other staff in infirmary). Hearing Examiner ignored facts that Co, R. McColl had seen me at this Table on numerous prior occasions; Co, R. McColl did Not inform me of the charges he was making in the infirmary; Co, R. McColl did Not have an infirmary inmate worker get this Table for me; and Co, R. McColl's Prior History of harassing inmates. The Hearing Examiner just flatly denied My Defense to these unfounded charges! Not even the Minimum of Any Due Process! Just, I believe the guard, not the inmate! Based on all of the facts, this Misconduct should be dismissed! The Hearing Examiner didn't even reduce the Misconduct to a CLASS 2!
Does this Misconduct effect in ANY WAY my classification as a Level 2, Minimum security inmate? If it does, how does it effect my CUSTODY STATUS?
Does this Misconduct effect my TRANSFER to SCi Laurel Highland? or is/or my TRANSFER to ANY OTHER Level 2, minimum security facility? If it does, how does it?
I have also attached my request slip to Tom Zimbiski dated 7-27-2001.

Richard Wojtczak C/C

To PRC

Misconduct # A472303 dated 10-18-01

10-19-01
Richard Dotoyshek AF5977
SCI Huntingdon, Pa.  C/C

Plea: Not guilty, the facts require this Misconduct to be dismissed.

Because of my disabilities, for approx 10 Months I have eaten my meals in the infirmary. I can Not bend my knees far enough to sit at the desk to eat, so I get a "little table" so I can eat. I have been getting this "table" for this entire time (ask officer: States, Everine, Craig, Owens). Also after I eat, I wash the plastic ware in the sink. CO, R.M. McCall has seen me do this on numerous numerous occasions the entire time he has been in the infirmary (approx 2 months). CO, R.M. McCall has Never said anything for this entire time, about me getting this "table", washing the plastic ware in the sink, or I am in an unauthorized area UNTIL 10-18-01. It should be Noted: NO ONE else in the infirmary (officers or medical staff) has ever said anything about me getting this "table", washing plastic ware, or "unauthorized area". Also, I am classified as a Level 2 minimum security inmate, I am Not a Security Concern. On 10-18-01 I did what I usually do, I got the table so I could eat. As I was coming through the door with this "table", CO, R.M. McCall told me I was in an "unauthorized area" - "I should write you up". I said to McCall I always get the "table" and you have seen me Numerous times. McCall again said "you are in an unauthorized area" and I should write you up. I told McCall that I would have someone talk to him. I sat down and ate supper. CO, McCall said to the relief officer, "these inmates just don't know who they're fuckin with". After I finished eating I went to shower in the ATA room. A Captain or Lt. asked me what happened in the infirmary, I told him. I thought that was the end of it. When I returned to the cell block I was given the Misconduct that McCall had written. On 10-19-01, I spoke with Nurse Supervisor Patty Everhart, she read the Misconduct. She said Misconduct was ridiculous and should Not have been written. I asked Nurse Everhart to be a witness at my hearing.

It should also be Noted: ① McCall had seen me get this "table" on numerous OTHER occasions before 10-18-01 AND Never said anything about an "unauthorized area". ② On 10-18-01 McCall Never said anything about "Unauthorized Area" until I was half way through the door with the "table". ③ McCall Never gave me any Warning of the changes he was making in the infirmary concerning this "table". ④ McCall DiD Not have an infirmary worker get this "table".

(one of 2)  ①

I did NOT refuse an Order; I was NOT in an "unauthorized area"!!

C.O. R McCall did NOT consider the 4 alternate methods of handling these situations. His ONLY thought was to "write me up", issue a Misconduct to harrasse me - (see my request slip to Tom Gerbich dated 7-27-01)

C.O. R McCall's conduct was unprofessional, conduct unbecoming a correctional officer and pure harassment.

Also considering C.O. McCall's past history of harrassing inmates, his Training as a professional correctional officer MUST be revisited, and disciplinary sanctions applied to him.

S/ _____ AF5977

10-19-01

CC: copy to,
hearing examiner at hearing.

(2 of 2) ____

Richard Kojtezyk A F5977
S.C.I. Huntingdon
10-19-01            O/c

Misconduct # A 472303 dated 10-16-01

10-19-01  7:30 pm  I talked with Nurse Patty Everhart (nurse supervisor) about this Misconduct.

She said that I always got my table to eat on, the misconduct should Never have been written! She said she would talk to Shift commander, the misconduct will be dismissed!

McCall has worked the 2PM-10PM shift in the infirmary for approx. 2 months, He-McCall has seen me get this table for me to eat on ALL that TIME! He-McCall has Never said a word about "unauthorized area" BEFORE! Now, all of a sudden it's an "unauthorized area"!

Now, when I wash my plastic ware in the sink, after I eat I will "again be in an authorized area" and get another "Misconduct"!

See copy of my Request Slip to
Tom Sembinski dated 7-27-01 attached!

I asked Patty Everhart, have I ever caused ANY problems, trouble to any of the staff in the Medical Dept., Ever? she said NO!

I told Patty Everhart, I have problems at Commissary; problems at ATA room showers; "problems in pill line"; now "problems when I eat in infirmary! What else do you have in store for me?

I told Patty Everhart that I MUST stay away from McCall, he will just keep giving me Misconducts!!

**Therefore, I will Not be eating supper in the infirmary any More AND I will NOT be coming to infirmary for my insulin at 3:30 PM!

In this way, I can do the best that I can to AVOID McCall and he can give his Misconducts to someone else!!

I fully expect, that when I refuse to eat supper in infirmary and Not take 3:30 PM insulin (to solve this problem of McCall, Sci. Huntingdon says Nothing; then just write STUPID Misconducts, to stay away from him) McCall will tell me to eat supper + take insulin - That's a direct order, McCall will give me Another Misconduct for refusing a direct Order!!!

I discussed All of this with Nurse P. Everhart she said she would talk to Shift Commander!

DC-141  PART III
PROGRAM REVIEW COMMITTEE ACTION
☒ Misconduct Appeal  ☐ Periodic Review ☐ Other

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

| DC Number AF-5977 | Name WOJTCZAK, Richard | Institution SCIH | Date of Review 11-14-01 | No. from PART I A472303 |
|---|---|---|---|---|

PROGRAM REVIEW COMMITTEE'S DECISION AND ITS RATIONALE

P.R.C. Formal Review of Misconduct #A472303

*(handwritten: 11-15-01 pw 7:10 PM)*

BASIS OF APPEAL:

1.  The procedures employed were contrary to law or to Administrative Directive 801.
2.  The punishment is disproportionate to the offense.
3.  The evidence was insufficient to support the decision.

DISCUSSION:

Mr. Wojtczak is appealing the instant misconduct based on his contention that the procedures employed were contrary to law and Admin Directive 801. He also believes the punishment was disproportionate to the offense and the evidence was insufficient to support the decision.

In his appeal, Wojtczak claims that the Hearing Examiner only listened to the officer's side of the story and did not even listen to anything that he had to say. He believes that the misconduct should be dismissed or reduced to a Class II.

On 10-18-01, Officer McCall issued a misconduct on Wojtczak for Refusing to Obey an Order and Presence in an Unauthorized Area. In the report, Officer McCall notes that Inmate Wojtczak refused to follow an order and moved a table XXXX which Officer McCall had told him not to move. The Hearing Examiner found Wojtczak guilty for Refusing to Obey an Order and sanctioned him 30 days Loss of Lockout Yard, Gym and Phone.

PRC has reviewed the misconduct report and subsequent appeal and finds that there are extenuating circumstances in this misconduct and will reduce the misconduct to a Class II. The decision of the Hearing Examiner is sustained and the sanction is reduced to a Class II misconduct.

Privilege restriction will stand.

## DECISION RELATIVE TO HEARING COMMITTEE'S VERDICT

☐ Not Applicable   ☐ Sustain   ☒ Sustain-Amend   ☐ Refer Back for Further Study   ☐ Exonerate Inmate

| Names of Program Review Committee Members | Signatures | Date |
|---|---|---|
| D.P. Elliott, Corrections Unit Manager | *signature* | 11/14/01 |
| A.S. Williamson, Deputy Supt./Cntrlzd Srvcs. | *signature* | 11-14-01 |
| J.L. Grace, Deputy Supt./Fclts Mngmnt. | *signature* | 4/4/01 |

ORIGINAL -DC-15   COPY-Inmate Cited   COPY-Staff Member Reporting Misconduct   COPY-Deputy Superintendent

Mr. Jeffrey A. Beard, Secretary

Pa. Dept. of Corrections
520 Lisburn Rd.
P.O. Box 598
Camp Hill, Pa. 17001-0598

P.O. Box 999
1120 Pike St.
Huntingdon, Pa. 16654-1112
certificate of mailing          c/c

(3)

Dear Mr. Secretary,

I have enclosed copies of "Misconduct #A472303 and my appeal of same. As I explained to Hearing Examiner Richard Norris, the Program Review Committee, Supt. Kyler and Robert S. Bitner, chief Hearing Examiner -- officer Riley McCall NEVER issued me an Order not to move a table! NOR did officer McCall issue me an Order to get out of the treatment area-room. The "misconduct" is a pure fabrication, McCall lied.

As usual, Richard Norris, the Program Review Committee, Supt. Kyler and Robert S. Bitner "chose to believe" McCall and NOT me (the inmate). To put it another way, McCall "told the truth and is believable," and I (the inmate) did NOT "tell the truth" and therefore NOT believable. The ONLY "evidence" that was considered was what officer McCall wrote in the "misconduct". This is new Veracity - Credibility.

In this particular case, luckily for me, there is relevant - truthful - credible evidence that clearly shows, that I am telling the truth AND officer McCall is NOT, AND he has No credibility at all.

While my appeal of this "misconduct" was pending before Robert S. Bitner, chief Hearing Examiner, evidence was made known to me which proves my innocence (i.e. After Discovered Evidence, which is also attached here). This After Discovered Evidence is the Medical Daily Assignment Sheet, which is the business records, kept daily, by S.C.I/Huntingdon, Pa. for 10-18-01, 3:25 PM date and time of this "misconduct".

This Evidence clearly shows that there were NOT "2 nurses talking in the treatment area-room" as officer McCall states AND Doctor Araneda, the only doctor on duty that day, says he has NEVER heard any officer or anyone else ever issue me an Order including 10-18-01, 3:25 PM.

I immediately mailed this After Discovered Evidence to Chief, Secretary's office, Inmate Grievances and Appeals on 1-11-02 by certificate of mailing (see attached).

As of the date of this letter I have received absolutely No response

(1)

whatsoever to the After Discovered Evidence.

Due to the peculiar environment of the prison setting, it may be that certain facts, relevant to the disciplinary determination, do not come to light until AFTER the formal hearing. It would be unduly restrictive to require such facts to be excluded from consideration — see Baxter V. Palmigiano, 96 Sct 1551 (1976); the exclusion of such evidence Violates Due Process — Graham V. Baughman, 772 F2d 441, 445 (8 Cir. 1985); Green V. Nelson, 442 F.Supp. 1047, 1057 (D. Conn. 1977).

There is No credible, truthful evidence to support my conviction of Misconduct A472303, these Due Process Violations significantly affected my ability to demonstrate my innocence — This Misconduct must be Expunged - Removed from my records - see Wolff V. McDonnell, 94 Sct 2963 (1974); Del Raine V. Carlson, 826 F2d 698, 707 (7 Cir. 1987); Hayes V. Thompson, 637 F2d 483, 493 (7 Cir. 1980); Morgan V. Ellerthorpe, 785 F.Supp. 295, 303 (D. R.I. 1992) — see also — King V. Cugler, 541 F.Supp. 1230, 1235 (E.D. Pa. 1982).

I write to you for your immediate intervention and resolution.

Sincerely,

S/ Richard Stoptysck

U.S. POSTAL SERVICE     CERTIFICATE OF MAILING
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT PROVIDE FOR INSURANCE—POSTMASTER

Received From:

Rev. Dr. Donald Moyer

2085 Swamp Pike

Gilbertsville, Pa. 19525

One piece of ordinary mail addressed to:

MR. Jeffery A Beard Ph.D. - Secretary

Pa. Dept. of Corrections — P.O. Box 598

520 Lisburn Rd.

Camp Hill, Pa. 17001-0598

PS Form 3817, Mar. 1989

0000

$0.75

U.S. POSTAGE PAID
GILBERTSVILLE, PA
19525-9998
MAY 10 02
AMOUNT
0002500-04

MR. Kenneth Ogden,
Superintendent
of Huntingdon, Penna.
1100 Pike St.
Huntingdon, Pa. 16654-1112

Richard Wojtczak AF5977
1100 Pike St.
Huntingdon, Pa. 16654-1112
c/c

This is an Appeal of the Program Review Committee's (PRC)
decision on Misconduct A472303. I have attached additional
documents to support my appeal.                          (3)
   This Misconduct is a total Fabrication
   by C.o., R. McCall!
   I must be exonerated of the 'charges' and
   the Misconduct MUST be dismissed!
The 'area' I was in was NOT an 'unauthorized area',
ALSO I did NOT 'refuse to obey an order'.

Even though Hearing Examiner, Richard Norris, REFUSED to contact
or allow me to call STAFF WiTNesses who had information which
would be helpful in resolving this matter ___ the STAFF WiTNesses
would testify that the 'area' I was in WAS NOT 'an unauthorized
area'! RICHARD NORRIS was unable to grasp this concept!
   I was found 'guilty' of the charge, 'Refusing to obey an Order'
   I was found NOT GUILTY of the charge, 'Presence in an unauthorized
   area'.

On appeal to the Program Review Committee (PRC) - D.P. Elliott -
unit manager; A.S. Williamson, Deputy Supt.; J.L. Grace, Deputy Supt.,
the PRC 'sustained the guilty verdict' on 'Refusing to obey an order'.
   The ONLY BASIS on which the PRC sustained this guilty verdict
on 'Refusing to obey an Order' IS, AND I QUOTE FROM THE
PRC Decision (attached) ___ In the RePoRT (Misconduct)
'officer McCall' notes that inmate Wojtczak refused to follow
an ORDER and MOVED A TABLE which 'officer McCall'
HAD ToLD HiM NoT To MoVE

With just the most cursory reading of this 'report' (Misconduct),
the pertinent parts, Unmistakably confirms the following ___

QUOTE from this 'report' (Misconduct) (attached)

" CAME TO THE MEDICAL DEPT. FOR HIS EVENING
MEAL AS HE USUALLY DOES " ___ "He
ENTERED THE TREATMENT AREA " ↓
ASKED INMATE WOJTCZAK WHERE HE WAS GOING
AND HE STATED ' I AM GOING TO GET A TABLE "

" I THEN ORDERED INMATE WOJTCZAK OUT OF ROOM "
" I AGAIN TOLD INMATE WOJTCZAK THAT THE ROOM WAS
AN UNAUTHORIZED AREA __ "

There is NOTHING, ABSOLUTELY NOTHING in the Misconduct
(report) that STATES 'Officer McCall' ORDERED me NOT TO
MOVE A TABLE WHICH 'Officer McCall' HAD TOLD ME NOT
TO MOVE !! (see Misconduct attached).

        Part of the 'Due Process' of Misconduct proceedings
     IS NOT MAKING UP 'EVIDENCE' !

     I am found 'guilty' of an 'infraction' which is
     NOT present in the alleged 'incident'.

A TOTALLY FABRICATED Misconduct by 'McCall' ___ the Program
Review Committee MAKES UP 'EVIDENCE' in order to find me 'guilty'
of 'SOMETHING' ___ AND EVERYONE AGREES' that this is a 'Valid'
Misconduct !! 'Correctional Professionals' - 'minimum Due Process' __
WHERE ??

         I must be exonerated of these 'charges'
     AND the Misconduct # A472303 must be
        Dismissed !

I am requesting real correctional professionals to investigate and
review this Misconduct in order to receive something that resembles
'Due Process', including GRIEVANCE # 6886 (attached).

I have also attached Grievance # 6886, a formal Complaint
against CO, R. McCall for writing a FALSE REPORT as an

OFFICIAL DOCUMENT.

Ms. Baney returned this Grievance #6886 to me, stating, the issue should be addressed through the Appeal Process (for Misconducts) established by DC-ADM 801. I am including this in my Appeal.

CO, R. McCall's Conduct is unprofessional AND unbecoming a Correctional Professional. This Conduct is INTENDED ONLY to harrass and provoke inmates, this is supported by McCall's LONG PAST HISTORY of provoking and harrassing inmates!

McCall's Unprofessional Conduct can NOT be part of his TRAINING as a Correctional Professional. Surely, the Pa. Dept. of Corrections DOES NOT condone such unprofessional conduct!

CO, R. McCall's aforementioned Conduct CAN NOT be allowed to continue Unchecked by the Pa. Dept. of Corrections AND S.C.I. Huntingdon.

This unprofessional Conduct goes "FAR BEYOND" - "JUST DOING HIS JOB"!

McCall is Not a 'trainee' NOR is he a 'Rookie' -- the training that he has received as a correctional officer MUST BE REVISITED and Disciplinary Sanctions imposed on him.

This, will at least, be a step in preserving the INTEGRITY of real Correctional Professionals.

S/ Richard Stopteyak

11-19-01

*1040*

COMMONWEALTH OF PENNSYLVANIA
**Department of Corrections**
**State Correctional Institution at Huntingdon**
(814)643-2400
December 14, 2001

**SUBJECT:**     Appeal of Misconduct # A472303

*received*
*12-19-01 (Rec)*

**TO:**     Richard Wojtczak, AF-5977
BA Unit

**FROM:**

Kenneth D. Kyler
Superintendent

My review of your appeal of misconduct # A472303 indicates it is based on your belief that:

A.  The procedures employed were contrary to law or Administrative Directive 801.

B.  The punishment is disproportionate to the offense.

C.  The evidence was insufficient to support the decision.

I have taken the opportunity to read your lengthy appeal, the Program Review Committee decision, your appeal to the PRC, and the entire misconduct packet. The report writer clearly establishes the charge of Refusing to Obey an Order. Officer McCall documents that after receiving your insulin, you proceeded into the Treatment area to obtain a table. He notes that he ordered you out of the room and you failed to comply with that order by proceeding into the room and getting the table before exiting the room. It is clearly established in the Inmate Handbook that you are required to immediately comply with an order that is issued. Although you continue to argue that this was your daily routine, Officer McCall documents that due to circumstances of staff being in the area and on the phone, the order was issued for you to get out of the room. A review of the disciplinary hearing report indicates that the misconduct hearing was conducted in accordance with the procedures established by DC-ADM 801. You continue to argue that the hearing examiner did not permit your staff witness as requested. However, the hearing examiner justifies denying your witness noting that Mrs. Everhart was not present to see or hear the incident. You fail to cite any other procedural errors in your appeal, and for these reasons, I find your argument of procedural error to be of no merit whatsoever. Based on the narrative content of the misconduct report, and the findings of fact as outlined by the hearing examiner, I find ample evidence on which to support a finding of guilt. The hearing examiner is charged with the responsibility of determining credibility, and in this instance, he chose to believe Officer McCall's account of the incident other than your denial of the charges.

It is noted that the PRC reduced this misconduct to a Class II indicating that the privilege restriction will stand. The amended sanction by the Program Review Committee is found to be both appropriate and proportionate in view of the offense.

For the reasons outlined above, I reject your appeal as lacking merit, and therefore sustain the decision of the hearing examiner.

KDK:tll

cc:     Deputies
Mr. R. Norris
DC-15
File

DC-ADM 804. Inmate Grievance System
DC-804
Part 3

**Attachment C**
**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Huntingdon**

**DATE:**                                     November 5, 2001

**SUBJECT:**        **Grievance Rejection Form**

| FOR OFFICIAL USE ONLY |
| :---: |
| **6886** |
| GRIEVANCE NUMBER |

**TO:**              Richard Wojtczak, AF-5977
                        BA Unit

*1040*

**FROM:**        *D. Barey*
                        Facility Grievance Coordinator

*per*
*11-6-01 pw*

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1.  __X__          Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator:

    (a.)  DC-ADM 801-Inmate Disciplinary and Restricted Housing Unit Procedures
    b.    DC-ADM 802-Administrative Custody Procedures
    c.    other policies not applicable to DC-ADM 804.

2.  _____          Block B must be completed, as per the Instruction #3 of the Official Inmate Grievance Form.

3.  _____          The grievance does not indicate that you were personally affected by a Department or facility action or policy.

4.  _____          Group grievances are prohibited.

5.  _____          The grievance was not signed and/or dated.

6.  _____          Grievances must be legible and presented in a courteous manner.

7.  _____          The grievance exceeded the two (2) page limit.  Description needs to be brief.

8.  _____          Grievances based upon different events shall be presented separately.

9.  _____          The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

10. _____          You are currently under grievance restriction. You may not file any grievances until ————————
                                                                                                                                                    Date

11. _____          Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility.

12. _____          The issue(s) presented on the attached grievance has been reviewed and addressed previously.

Note:

In reviewing this matter, I note that you have not even completed the appeal process of DC-ADM 801 and subsequently, this grievance will not be processed on your allegations that this is a false misconduct report. This issue should be addressed through the appeal process established by DC-ADM 801.

cc:   Mr. S. Walters, Mr. R. Leidy, DC-15, File

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

*C/C*

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

*S. Walters - Unit Manager BA*

1. To: (Name and Title of Officer)
   *Richard Wojtczak AF5977*

2. Date: *11-15-01*

3. By: (Print Inmate Name and Number)

   *Richard Wojtczak*

   Inmate Signature

4. Counselor's Name *Leidy*

5. Unit Manager's Name *Walters*

6. Work Assignment
   *medically unable to work*

7. Housing Assignment
   *BA 1040 cell*

8. Subject State your request completely but briefly. Give details.

*On 10-31-01 I sent my appeal of MISCONDUCT # A472303 to the Program Review Committee (witnessed by Sergt. Hagen). I have NOT received the PRC decision yet = See DC-ADM Pol. I.g.(7). "5 working days of receipt of appeal." (See rule I.a). Please look into this for me.*

*Thank you.*

C/C

9. Response. (This Section for Staff Response Only)

*I received PRC decision on Wednesday 11-15-01, 9:15 PM after I sent in this request slip!*

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

Staff Member Name _____ / _____ Date _____

Print                          Sign

Revised July 2000

DC-804 
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

*C/C*

FOR OFFICIAL USE ONLY
#7815
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Mr. Baney | Sci Huntingdon | 12-14-01 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| Richard Wojtczak AF5977 | Richard Wojtczak | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| medically unable to work | BA 1040 cell | |

INSTRUCTIONS:
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2  State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

Following the Mandates of DC-ADM 801, I sent my Appeal of Misconduct # A472303 10-18-01 (fifth denial by PRC) to Superintendent Kyler on 11-19-01. By 12-7-01 I had Not received a response from Supt. Kyler on my Appeal of this Misconduct. On 12-7-01 I wrote a Request Slip to Supt. Kyler (with a copy of my Appeal I sent him on 11-19-01 attached) stating that I had not received his response to my Appeal. I also reminded Supt. Kyler of the Mandates of DC-ADM 801, I, 2 C. As of this date 12-14-01 I still have Not received a response to my Appeal of Misconduct # A472303 from Supt. Kyler. Without this response I can Not "exhaust my administrative remedies". Now I must file yet another inmate Grievance which should Not be necessary.

received
12-28-01
Rd
12-28-01 rw

C/C

**B.** List actions taken and staff you have contacted, before submitting this grievance.

sent Request Slip to Supt. Kyler again; DC-ADM 801, I, 2 C.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

D. Baney
_____
Signature of Facility Grievance Coordinator

12-17-01
Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised
December 2000

(8)

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>C/C          C/C<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|
| *Nurse Supervisor P. Everhart*<br>1. To: (Name and Title of Officer)<br>*RICHARD WOJTC ZAK AF5977*<br>3. By: (Print Inmate Name and Number)<br><br>*Richard Wojtyak*<br>Inmate Signature | 2. Date:<br>*10-22-2001*<br>4. Counselor's Name *Leidy*<br>5. Unit Manager's Name<br>*Walters* |
| 6. Work Assignment<br>*medically unable to work* | 7. Housing Assignment<br>*BA 1040 cell* |

8. Subject: State your request completely but briefly. Give details.

*I want to make this a formal statement in Writing!*

*The misconduct #A472303, dated 10-18-01 that you read on 10-19-01 (McCall issuing this Misconduct to me).*

*I was found guilty of this Misconduct #A472303 at my hearing on 10-22-01*

*As I told you on 10-19-01, if C.O. R. McCall is working the infirmary I Will NoT be down to infirmary to EAT and/or get medicine!!*

*I Will STAY AWAY FROM C.O. R. McCall.*

*Richard Wojtyak*

C/C

9. Response: (This Section for Staff Response Only)

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

Staff Member Name _____ / _____ Date _____
                              Print                    Sign

Revised July 2000

*(Part 1 of 2)* 1040 BA   AF 5977

(8)

| Form DC-135A | Commonwealth of Pennsylvania |
| --- | --- |
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

C/C

INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

*Nurse Supervisor P. Crockett*

1. To: (Name and Title of Officer)
   RICHARD WOJTZAK   AF-5977

2. Date: 10-22-2001   C/C

3. By: (Print Inmate Name and Number)

   *Richard Wojtzak*
   Inmate Signature

4. Counselor's Name *Leidy*

5. Unit Manager's Name *Walters*

6. Work Assignment
   *medically unable to work*

7. Housing Assignment
   *BA 1040 cell*

8. Subject: (State your request completely but briefly. Give details.)

As we discussed on 10-19-01, Misconduct #A472303 dated 10-18-01 "in an unauthorized area", "refusing to obey an order" (me sitting in the infirmary "Table"). As the Medical Dept. is well aware, I have Degenerating bone disease in my knees, hips, and disc in spine. Causing me extreme pain — I can NOT walk very far, I can NOT stand too long, I MUST SiT Down. I've also discussed me having even MORE CONFLICT with the guards and the staff NOT wanting to "hear anything about my Disabilities." I have explained these CONFLICTS to you — (1) Commissary — after a very long walk to commissary, I MUST SiT DOWN, Guards at commissary tell me to stand in line or go Back to my cell. Capt. Lawnty is no longer interested in this situation. I have to have another inmate go to commissary with me to carry my Commissary back — (2) ATA room showers — after the long walk to shower, I MUST SiT Down! After I shower I MUST SiT DOWN until the pain subsides before I walk back to my cell. Guards at the center ask why I am sitting down I explain I told - you can't sit here go back to your cell. I have another inmate walk back with me, in case I fall —— (3) Pill Line — I had to stop going to pill line I can NOT stand in line. When I sit down to wait, guards tell me to get in line or go back to your cell —— (4) Eating in infirmary. Now see CONFLICT —

9. Response: (This Section for Staff Response Only)                                    (Cont. Part 2)

Mr. Wojtzak
   , as I have told you I work with your Unit mgr & the Shift Commanders regarding your concerns and during shower time & commissary times. I understand your concerns regarding avoiding conflict but not eating or taking your insulin is not in your best medical interest, as we discussed. Currently you are still on the list for personal care needs at a different facility and we can't move further until beds are available.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
| --- | --- |

Staff Member Name *Everhart Ross*  /  *Pam Everhart Ross*   Date 10-25-01
          Print                              Sign

Revised July 2000

*(Part 2 of 2)*

| | |
|---|---|
| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** *(Cont.)*<br><br>*Nurse Supervisor P. Everhart* | *C/C*<br>Commonwealth of Pennsylvania<br>Department of Corrections<br>**INSTRUCTIONS** *(Cont.)*<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

1. To: (Name and Title of Officer)
   *Richard Wojtczak AF5977*

2. Date: *10-22-2001*   *C/C*

3. By: (Print Inmate Name and Number)

   *[signature]*
   Inmate Signature

4. Counselor's Name *Leidy*

5. Unit Manager's Name *Walters*

6. Work Assignment
   *medically unable to work*

7. Housing Assignment
   *BA 1040 cell*

8. Subject (State your request completely but briefly. Give details.

*when I go to eat in infirmary I get a Misconduct issued by a PSYCHOTIC guard! STRIFE at Commissary - ATA - barbershop - Pill line - Eating in infirmary — What ELSE is coming? I have attached my wrote up to Scott Walters, unit manager, dated 10-2-01. I received NO response from Walters! NO reasonable accommodations have been made for my Disabilities: church - chapel; eye doctor SCI; law library; Mental Health Clinic; barbershop; Commissary; Dentist; Showers (DC-ADM006) — NOTHING but STRIFE! This Clark (Misconduct) Now STRIPS me of my Level 2, Minimum security status AND my TRANSFER to a Level 2, minimum security facility!! Because of a PSYCHOTIC guard! "Correctional Professionals"? Where? I am Directing you to give me DETAILED WRITTEN instructions —to take a ston; washing my plaster there; where I sit when I eat; all other information you believe I should have concerning the infirmary so I don't (Violate any rules regulation - so I am Not in unauthorized areas ETC.! Again, I am informing you — when C/O R. McCall is working infirmary complex and/or traffic control desk at infirmary complex — I will NOT be down to infirmary for insulin or to eat!*

*[signature]*

9. Response: (This Section for Staff Response Only)

*The optometrist is here & when you are scheduled we will assist you any way we can in facilitating that visit. The mental health coordinator does have regular contacts with you. I cannot speak for Mr. Walters.*

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

Staff Member Name *Everhart RN3*  /  *[signature]*   Date *10-25-01*
Print                                Sign

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY

#6886

GRIEVANCE NUMBER

(4

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Baney | SCi Huntingdon | 11-2-2001 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Richard Wojtczak AF5977 | Richard Wojtczak AF5977 C/c |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| medically unable to work | BA 1040 cell |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

I am filing this FORMAL GRIEVANCE against Co. R. McCALL, in order to exhaust my administrative remedies. Co. R. McCALL issued me Misconduct #A472303, dated 10-18-01.

**\*\*\* This Misconduct is a filing of a FALSE REPORT, \*\*\***
a legal, official document by Co. R. McCall.

I did NOT refuse to obey an order, I was NOT in an "unauthorized area." Co. R. McCALL's ONLY INTENTION for writing this FALSE REPORT is to harass, provoke, intimidate and taunt. Co. R. McCall is attempting to have my Level 2, minimum security status classification taken from me!

Co. R. McCall's CONDUCT is "inappropriate", CONDUCT unbecoming a Correctional professional, and is INTENDED ONLY to harass and provoke, for No other purpose!

Also considering Co. R. McCall's PAST HISTORY of harassing and provoking inmates, his TRAINING as a Correctional professional MUST be revisited and Disciplinary Sanctions imposed against him.
Please see documents attached. Not enough space provided to explain incident. (over)

B. List actions taken and staff you have contacted, before submitting this grievance.

talked with: Nurse Supervisor Patty Everhart.

**NOTE:** This is NOT an "appeal", in any way, shape, or form of Misconduct #A472303!
THIS IS a FORMAL GRIEVANCE against Co. R. McCall for FILING A FALSE REPORT (see above \*\*\*) AND HARASSMENT!

Your grievance has been received and will be processed in accordance with DC-ADM 804.

| W Baney | 11-2-01 |
|---|---|
| Signature of Facility Grievance Coordinator | Date |

**WHITE** - Facility Grievance Coordinator Copy   **CANARY** - File Copy   **PINK** - Action Return Copy   **GOLDENROD** - Inmate Copy
Revised

Chief Secretary's Office                    12-20-2001
Inmate Grievances and Appeals        Richard Wojtezok AF5977
25.20  Leibum Rd.                            SCI Huntingdon, Pa.
P.O. Box 598                                 1100 Pike St.
a Dept. of Corrections                       Huntingdon, Pa. 16652-1112
Camp/Hill, Pa. 17001-0598                    cut print of Mailing    c/c

Re: Appeal of Misconduct #A472303, dated 10-18-01

This is my Appeal of Misconduct #A472303 (DC-ADM801, I, 3, a&c).
I have attached additional documents to support my Appeal.

    I am Requesting an Attorney to Review my
Appeal (DC-ADM801, I, 3, & c). An Attorney is
competent to consider which is FACTUAL EVIDENCE
and which EVIDENCE is NOT FACTUAL.
An Attorney is less likely to ignore the Very
Minimum of the Due Process requirements
of the Misconduct Procedures. An Attorney
will Not ignore Procedural Errors.

① It first must be noted, I filed my Appeal to Supt. Kyler on 11-19-01,
I Did NOT receive Supt. Kyler's response until 12-19-01 (1 Month). Mr.
Kyler had "three working days to respond to my Appeal" (DC-ADM801, I,
3, C). I sent Mr. Kyler a Request slip dated 12-7-01 about this Delay,
I Received No Response! I then filed an Inmate Grievance dated
12-14-01 about this Inordinate Delay, I received No Response!
(see documents attached).

    I was Not notified that there would be a Delay in my Appeal, I
was NOT notified as to the Reason for the Delay in my Appeal, Supt.
Kyler Does NOT address this 1 Month Delay in my Appeal in her Response
PROCEEDURAL ERROR (A)   Mr. Kyler's Response to my Appeal must be
dismissed as UNTimely, and STRUCK from the record as PROCEEDURAL DEFAULT.

② Mr. Kyler ignored (among other things – OTHER FACTUAL EVIDENCE) the Program
Review Committee's (PRC) BASIS for finding of 'guilt' on "Refusing
to obey an Order" (that I moved a TABLE which McCall "ordered" me not
to move) (PRC decision attached). An examination of the Misconduct
Report (attached) CLEARLY SHOWS No SUCH 'ORDER' was given!

①



I can NOT be found 'guilty' of a charge (WITHOUT FACTUAL EVIDENCE) PROCEEDURAL ERROR ⑧

The PRC just "MADE UP THIS EVIDENCE" in order to find me 'guilty' of 'something'. "DUE PROCESS", the very minimum Due Process in Misconduct Procedures DOES NOT include MAKING UP EVIDENCE! PROCEEDURAL ERROR ⓒ

③ I pointed out this "MADE UP EVIDENCE" (No order issued not to move Table) to MR. Kyler in my Appeal to him. MR. Kyler IGNORES the PROCEEDURAL ERROR and just CHANGES THE SCENARIO of finding of 'guilt' from 'getting a TABLE I was "ORDERED" not to move' To ___ the ORDER was issued for you to get out of the room (treatment Area)" ___ "due to circumstances of staff being in the Area and on the phone" (DOCTOR on phone, 2 NURSES was talking) PROCEEDURAL ERROR ⓓ

McCALL NEVER 'issued me an Order for me to get out of the room'. McCALL NEVER said anything to me UNTIL I was OUT of THE ROOM (treatment area), then he said that I was in an "Unauthorized Area, and I should write you up")

④ ___ I was DENIED the FACTUAL EVIDENCE of the TESTIMONY of 5 WITNESSES who had information which would be helpful in resolving this Matter! ___ Nurse Supervisor P. Everhart; CO, F. Stoltz; Evermine; B. Craig; K. Owens, these witnesses ARE FACT WITNESSES! These witnesses WERE NOT being called to testify 'because they saw/heard the incident'! These witnesses WERE being called to testify that I had been in this 'Treatment Area' BEFORE when STAFF was in the Area - STAFF were in the Room (Treatment Area), I was NOT in an 'Unauthorized Area' so I NEVER received a 'Misconduct'

for these Reasons Prior to this

PROCEEDURAL ERROR (E)

Another FACT which was COMPLETELY
IGNORED BY McCALL, Hearing Examiner
R.Norris, PRC (Elliott - Williamson - Grace),
and Supt. Kyler is _ I am classified
as a Level 2, MINIMUM SECURITY INMATE.
I am NOT A SECURITY CONCERN! There are
NO SECURITY CONCERNS by STAFF with me
Walking into the Treatment Area!
PROCEEDURAL ERROR (F)

5) I was again DENIED the Names of the "DOCTOR who was on the
phone and 2 NURSES who were Talking" (in the Treatment Room). They had
information which would be helpful in resolving this matter because
"they saw and heard the incident". Their testimony would be that
McCall gave me NO ORDER to get out of room! McCall gave me
NO ORDER NOT to move a TABLE! THIS MISCONDUCT IS PURE
FABRICATION!
PROCEEDURAL ERROR (G)

There are AT LEAST 7 PROCEDURAL
ERRORS, which go to guilt or innocence,
in this MISCONDUCT PROCEEDURE!!
And Supt. Kyler states in his decision (attached) _ that the misconduct
hearing was conducted in accordance with procedures established by DC-ADM
801!
I point out to you that the Procedures Established by DC-ADM 801
Do NOT INCLUDE 7 PROCEEDURAL ERRORS!! AND neither does the
very Minimum Due Process of Misconduct Proceedings and Appeals!
No FACTUAL EVIDENCE supports this Misconduct, this Misconduct
must be Dismissed.

R. J. Dotworak

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
1451 N. MARKET STREET
ELIZABETHTOWN, PA  17022

OFFICE OF THE
CHIEF HEARING EXAMINER

January 8, 2002

Richard Wojtczak, AF-5977
SCI Huntingdon

Re:    DC-ADM 801 - Final Review
       Misconduct No. A472303

Dear Mr. Wojtczak:

This is in response to your appeal to final review of the above numbered misconduct.

In accordance with DC-ADM 801, VI, L, 3, I have reviewed the entire record of this misconduct; including the misconduct report, the hearing report and related documents, your appeal to the Program Review Committee and their response, your appeal to the Superintendent and his response. I have also thoroughly reviewed the issues you raise to final review.

The issues you raise to final review have already been addressed by the Program Review Committee and the Superintendent. On review of the record, this office concurs with their responses, I find no persuasive basis from which to conclude that the Examiner erred in conducting the hearing. The Examiner specifically documented findings of fact based on evidence presented at the hearing to support the decision. The procedures followed were in complete accordance with DC-ADM 801, §VI. The sanction imposed is not viewed to be disproportionate to the offense, and therefore will not be amended at this level. Your requested staff witness was denied at the hearing in accordance with DC ADM 801, VI E, 7a.

For the above-stated reasons, the responses provided by the Program Review Committee and the Superintendent are upheld in full. Your appeal must, therefore, be denied.

Sincerely,

Robert S. Bitner
Chief Hearing Examiner

RSB:bjk
pc:    Superintendent Kyler

*"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

Chief, Secretary's Office
Inmate Grievance and Appeals
520 Lisburn Rd.
P.O. Box 598
Pa. Dept. of Corrections
Camp Hill, Pa. 17001-0598

1-11-02

Richard Wojtczak AF5977
Sci Huntingdon, Pa.
1100 Pike St.
Huntingdon, Pa 16654-1112

Certificate of Mailing    c/c

(4)

Re: Appeal of Misconduct # A472303, dated 10-18-01

After Discovered Evidence
(choose documents attached hereto)

I have attached hereto: My Appeal to Chief Secretary's Office 12-20-01; My Appeal
to the Program Review Committee (PRC); My Appeal to Superintendent Kyler, SCIH;
and other documents to support my Appeal; Decisions from Hearing Examiner, PRC,
and Superintendent Kyler - SCIH.

This AFTER Discovered EVIDENCE has
NOT been made known to me until this
PResent Time. This EVIDENCE goes directly
to "guilt or innocence" of this Misconduct # A472303
and ADVERSELY effects the Credibility and Veracity
of Co. Riley McCall's "testimony".
This EVIDENCE MUST ALSO be considered with my
Appeal. ALL EVIDENCE MUST be fully and fairly
reviewed for my Appeal (please see all documents
attached hereto).


STATEMENT of THE CASE:

I was found 'guilty' of 'refusing to obey an Order' (ONLY the ONE CHARGE).
(1) The Hearing Examiner AND the Program Review Committee (PRC) found me 'guilty'
of Refusing to obey an Order; BASED UPON I moved a table that
I was 'Ordered' by Co. Riley McCall, not to move. This was the
'refusing to obey an Order'.

An examination of the Misconduct # A472303
CLEARLY SHOWS — NO SUCH ORDER WAS GIVEN
by Co. Riley McCall.
The Hearing Examiner AND the PRC just MADE
UP THIS EVIDENCE (see documents attached hereto).

② When I pointed out this FACT to Sgt. Kyler, on my appeal to him, that NO SUCH ORDER WAS GIVEN by Co. McCall (see attached documents) Sgt. Kyler just IGNORES THIS FACT AND CHANGES THE SCENARIO of finding of 'guilt' To "The ORDER WAS issued For you To GET OUT OF THE ROOM (Treatment room-area)" "DUE To CIRCUMSTANCES OF STAFF BEING iN THE AREA (Treatment room-area) AND ON THE PHONE" (Doctor ON PHONE; 2 NURSES were TALKING) (see Sgt. Kyler's decision AND Misconduct by Co. McCall attached hereto).

THIS AFTER DISCOVERED EVIDENCE SHOWS THAT THERE WERE NO STAFF iS THIS TREATMENT ROOM-AREA!!! Co. McCall NEVER issued me a "ORDER" to get out of the room" (Treatment Room-Area)!

With just the Very minimum, cursory INVESTIGATION — (which by the way, NO ONE at Sci-Huntingdon even thought to do in THEIR RUSH To FIND ME 'GUILTY' of SOMETHING - ANYTHING) — clearly shows that the NAMES of the Doctor ON THE PHONE AND THE 2 NURSES who were talking in the Treatment room-Area (as per Co. McCall's ACCOUNT OF THE INCIDENT 'STATES') were WITHHELD FROM ME !!! (see my Appeal to Chief Secretary's Office, dated 12-20-01, attached hereto, PROCEDURAL ERROR 5 (G).

The testimony of this DOCTOR (on the phone) AND THE 2 NURSES who were talking in the Treatment room-Area (STAFF IN THE AREA?) WAS/is VITAL SINCE ⓐ they saw and heard the incident; ⓑ their Testimony goes to 'guilt or innocence'; ⓒ their testimony would PROVE I was telling the truth (Credibility-Veracity); ⓓ their testimony would PROVE Co. Riley McCall LiED (Credibility-Veracity).

With just the Very Minimum, cursory INVESTIGATION THIS AFTER DISCOVERED EVIDENCE is AS FOLLOWS

the medical personnel on duty, in the infirmary, on 10-18-01, 3$^{35}$PM
(date and time of Misconduct #A 472383)

Sheri R. assigned to INSULIN LINE (locked in nurses station dispensing INSULIN)

Deb K. assigned to PILL LINE (locked in drug room dispensing Medications)

Lynn A. assigned to PILL LINE (locked in drug room dispensing Medications)

Kathy B. assigned to RHU Medications (out in RHU A SEPARATE BUILDING dispensing Medications)

Michele F. assigned to assist DOCTOR with DOCTOR LINE (in another Room, NOT Treatment area)

Dr. Aranada ONLY DOCTOR on DUTY, he was doing DOCTOR LINE.

Sheri R. COULD NOT be Nurse Talking in Treatment room-area (Not staff in area) she was LOCKED IN NURSES STATION

Deb K. Could NOT be Nurse Talking in Treatment room-area (Not staff in area) she was Locked in DRUG ROOM

Lynn A. could NOT be Nurse talking in Treatment room-area (Not staff in area) she was Locked in DRUG ROOM

Kathy B. could NOT be Nurse Talking in Treatment room-area (Not staff in area) she was OUT IN THE RHU, A SEPARATE BUILDING

Michele F. Could NOT be the NURSE talking in Treatment room-area (Not staff in area) she was assisting DOCTOR, in ANOTHER ROOM ALTOGETHER ALSO She Could NOT be Talking with ANOTHER NURSE in the Treatment Room-area Because there were No OTHER NURSES to talk with, ALL the OTHER NURSES were Doing OTHER DUTIES (i.e. Locked in OTHER AREAS, IN ANOTHER BUILDING !!!!

Dr. Aranada, he states that he HAS NEVER HEARD ANY GUARD OR ANYONE ELSE EVER "ISSUE ME IN ORDER" INCLUDING 10-18-01, at 3$^{35}$PM.

CO. Bley McGill is NOT A ROOKie, he knows ALL the Medical Personal in the infirmary. He doesn't "MISTAKE" the "janitor" for a Doctor or Nurse, he knows who is who in the infirmary !!!

It is Now obvious why the NAMES of the "DOCTOR" who was supposed
to be "on the phone" --- And "THE 2 NURSES" who were suppose to be
"telling" in the treatment room area --- "STAFF IN AREA" --- were Withheld FROM ME.
THEY DIDN'T EXIST !!!

So, Riley McCall's Lies in the Misconduct are NoT
"MISTAKES", THEY ARE Lies !!!!

Sgt. Kyler, in his "decision" (evidence attached) SPEAKS of "CREDIBILITY"
(believability) or I "Chose To Believe officer McCall's Account of THE
incident" (Credibility Veracity).

This AFTER discovered Evidence shows that Co, Riley McCall HAS ---
① No Credibility, (NoT Believable)
③ No VERACITY (No Truthfulness) --- McCall CANNOT be believed
AT ALL !!!!

This Misconduct # A472303, MUST Be DISMISSED COMPLETELY; A NoT
GUILTY VERDICT Rendered; And completely removed FROM MY Records.
ALSO Disciplinary Action imposed on Co, Riley McCall for
Filing A FALSE REPORT, LYING IN AN OFFICIAL Document. (see Inmate
Grievance # 6886, 11-2-01, attached facts)

The very Minimum Due Process in Misconduct Procedure Does
NOT include --- LYING And MAKING up Evidence To FIND GUILT

s/ [signature]

MEDICAL DAILY ASSIGNMENT SHEET

DATE: 10/18/01

DAY: Thursday

**DAY SHIFT (0545 to 1415)**

| NAME | ASSIGNMENT | MISCELLANEOUS | BREAK | LUNCH | BREAK |
|------|-----------|---------------|-------|-------|-------|
| Linda F. | B | | 0745 - 0800 | 1030 - 1100 | 1145 - 1200 |
| Ted W. | C | | 0800 - 0815 | 1100 - 1130 | 1245 - 1300 |
| Jeannie F. | A | | 0845 - 0900 | 1045 - 1245 | 1245 - 1300 |
| D.M. | F | PRT | 0845 - 0900 0930 - 1000 | 1245 - 1315 | |
| Joanne W. | F | RHU | 0830 - 0845 1000 - 1030 | 1300 - 1315 | |
| Chris S. | E.D. | prescreening | 0730 - 0745 0930 - 1000 | 1145 - 1200 | |
| Michele W. | G.H. | VSNOK, Inmate Ed. | 0800 - 0815 1000 - 1030 | 1230 - 1245 | |
| | | * | 0730 - 0745 1030 - 1100 | 1215 - 1230 | |

**AFTERNOON SHIFT (1345 to 2215)**

| NAME | ASSIGNMENT | MISCELLANEOUS | BREAK | SUPPER | BREAK |
|------|-----------|---------------|-------|--------|-------|
| Rita M. | 0800 - 1630 | QI | 1000 - 1015 | 1215 - 1245 | 1430 - 1445 |
| Sheri R. | G | | *1700 - 1715 | 1715 - 1745 | 2015 - 2030 |
| Deb K. | A | relieve PRT | 1600 - 1615 | 1615 - 1645 | 1900 - 1915 |
| Kathy B. | E | | 1600 - 1615 | 1615 - 1645 | 2000 - 2015 |
| Lynn A. | F | | 1700 - 1715 | 1715 - 1745 | 1915 - 1930 |
| Michele F. | B | | 1600 - 1615 | 1615 - 1645 | 1945 - 2000 |
| | | | 1600 - 1615 | 1615 - 1645 | 1945 - 2000 |

**NIGHT SHIFT (2200 to 0630)**

| NAME | ASSIGNMENT | MISCELLANEOUS | | | |
|------|-----------|---------------|--|--|--|
| Joel A. | | Mary Lou 0800 - 1630 | | | |
| Grace D. | | | | | |

B position - do vital signs and weights on all MD line patients and record

Prescreening nurse - help with orders

B position - do vital signs and weights on all MD line patients and record

| M. D. COVERAGE | PAC | SPECIALIST SCHEDULED | TIME |
|----------------|-----|---------------------|------|
| Dr. Araneda | John | | |
| Dr. Polmueller | | Marty 12-4:30 | |
| Dr. Wawrose | | | |

MEETINGS/TRAINING SCHEDULED

...der: Training Articles and videos available in 2nd floor doctor's office area

Ex. 74

**MEDICAL DAILY ASSIGNMENT SHEET**

DATE: 10/18/01          DAY: Thursday

## DAY SHIFT (0545 to 1415)

| NAME | ASSIGNMENT | MISCELLANEOUS | BREAK | LUNCH | BREAK |
|---|---|---|---|---|---|
| Linda F. | B | | 0745 - 0800 | 1030 - 1100 | 1145 - 1200 |
| Ted W. | C | | 0800 - 0815 | 1100 - 1130 | 1245 - 1300 |
| amarie F. | A | | 0845 - 0900 | 0930 - 1000 | 1245 - 1300 |
| M. | F | PRT | 0830 - 0845 | 1000 - 1030 | 1300 - 1315 |
| Yvonne W. | E, D | RHU | 0730 - 0745 | 0930 - 1000 | 1145 - 1200 |
| Chris S. | | prescreening | 0800 - 0815 | 1000 - 1030 | 1230 - 1245 |
| Michele W. | G, H | VSNOK; Inmate Ed. | 0730 - 0745 | 1030 - 1100 | 1215 - 1230 |

B position - do vital signs and weights on all MD line patients and record
Prescreening nurse - help with orders

## AFTERNOON SHIFT (1345 to 2215)

| NAME | ASSIGNMENT | MISCELLANEOUS | BREAK | SUPPER | BREAK |
|---|---|---|---|---|---|
| Rita M. | QI | | 1000 - 1015 | 1215 - 1245 | 1430 - 1445 |
| | 0800 - 1630 | | | | |
| Sheri R. | G | | *1700 - 1715 | 1715 - 1745 | 2015 - 2030 |
| Deb K. | A | relieve PRT | 1600 - 1615 | 1645 - 1900 | 1915 |
| Kathy B. | E | | 1615 - 1615 | 1645 - 2000 | 2015 |
| Lynn A. | F | | 1700 - 1715 | 1715 - 1745 | 1930 |
| Michele F. | B | | 1600 - 1615 | 1615 - 1645 | 1945 - 2000 |

B position - do vital signs and weights on all MD line patients and record

## NIGHT SHIFT (2200 to 0630)

| NAME | ASSIGNMENT | MISCELLANEOUS | | | |
|---|---|---|---|---|---|
| | | Mary Lou 0800 - 1630 | | | |

| M. D. COVERAGE | PAC | SPECIALIST SCHEDULED | TIME |
|---|---|---|---|
| Dr. Araneda | John | | |
| Dr. Polfmueller | | | |
| Dr. Wawrose | | | |

ETINGS/TRAINING SCHEDULED

der: Training Articles and videos available in 2nd floor doctor's office area

(3)

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
Office of the Chief Hearing Examiner
1451 North Market Street
Elizabethtown, PA  17022

INMATE NAME: *RICHARD WOJTCZAK*    INMATE #: *AF 5977*

INSTITUTION: *SMITHFIELD*    *A 472 303*

Misconduct Number, if relevant

FROM:    Robert S. Bitner
Chief Hearing Examiner    DATE: *5-14-02*

This is to acknowledge receipt of your letter to the Central Office.  Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

1. _____ You need to include the official identification number of the misconduct.

2. _____ According to institution records, you have not completed appeal to the Superintendent.

3. _____ Your claim to have appealed to the Superintendent without response does not entitle you to direct appeal to final review.  Contact the Superintendent's office to ensure they received your appeal.

4. _____ Your appeal to final review is unacceptably untimely.

5. _____ Your initial confinement to Administrative Custody may be appealed through final review in accordance with DC-ADM 802.  Pursuant to DC-ADM 802-3, c, there is no appeal beyond the Superintendent of a thirty (30) day review before the Program Review Committee.

6. _____ This office has no prior record of receipt of an appeal from you on this issue.

7. _XX_ You have already received **final** review of this issue.

ADDITIONAL COMMENTS: *Mr. Wojtczak - your 4-29-02 letter to secretary Beard was referred to this office. We have no record of the letter you sent to Grievances and Appeals in January. My January 8, 02 response to your appeal to final review is the final position of the Department of Corrections on this misconduct.*

Revised October 30, 2000

(3)

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
### Office of the Chief Hearing Examiner
1451 North Market Street
Elizabethtown, PA  17022

INMATE NAME: *RICHARD  WOJTCZAK*     INMATE #: *AF 5977*

INSTITUTION: *SMITHFIELD*          *A 472 303*

                                   Misconduct Number, if relevant

FROM:   Robert S. Bitner *[signature]*
        Chief Hearing Examiner      DATE: *5-14-02*

This is to acknowledge receipt of your letter to the Central Office.  Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

1. _____ You need to include the official identification number of the misconduct.

2. _____ According to institution records, you have not completed appeal to the Superintendent.

3. _____ Your claim to have appealed to the Superintendent without response does not entitle you to direct appeal to final review.  Contact the Superintendent's office to ensure they received your appeal.

4. _____ Your appeal to final review is unacceptably untimely.

5. _____ Your initial confinement to Administrative Custody may be appealed through final review in accordance with DC-ADM 802.  Pursuant to DC-ADM 802-3, c, there is no appeal beyond the Superintendent of a thirty (30) day review before the Program Review Committee.

6. _____ This office has no prior record of receipt of an appeal from you on this issue.

7. XX   You have already received **final** review of this issue.

ADDITIONAL COMMENTS: *Mr. Wojtczak - Your 4-29-02 letter to Secretary Beard was referred to this office. We have no record of the letter you sent to Grievances and Appeals in January. My January 8, 02 response to your appeal to final review is the final position of the Department of Corrections on this misconduct.*

Revised October 30, 2000

(3)

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
Office of the Chief Hearing Examiner
1451 North Market Street
Elizabethtown, PA 17022

INMATE NAME: *RICHARD WOJTCZAK*   INMATE #: *AF 5977*

INSTITUTION: *SMITHFIELD*   *A472303*

FROM:   Robert S. Bitner *[signature]*   Misconduct Number, if relevant
Chief Hearing Examiner   DATE: *5-14-02*

This is to acknowledge receipt of your letter to the Central Office. Upon review of the issue(s) you raise, I am filing your letter without action for the following reason(s):

1. _____ You need to include the official identification number of the misconduct.

2. _____ According to institution records, you have not completed appeal to the Superintendent.

3. _____ Your claim to have appealed to the Superintendent without response does not entitle you to direct appeal to final review. Contact the Superintendent's office to ensure they received your appeal.

4. _____ Your appeal to final review is unacceptably untimely.

5. _____ Your initial confinement to Administrative Custody may be appealed through final review in accordance with DC-ADM 802. Pursuant to DC-ADM 802-3, c, there is no appeal beyond the Superintendent of a thirty (30) day review before the Program Review Committee.

6. _____ This office has no prior record of receipt of an appeal from you on this issue.

7. _XX_ You have already received final review of this issue.

ADDITIONAL COMMENTS: *Mr. Wojtczak - Your 4-29-02 letter to Secretary Beard was referred to this office. We have no record of the letter you sent to Grievances and Appeals in January. My January 8, 02 response to your appeal to final review is the final position of the Department of Corrections on this misconduct.*

Revised October 30, 2000

(4)

*Certificate of Mailing for After Discoverd Evidence*
1-11-02   RW

| U.S. POSTAL SERVICE | CERTIFICATE OF MAILING |
| --- | --- |

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE–POSTMASTER 1-11-02

Received From:

Richard Pojtyak AF5977 BA

1100 Pike St.

Huntingdon, Pa. 16654-1112

One piece of ordinary mail addressed to:

Chief Secretary's Office - Inmate Grievance & Appeals

520 Lisburn Rd - P.O. Box C598

Pa Dept of Corrections

Camp Hill, Pa. 17001-0598

PS Form 3817, January 2001

Mr. Jeffrey A. Beard, Ph.D.
Secretary
Pa. Dept. of Corrections
2520 Lisburn Rd.
P.O. Box 598
Camp Hill, Pa. 17001-0598

Richard Wojtczak, AF5977
P.O. Box 1120 Pike St.
999
Huntingdon, Pa. 16654-1112

certificate of mailing                c/c

(3)

Dear Mr. Secretary,

I have enclosed copies of "Misconduct #A472303 and my appeal of
same. As I explained to Hearing Examiner Richard Norris, the Program Review
Committee, Supt. Kyler and Robert S. Bitner, chief Hearing Examiner --- officer
Riley McCall NEVER issued me an Order not to move a table) NOR
did officer McCall issue me an Order to get out of the treatment area-
room. This "misconduct" is a pure fabrication, McCall lied.

As usual, Richard Norris, the Program Review Committee, Supt.
Kyler and Robert S. Bitner "chose to believe" McCall and NOT me (the
inmate). To put it another way, "McCall 'told the truth and is believable',
and I (the inmate) did NOT 'tell the truth' and therefore NOT believable.
The ONLY "evidence" that was considered was what officer McCall
wrote in the "misconduct". This issue is Veracity - Credibility.

In this particular case, luckily for me, there is relevant - truthful -
credible evidence that clearly shows that I am telling the truth AND officer
McCall is NOT, AND he has NO credibility at all.

While my appeal of this "misconduct" was pending before Robert S.
Bitner, chief Hearing Examiner, evidence was made known to me which proves
my innocence (i.e - After Discovered Evidence, which is also attached herein).
This After Discovered Evidence is the Medical Daily Assignment sheet, which
is the business records, kept daily, by SCI/Huntingdon, Pa. for 10-18-01, 3²⁵ PM
date and time of this "misconduct".

This Evidence clearly shows that there were NOT "2 Nurses talking in
the treatment area-room" an officer McCall 'states' AND DOCTOR Aranda, the
only doctor on duty that day, says he has NEVER heard any officer or anyone
else ever issue me an Order including 10-18-01, 3²⁵ PM.

I immediately mailed this After Discovered Evidence to Chief
Secretary's office, Inmate Grievances and Appeals on 1-11-02 by certificate
of mailing (see attached).

As of the date of this letter I have received absolutely NO response

①

whatsoever to the After Discovered Evidence.

Due to the peculiar environment of the prison setting, it may be that certain facts, relevant to the disciplinary determination, do not come to light until AFTER the formal hearing. It would be unduly restrictive to require such facts to be excluded from consideration -- see Baxter V. Palmigiano, 96 Sct 1551 (1976); the exclusion of such evidence Violates Due Process - Graham V. Baugham, 772 F2d 441, 445 (8 Cir. 1985); Green V. Nelson, 442 F Supp. 1047, 1057 (D. Conn. 1977).

There is No credible, truthful evidence to support my conviction of Misconduct # A472303, these Due Process Violations significantly affected my ability to demonstrate my innocence — This Misconduct must be Expunged - Removed from my records - see Wolff V. McDonnell, 94 Sct 2963 (1974); Del Raine V. Carlson, 826 F2d 698, 707 (7 Cir. 1987); Hayes V. Thompson, 637 F2d 483, 493 (7 Cir. 1980); Morgan V. Ellerthorpe, 785 F Supp. 295, 303 (D. R.I. 1992) - see also - King V. Cuyler, 541 F Supp. 1230, 1235 (E.D. Pa. 1982).

I write to you for your immediate intervention and resolution.

Sincerely,

S/ Richard Stafyork

**U.S. POSTAL SERVICE**    **CERTIFICATE OF MAILING**

MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT PROVIDE FOR INSURANCE—POSTMASTER

Received From:

Rev. Dr. Donald Moyer

2085 Swamp Pike

Gilbertsville, Pa. 19525

One piece of ordinary mail addressed to:

MR. Jeffery A Beard Ph.D. - Secretary

Pa. Dept of Corrections - P.O. Box 598

520 Lisburn Rd.

Camp Hill, Pa. 17001-0598

PS Form 3817, Mar. 1989

$0.75  0002500-04

U.S. POSTAGE
GILBERTSVILLE, PA
19525
MAY 10, 02
AMOUNT

*additional harassment because of my disabilities !!*

*Front + back*



## S.C.I.H—RESIDENT PASS

Name **Wojtczak**          Date **1-18-81**

No. **AF 5977**

TO                                      FROM

( ) Block _____
(X) Shop *Commissary* _____ (B
( ) Factory _____ ( )
( ) Clinic (Call List) _____ (
( ) Dr. or Dispensary (Call List) _____ (
( ) Dentist (Call List) _____ (
( ) Prot. or Cath. Chaplain (Call List) ___
( ) Parole or Bureau (Call List) _____
( ) Control Center _____
( ) Education Office _____

Time of Departure __*1047*__ Sig. _____
                                        Official

Time of Arrival _____ Sig. _____
                                        Official

Time of Departure __*1183*__ Sig. _____
                                        Official

Time of Arrival _____ Sig. _____
                                        Official

CO Fry on at commissary + I told him to go sit down until the line goes down — I cannot stand that long!

Fry said — you walked down here so you can stand in line!

I got my groceries back — told Fry I would get this straightened out Monday!

I talked with Capt. Laurity — he took care of it. I went to commissary + Buzzell carried groceries for me.

— I never had any trouble before this with my groceries + commissary — I got on steps — line went down — I got in line !!

Capt. Laurity said if it happens again to see him.

*Ex. 75*

(10)

Additional harassment because of my disabilities

5-28-01 6³⁰ to 8³⁰ Am pill line (AGAIN)

pill line [illegible] for me to stand & wait. If I sit on bench & wait for line to get shorter (it's a long wait) guard always asks me why am I sitting there, I tell him, he says "get in line or go back to your cell" (*

Today - I waited in my cell for line to shorten (and for guard to pull box to open cell) about 8 AM box pulled - I went to pill line real quick, NO ONE in line, I left my cell door open a little bit so when I got pill I could go right back in my cell. guard closed bar - my door was out from under the bar - I closed cell door close to bar & waited for guard to pull box again and I would close my cell door - In about 10 min guard came to my cell - asked why my door out from under bar, I explained. guard went up to front of block, pulled box, I closed my cell door,

Situation Over (NO WAY!

at 9⁴⁵ A I went to infirmary to get insulin & eat. when I finished, stood at my cell to wait for guard to pull box. guard sitting at front of block, looking down right at me - would not pull box. To make a long story short - guard made me STAND for approx. 20 minutes - another inmate (Brown) came down to me to get in his cell - GUARD then pulled box to open cells.

This was SAME guard as this morning with my door from under the bar (GUARDS know it causes me a lot of PAIN TO STAND! Sending me this way and do this on purpose!

(1) Conflict Pill line!

5-28-01 3³⁰ PM - pill line too long again so I went into infirmary to get insulin - guard asked me where I was going - I said I eat down here, that's what the tray is for! guard said that I have to WAIT until last insulin - can only have 2 inmates here at a time (and I am a LEVEL 2?) ~~I asked guard - I have to WAIT until LAST insulin - then I eat - guard said yes !! I told~~ guard that's not the procedure! But I will get a Capt. to explain it to you - I sat down and ate!! (2) CONFLICT insulin (eat at infirmary) !

-M.J. (3) Conflict at Commissary ! "Reasonable accommodations" because I am disabled ???

(4) Conflict at ATA showers (Nothing but CONFLICTS EVERY DAY!

(5) Conflict when I eat (6) More Conflict because I am disabled with commissary !

5-31-01 8³⁰ AM called commissary. It's a very long painful walk for me to go to commissary. after stopping 3-4 times I arrived at commissary - the guard told me that I have to go back to the block! They called yard, when yard goes through hallway I can come back, I was a little more than angry - I told the guard it is very painful for me to walk to commissary - why did you have me walk all the way down here, then tell me to go back to block - you think this pain is a joke! This CONFLICT went on for approx. 5 minutes, guard said - go back to your block and I'll WRITE YOU UP (misconduct) !! I walked back to the block. I asked guards on block, why did you have me walk all the way down to commissary (Sergt. Hogue) & have them send me all the way back to the block! You think this pain is a joke!!! CONFLICT on block - he [illegible] Sergt. Hogue said - he didn't write the PASS, talk to the guard who did! This argument went on for about 5 minutes. Hallway finally cleared [illegible] for yard - [illegible]

I had to walk all the way back down to [illegible] missary and back (Sci Huntingdon has made absolutely NO "reasonable accommodations" whatsoever - what else am I suppose to do???

Ex 75

Richard Wojtyzak AF5977
Sci A        C/E        (10)

additional harassment
because of my disability

10-22-01

5:05 pm  As I was 'walking' back to my cell after A.T.A., was slowing I
was about half way down "B" block — My knees, hips and back
were hurting, I lost "a lot" of my breath, I had to stop a minute, to
get myself together, C.o. Rickey (sic) yelled down the block
"Wojtyzak, what are you doin'" I said "I'm catching my breath"
Rickey said "What"! I couldn't yell any louder, so I just started
to walk back to my cell again!

Here's another 'correctional professional' who has seen me
hobbling around on numerous prior occasions!

Now, I can't even stop for a 'minute' because of the pain and to
catch my breath!! (there are numerous 'McColls' at S.C.I. Huntingdon!)
(see Misconduct #A 472303, dated 10-18-01)

Exf
75

Addition Harrassment because of my
Disabilities!                    Richard Wojtyak   F5977
                                 SCI Huntingdon, Pa,
                                                    c/c      (6.

12-22-01, 6:30 AM, Saturday

   I have been eating my meals in the "infirmary" for several months now -
breakfast & lunch - Not Supper! Since 10-19-01 I have Not eaten
Supper in the "infirmary" and I have Not gotten my 3:30 pm insulin shot
in the "infirmary" because CO R. McCall (who gave me the fabricated
"Misconduct") works the "infirmary" 2 PM to 10 PM shift, and I do Not want
to get yet another "Misconduct"! (Patty Everhart knows this)
   I have been using a knife-Fork-Spoon,
        plastic flatware to eat with. The same plastic
        flatware that inmates use in the chow hall.
AGAIN, today at breakfast this plastic flatware WAS MISSING!! The guard
in the "infirmary", a replacement guard (Not K. Owens), called the kitchen
to replace this plastic flatware. Richey (sic) the guard in the kitchen
told the replacement guard that I am to use the small plastic spoon
that's in the tray! No knife-Fork-Spoon plasticware!
        These trays are made up for the inmates in
        the RHU (the Hole)! They Only have a small
        plastic spoon!

Mc Call is the one Taking this plastic flatware! McCall also took the Order, at
the desk in the infirmary, that states I am to eat my meals in the "infirmary", I get
my insulin, after I eat - after count I take my shower ___ this ORDER is
authorized by the SHIFT LT. and CAPT.! And McCall just Takes it!!!
Mc Call also took the plastic salt and pepper shakers that I used when I eat!

What's          Why is it McCall taking these items          See Misconduct
Next?,         etc. etc. etc. ___ because these items ONLY    # A 472303 dated
               turning up Missing AFTER McCall works the infirmary!    10-18-01

E#
75

Mr. John Thomas
Executive Assistant to the Secretary
Pa. Dept. of Corrections
P.O. Box 598
Camp Hill, Pa. 17001-0578

certificate of mailing
sent by Roy
12-19-02

To Arcate 12-23-02

Richard Wojtychok AF5977
SCI Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, Pa. 15501-0631
c/c

Dear Mr. Thomas,

I have attached a copy of the letter Mr. Fredric A. Rosemeyer, Superintendent, SCI Laurel Highlands, wrote to you dated 10-25-02.

If I were a wise man I wouldn't waste your time, nor mine, writing this letter to you. Nonetheless, I do want the FACTS to be correct AND the 'Records' to contain the TRUTH.

There is an issue of Credibility here, that is, who to believe? Who is Credible, who is NOT?

I will acquaint you with the REAL FACTS with obvious proof, that will decide who is "Credible".

(1) The Pa. Dept. of Corrections has classified me as a Level 2, Minimum Security inmate.

As per Mr. Donald Williamson, Coordinator/Diagnostic and Classification, Pa. D.O.C. at Camp Hill, Pa. — — —

  (a) Level 2 inmates HAVE MORE PRIVILEGES than higher Security inmates — — —

  (b) Level 2 inmates REQUIRE LESS OBSERVATION BY STAFF.

(2) Mr. Rosemeyer states in his letter of 10-25-02, QUOTE — — "OUR RECORDS indicate that Mr. Wojtychok's CUBE has been SEARChED THREE (3) times in 2002, NONE WAS IN AUGUST — —"

I have attached levels:

'RANDOM SEARCH', CONFISCATED ITEM RECIEPT DATED 8-7-02 — — —
     my property SEARCHED 3 Times in AUGUST, staff & inmate witnesses —
  *NO. A416536 and *NO. A458522    (I was in SAME BED AC5-4)
  "NONE WAS IN AUGUST" — — No Credibility!

'RANDOM SEARCH', CONFISCATED ITEM RECIEPT DATED 11-8-02 — — —
  *No. A481324

①

Ex 76



**U.S. POSTAL SERVICE** — **CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER *12-19-02*

Received From:
*Richard Portigal AF5977*
*5706 Glades Pike P.O. Box 631*
*Somerset, Pa. 15501-0631*

One piece of ordinary mail addressed to:
*Rev. Dr. Donald Moyer*
*Spiritual Advisor*
*2085 Swamp Pike*
*Gilbertsville, Pa 19475*

PS Form 3817, Mar. 1989

---

**U.S. POSTAL SERVICE** — **CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER *12-19*

Received From:
*Richard Portigal AF5977*
*5706 Glades Pike P.O. Box 631*
*Somerset Pa. 15501-0631*

One piece of ordinary mail addressed to:
*Mr. John C. Thomas*
*Executive assistant to the Secretary*
*Pa. Dept. of Corrections P.O. Box 598*
*Camp Hill, Pa. 17001-0598*

PS Form 3817, Mar. 1989

---

**U.S. POSTAL SERVICE** — **CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER *12-23-02*

Received From:
*Richard Portigal AF5977*
*5706 Glades Pike P.O. Box 631*
*Somerset, Pa. 15501-0631*

One piece of ordinary mail addressed to:
*Mr. C. Preate esq.*
*Attorney at Law*
*507 Linden St. Suite 600*
*Scranton, Pa. 18503*

PS Form 3817, Mar. 1989

*Supt. Rosemeyer 12-26-02*
*Dept. Hunsberger 12-26-02*

I'm on DA unit (18-2) __

DA unit Searched EVERY DAY from 10-31-02 To 11-20-02 __

DA unit Searched AGAIN on 12-13-02 ---

My Property searched June - July 2002 __ 2 Times

My Property Searched AUGUST 7, 2002 To AUG. 13 --- 3 Times

My Property searched Nov. 8, 2002 __ __ 1 Time

my Property searched Dec. 13, 2002 __ __ 1 Time

Searched 7 Times in 2002, Not 3!

all witnessed by STAFF and inmates!

MR. Rosemeyer DID NOT EXAMINE "OUR RECORDS" very well. Again No Credibility!

This is NOT illistrative of a Level 2, MINIMUM SECURITY FACILITY ___ where is the "Less RESTRICTIVE ENVIORNMENT" ___ "Less DIRECT OBSERVATION BY STAFF" ---  "MORE PRIVILEGES" ??

(NOTE: I was in the "searched" on AC unit June - July - August AC 5-4 ___
I was in the "searched" on DA unit AUGUST To Dec, 2002 )DA 18-2.

Also, while leaving the DINING HALL, 9-16-02 to 10-12-02, 1 MONTH, I was SEARCHED 19 Times.

This is NoT Minimum Security ___ __

"MINIMUM" = __ smallest, least, lowest, narrowest, the smallest quantity possible; the lowest degree or point reached. __ __
— Webster's Dictionary — NEW WORLD.

As you can see, MR. Rosemeyer's misrepresentations are meant to decieve and mislead you. Why?

②

In his letter Mr. Rosemeyer also mentions "an outdoor courtyard for recreation". This "yard" is VERY SMALL, it is enclosed on 4 sides, it measures 50 ft X 50 ft !!!

I guess he just forgot to tell you all this ??

Is this "courtyard" the "MORE OPEN SPACES" that the Pa. Dept. of Corrections STATES a LEVEL 2, MINIMUM SECURITY FACILITY is SUPPOSE TO HAVE ?

As for my "Medical file", I ask you to examine the documentation and compare it to the TRUTH.

Sci Laurel/Highlands IS A WAREHOUSE just like ALL the other PRISONS in Penna. ARE WAREHOUSES. The so called "MEDICAL TREATMENT" is absolutely repulsive.

I attach the letter I received from Superintendent Rosemeyer dated 10-21-01. He states, and I QUOTE _ _ "We do NOT have SINGLE CELL HOUSING _ " (at sci Laurel Highlands)

ON DA UNIT THERE ARE
_ 5 SINGLE cells - ROOMS - CUBES - AREAS _ THEY ARE 1 - 2 - 3 - 10 - 11 !
Don't play SEMANTICS with WORDS _ ! _ "CELL - ROOM - CUBE - AREA" are "cells"!
I am Z status, single cell, I require a SINGLE CELL. I have HAD A SINGLE cell FOR 27 YEARS.

Sci Smithfield has a DOUBLE FENCE with RAZOR WIRE and is classified as a LEVEL 4, MAXIMUM SECURITY FACILITY.

Sci Laurel Highlands has a DOUBLE FENCE with RAZOR WIRE and is classified as a LEVEL 2, MINIMUM SECURITY FACILITY.
How can this be ??

Sci Laurel/Highlands _ _ Does NOT have "a LESS RESTRICTIVE ENVIRONMENT". Does NOT have "MORE PRIVILEGES" for LEVEL 2 inmates. There is NOT "LESS OBSERVATION of inmates By STAFF", there are NOT "MORE OPEN SPACES FOR INMATES" _ _ _ _ _

③

It is undeniable, sci Laurel Highlands **is NOT a Level 2, MINIMUM SECURITY FACILITY.**

Therefore, I have "REQUESTED" from ALL the appropriate STAFF at Sci Laurel Highlands AND PA. Dept. of Corrections, to be TRANSFERRED to a Level 2, MINIMUM SECURITY FACILITY. (attached).

Sincerely,

S/ *[signature]*

P.S.

Mr. Thomas,

Please send me the list of the "More Privileges" I am suppose to have on a Level 2, MINIMUM SECURITY INMATE.

④

at SCI Laurel Highlands

**DC-154A**

**No. A 422527**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**Confiscated Items Receipt (Inmate)**    5-22-02

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF-5977 | WOJTCZAK | | SCI Lau | 5/22/02 | 1200 |

☐ Random Search
☑ General Search
☐ Investigative Search

Misconduct Report Prepared
☐ Yes    ☑ No

Comment: Kept Not typed

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. MULTIPLE OLD I/M PASSES | D | 2. RUBBER BANDS | D |
| 3. EARPHONE (ALTERED) | D | 4. (2) RELIGIOUS MADALIONS | Policy/Return |
| 5. (2) CHAINS | Destroy/Returned | 6. PLASTIC ZIPLOC BAGS | D |
| 7. 2 BIG BANDAIDS | D | 8. | |
| 9. | | 10. | |

Signature and Title of Officer Confiscating the Item(s)
Sgt Maust

Signature and Title of Officer Disposing of the Item(s)
Sgt Maust

---

**DC-154A**    Laurel Highlands

**No. A 458522**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**Confiscated Items Receipt (Inmate)**

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF-5977 | Wojtczak | AC 8-4 | SCI-LAU | 8/2/02 | 1000 |

☑ Random Search
☐ General Search
☐ Investigative Search

Misconduct Report Prepared
☐ Yes    ☑ No

Comment: Ship At I/m Request

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. (1) Norelco Electric RAZOR SHVR (Broken) (10 Blades) With Case | | 2. | |
| 3. | | 4. | |
| 5. | | 6. | |
| 7. | | 8. | |
| 9. | | 10. | |

Signature and Title of Officer Confiscating the Item(s)
Russ J. Cot

Signature and Title of Officer Disposing of the Item(s)

1. DC-15        2. Deputy Superintendent for Facilities Management        3. Inmate

DC-154A

No: A 416536

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**Confiscated Items Receipt (Inmate)**

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF-5971 | WOJTCZAK | AC 5-cl | SCI-LAU | 8/7/02 | 1000 |

☒ Random Search
☒ General Search
☐ Investigative Search

Misconduct Report
Prepared
☐ Yes   ☒ No

Comment:
Destroy At Inmates Request

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. (3) Socks Excess | D | 2. (1) Lg Garbage Bag of | D |
| 3. (6) T-Shirts Excess | D | 4. (mostly Items from Inm meal tray) | |
| 5. (2) Excess Long John Bottom | D | 6. (1) Loose Razor Blade | D |
| 7. (2) Underware Excess | D | 8. | |
| 9. (2) Long Slvm Shirts Excess | D | 10. | |

Signature and Title of Officer Confiscating the Item(s)
X Crissey CoI

Signature and Title of Officer Disposing of the Item(s)

---

DC-154A

No. A 481324

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

**Confiscated Items Receipt (Inmate)**

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF-5971 | WOJTCZAK | JA 18-2 | SCI LAU | 11-8-02 | 1010 |

☒ Random Search
☐ General Search
☐ Investigative Search

Misconduct Report
Prepared
☐ Yes   ☒ No

Comment: Hold For Disposition
Security Capt. Then Destroy
PER L/w Report

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. 28 Perusal Issued Hand out unit matial | H | 2. | |
| 3. Passes From SCI Handwriters | | 4. | |
| 5. | | 6. | |
| 7. | | 8. (signature) 11-8-02 | |
| 9. | | 10. | |

Signature and Title of Officer Confiscating the Item(s)
Cremesz CoI

Signature and Title of Officer Disposing of the Item(s)

1. DC-15        2. Deputy Superintendent for Facilities Management        3. Inmate

DC-154A

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

No. 838126

18-2

## Confiscated Items Receipt (Inmate)

| DC Number | Name | Cell | Institution | Date | Time |
|---|---|---|---|---|---|
| AF5977 | Wojtczak Richard | DA | SCI-LAU | 12-10-02 | 1:15 pm |

Random Search
X General Search
Investigative Search

Misconduct Report Prepared
Yes ___ No X

Comment:
Sent to Property

| Items Confiscated | Items Confiscated |
|---|---|
| 1 EA. - TV Guide | Ship or Destroy |
| Sweatshirt and | |
| CALENDAR | |
| | |
| | |
| | |

Signature and Title of Officer _____ MAilRoom Insp.

---

DC-154A

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

No. A481337

## Confiscated Items Receipt (Inmate)

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF5977 | Wojtczak | 1-1 | SCI LAU | 1/27/03 | 0930 |

☒ Random Search
☐ General Search
☐ Investigative Search

Misconduct Report Prepared
☐ Yes   ☒ No

Comment:

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. Empty shampoo bottle | destroy | 2. | |
| 3. empty potatochip bag | destroy | 4. | |
| 5. 4 Paper clips | destroy | 6. | |
| 7. Three empty cologne bottle | destroy | 8. | |
| 9. | | 10. | |

Signature and Title of Officer Confiscating the Item(s) CSI R.L Maust

Signature and Title of Officer Disposing of the Item(s)

1. DC-15        2. Deputy Superintendent for Facilities Management        3. Inmate

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**STATE CORRECTIONAL INSTITUTION**
**LAUREL HIGHLANDS**
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501-0631
Phone (814) 445-6501

Secretary
JEFFREY A. BEARD, Ph.D.

Deputy Secretary
for Administration
JOHN S. SHAFFER, Ph.D.

Superintendent
FREDRIC A. ROSEMEYER

October 25, 2002

John C. Thomas
Executive Assistant to the Secretary
Department of Corrections
P.O. Box 598
Camp Hill  PA  17001-0598

RE:    Richard Wojtczak, AF-5977

Dear Mr. Thomas:

This is in response to correspondence received concerning Richard Wojtczak.

Mr. Wojtczak is housed at SCI-Laurel Highlands in the Personal Care Unit because of his medical needs. There is nursing staff available 24 hours a day on this unit. As you know, this institution was designed specifically to provide the utmost care for inmates with various medical conditions. SCI-Laurel Highlands is a Level 2 facility and has a Long Term Care Unit and a Personal Care Unit.

In regard to Mr. Wojtczak's medical care, no treatment modalities have been discontinued, however, certain medications may have been changed due to recommendations from a specialist, or due to no improvement in his present condition, and/or Mr. Wojtczak's request. This information is documented in his medical record.

There is an outdoor courtyard for recreation available to inmates residing on the Personal Care Unit; Mr. Wojtczak does make use of this area.

Per Department of Corrections policy, all general population status inmates are to have a cell search at a minimum of twice per year. Our records indicate that Mr. Wojtczak's cube has been searched three times in 2002; none was in August.

Mr. Wojtczak has no restrictions for purchases in the commissary. According to our records, he purchases various items that total close to the $45.00 limit each week.

If you need any additional information, please contact my assistant Betsy Nightingale at extension 1204. Thank-you.

Sincerely,

Fredric A. Rosemeyer
Superintendent

FAR:ban
cc:    Deputy Hunsberger
       Deputy Gates
       Rev. Donald E. Moyer
       File

*"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

Mr. John _____
Executive Assistant to the Secretary
Pa. Dept. of Corrections
P. O. Box 598
Camp Hill, Pa. 17001-0578

Richard Wojtychik AF5977
SCI Laurel Highlands
5706 Glades Pike
P. O. Box 631
Somerset, Pa. 15501-0631
c/c

Searches
in Aug. 2002
No safe cells

Searches

Single Cell

Not Minimum
Security

Dear Mr. Thomas,
I have attached copy of the letter Mr. Fredric A. Rosemeyer, Superintendent, SCI Laurel Highlands, wrote to you dated 10-25-02.

If I were a wise man I wouldn't write you this, nor mine, writing this letter to you. Nonetheless, I do want the FACTS to be correct AND the "Record" to contain the TRUTH.

There is an issue of Credibility here, that is, who to believe? who is Credible, who is NOT?

I will acquaint you with the REAL FACTS with obvious proof, that will decide who is "Credible".

(1) The Pa. Dept. of Corrections has classified me as a Level 2 Minimum security inmate.
As per Mr. Donald Williamson, Coordinator/Diagnostic and Classification, Pa. D.O.C. at Camp Hill, Pa. _ _ _ _

    (a) Level 2 inmates HAVE MORE PRIVILEGES than higher Security inmates _ _ _

    (b) Level 2 inmates REQUIRE LESS OBSERVATION BY STAFF.

(2) Mr. Rosemeyer states in his letter of 10-25-02, QUOTE _ _ _ "OUR RECORDS indicate that Mr. Wojtychik's CUBE has been SEARCHED THREE (3) times in 2002, NONE WAS IN AUGUST _ _ "

I have attached hereto "

'RANDOM SEARCH' CONFISCATED ITEM RECEIPT DATED 8-7-02 _ _ _
    my property searched 3 Times in AUGUST, staff + inmate witnesses _
NO. A416536 and * No. A458522 | (I was in SAME BED AC5-4)
"None was in AUGUST" _ _ No Credibility!
'RANDOM SEARCH, CONFISCATED ITEM RECEIPT DATED 11-8-02 _ _ _
    * No. A481324

①

Ex
78

I'm on DA UNIT (18-2) _ _

DA UNIT SEARCHED EVERY DAY from 10-31-02 To 11-20-02 _ _

DA UNIT SEARCHED AGAIN ON 12-13-02 _ _ _

My Property searched June - July 2002 _ _ 2 TIMES

My Property SEARCHED AUGUST 7, 2002 To Aug. 13 _ _ 3 TIMES

My Property searched Nov. 8, 2002 _ _ _ 1 Time

my Property searched Dec. 13, 2002 _ _ 1 Time

SEARCHED 7 Times in 2002 NoT 3 !

all witnessed by STAFF and inmates !

Mr. Rosemeyer DID NOT EXAMINE "OUR RECORDS"
very well. Again No Credibility !

This is NOT illustrative of a LEVEL 2,
MINIMUM SECURITY FACILITY _ _ _ where is
the "LESS RESTRICTIVE ENVIRONMENT" _ _ LESS
DIRECT OBSERVATION BY STAFF" _ _ _ "MORE
PRIVILEGES" ? ?

(NOTE: I was in the "searched" on A unit June-July-August  AC 5-4 _ _ _
I was in the "searched" on DA UNIT August To Dec. 2002  DA 18-2.

Also, while leaving the DINING HALL, 9-16-02 to 10-12-02,
1 MONTH, I was SEARCHED 19 TIMES.

This is NoT Minimum Security _ _ _ _

"MINIMUM" = _ _ smallest, least, lowest, narrowest, the smallest quantity
possible; the lowest degree or point reached. _ _ _
_ Webster's Dictionary _ New World.

As you can see, MR. Rosemeyer's misrepresentations are
meant to deceive and mislead you. Why?

②

In the letter Mr. Rosemeyer also mentions "an outdoor courtyard for exercise". This "jail" is VERY SMALL, iT is enclosed on 4 sides, iT measures 50ft X 50ft !!!

I guess he just "forgot" to tell you all this ??

Is this "courtyard" the "MORE OPEN SPACES" that the Pa. Dept. of Corrections STATES a LEVEL 2, MINIMUM SECURITY FACILITY is SUPPOSE TO HAVE ?

As for my "Medical file", I ask you to examine the documentation and compare it to the TRUTH.

SCI Laurel Highlands IS A WAREHOUSE just like ALL the other PRISONS in Penna. ARE WAREHOUSES. This so called "MEDICAL TREATMENT" is absolutely expensive.

I attach the letter I received from Superintendent Rosemeyer dated 10-21-01. He states, and I QUOTE _ _ _ "We do NOT have SINGLE cell HOUSING _ _" (at SCI Laurel Highlands)

ON DA UNIT THERE ARE _ 5 SINGLE Cells - RooMS - CUBES - AREAS _ THEY ARE 1-2-3-10-11 !

Don't play SEMANTICS with WORDS _ "Cell - RooM - CUBE - AREA" are "Cells" !

I am Z status, single cell, I require a SINGLE CELL. I have HAD A SINGLE cell FoR 27 YEARS.

SCI Smithfield has a DOUBLE FENCE WITH RAZOR WIRE and is classified as a LEVEL 4, MAXIMUM SECURITY FACILITY.

SCI Laurel Highlands has a DOUBLE FENCE WITH RAZOR WIRE and is classified as a LEVEL 2, MINIMUM SECURITY FACILITY.

How can this be ??

SCI Laurel Highlands _ Does NoT have "a LESS RESTRICTIVE ENVIRONMENT" "Does NoT have "MORE PRIVILEGES" for LEVEL 2 inmates"; There is NoT "LESS OBSERVATION OF INMATES BY STAFF" there are NoT "MORE OPEN SPACES FOR INMATES"

Putting BARS on windows at SCI Laurel Highlands Sept. Oct. 2003 Level 2 ??? !!!

It is undeniable, SCI Laurel Highlands <u>is NOT a Level 2, MINIMUM SECURITY FACILITY</u>.

Therefore, I have "REQUESTED" from <u>ALL</u> the appropriate STAFF at SCI Laurel Highlands <u>AND</u> PA. Dept. of Corrections, to be <u>TRANSFERRED</u> to a LEVEL 2, MINIMUM SECURITY FACILITY. (attached).

Sincerely,

s/

P.S.

Mr. Thomas,

Please send me the list of the "More Privileges" I am suppose to have as a LEVEL 2, MINIMUM SECURITY INMATE.

④



**PENNSYLVANIA DEPARTMENT OF CORRECTIONS**
**STATE CORRECTIONAL INSTITUTION**
**LAUREL HIGHLANDS**
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501-0631
Phone (814) 445-6501

Secretary
JEFFREY A. BEARD, Ph.D.

Deputy Secretary
for Administration
JOHN S. SHAFFER, Ph.D.

Superintendent
FREDRIC A. ROSEMEYER

October 25, 2002

John C. Thomas
Executive Assistant to the Secretary
Department of Corrections
P.O. Box 598
Camp Hill PA 17001-0598

RE:   Richard Wojtczak, AF-5977

Dear Mr. Thomas:

This is in response to correspondence received concerning Richard Wojtczak.

Mr. Wojtczak is housed at SCI-Laurel Highlands in the Personal Care Unit because of his medical needs. There is nursing staff available 24 hours a day on this unit. As you know, this institution was designed specifically to provide the utmost care for inmates with various medical conditions. SCI-Laurel Highlands is a Level 2 facility and has a Long Term Care Unit and a Personal Care Unit.

In regard to Mr. Wojtczak's medical care, no treatment modalities have been discontinued, however, certain medications may have been changed due to recommendations from a specialist, or due to no improvement in his present condition, and/or Mr. Wojtczak's request. This information is documented in his medical record.

There is an outdoor courtyard for recreation available to inmates residing on the Personal Care Unit; Mr. Wojtczak does make use of this area.

Per Department of Corrections policy, all general population status inmates are to have a cell search at a minimum of twice per year. Our records indicate that Mr. Wojtczak's cube has been searched three times in 2002; none was in August.

Mr. Wojtczak has no restrictions for purchases in the commissary. According to our records, he purchases various items that total close to the $45.00 limit each week.

If you need any additional information, please contact my assistant Betsy Nightingale at extension 1204. Thank-you.

Sincerely,

Fredric A. Rosemeyer
Superintendent

FAR:ban
cc:   Deputy Hunsberger
      Deputy Gates
      Rev. Donald E. Moyer
      File

*"Our mission is to protect the public by confining persons committed to our custody in safe, secure facilities, and to provide opportunities for inmates to acquire the skills and values necessary to become productive law-abiding citizens; while respecting the rights of crime victims."*

**DC-1**

No. A 416536

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

## Confiscated Items Receipt (Inmate)

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF591 | _illegible_ | AC 5-1 | SCI-Cau | 8/7/02 | 1000 |

☐ Random Search
☐ General Search
☐ Investigative Search

Misconduct Report Prepared
☐ Yes   ☒ No

Comment: Destroy At Inmate's Request

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. _illegible_ Papers | D | 2. (1) La Garbage BAG of | D |
| 3. _illegible_ Papers | D | 4. (mostly Items from) (Jim meal Tray) | |
| 5. _illegible_ | D | 6. (1) Loose Razor Blade | D |
| 7. (1) _illegible_ Paper | D | 8. | |
| 9. _illegible_ Papers | D | 10. _signature_ | |

Signature and Title of Officer Confiscating the Item(s)
_signature_ CoI

Signature and Title of Officer Disposing of the Item(s)

1. DC-15      2. Deputy Superintendent for Facilities Management      3. Inmate

---

**DC-154A**

No. A 458522

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

## Confiscated Items Receipt (Inmate)

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF591 | Walter _illegible_ | AC 5-1 | SCI-Cau | 8/7/02 | 100 |

☐ Random Search
☐ General Search
☐ Investigative Search

Misconduct Report Prepared
☐ Yes   ☒ No

Comment: Ship At Inm Request

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. (1) Nosrelco Electric Razor SHIP | | 2. | |
| 3. (Broken) (10 Blades) With Case | | 4. | |
| 5. | | 6. | |
| 7. | | 8. | |
| 9. | | 10. _signature_ | |

Signature and Title of Officer Confiscating the Item(s)
_signature_ CoI

Signature and Title of Officer Disposing of the Item(s)

1. DC-15      2. Deputy Superintendent for Facilities Management      3. Inmate

154A

No. 838126

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

18-2

## Confiscated Items Receipt (Inmate)

| DC Number | Name | Cell | Institution | Date | Time |
|---|---|---|---|---|---|
| AF5977 | WOJTCZAK Richard. | DA | SCI-LAU | 12-10-02 | 1:15 pm |

- ‾ Random Search
- X General Search
- — Investigative Search

Misconduct Report Prepared
Yes ___ No X

Comment: Sent to Property

| Items Confiscated | Items Confiscated |
|---|---|
| IEA. — TV Guide Sweatshirt and Calendar | Ship or Destroy |
| | |
| | |
| | |

Signature and Title of Officer _____ Millom Insp

1. DC-15          2. Deputy Superintendent for Operations          3. Inmate

---

DC-154A

No. A 481324

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

### Confiscated Items Receipt (Inmate)

| DC-Number | Name | Cell | Facility | Date | Time |
|---|---|---|---|---|---|
| AF5977 | WOJTCZAK | DA 1B-2 | SCI LAU | 11-5-02 | 10 10 |

- ☑ Random Search
- ☐ General Search
- ☐ Investigative Search

Misconduct Report Prepared
☐ Yes  ☑ No

Comment: Hold for disposition Security Capt. Bea Eh Roskart

| Item(s) Confiscated | Disposition | Item(s) Confiscated | Disposition |
|---|---|---|---|
| 1. 28 Personal pictures mail out wife photo | H | 2. | |
| 3. Passes from SCI Huntingdon | | 4. | |
| 5. | | 6. | |
| 7. | | 8. _____ 1-8-02 | |
| 9. | | 10. | |

Signature and Title of Officer Confiscating the Item(s) _____

_____ Premise CCI

Signature and Title of Officer Disposing of the Item(s)

1. DC-15          2. Deputy Superintendent for Facilities Management

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Laurel Highlands
October 24, 2001    (10)

*[handwritten: pee 11-1-01 pw]*

**SUBJECT:**   Inmate Letter

**TO:**        Richard Wojtczak, AF-5977
               SCI-Huntingdon
               1100 Pike Street
               Huntingdon PA  16654-1112

**FROM:**      *[signature]*
               Fredric A. Rosemeyer
               Superintendent

I am in receipt of your letter dated October 16, 2001.

SCI-Laurel Highlands is a level 2 facility with dormitory housing.  We do not have single *[handwritten: Lie]* cell housing.  We provide care for inmates with special needs such as long term care, wheelchair, dialysis and geriatric inmates.

You may initiate a transfer through your counselor and your unit manager.

*[handwritten: one of my "SpeciAL Needs" is _ I MusT have a SiNGLE cell (no inmates in cell with me) Z status in single cell!]*

FAR:ban

cc:    File

# PENNSYLVANIA'S STATE DEPARTMENT OF

# CORRECTIONS

SEPT. $23,02$

## ADMINISTRATOR'S

Mr. Jeffery A. Beard, PHD.,

Executive Deputy Secretary

Pennsylvania's Dept. Of Corrections

Penna., Dept., Of Corrections

P.O. Box 598

Camp Hill, Pa., 17001-0598

Mr. Fredric A. Rosemeyer

Superintendent

S.C.I. Laurel Highlands

Somerset, Pa., 15501-0631

Mr. John Paul

Classification & Program Manager

S.C.I. LAUREL HIGHLANDS

5706 GLADES PIKE

SOMERSET, PA., 15501-0631

Mr. Donald Williamson

Coordia., Diagnostic & Classification

Bureau Of Inmate Services

Penna., Dept., Of Corrections

P.O. Box 598

Camp Hill, Pa., 17001-0598

Ms. Mardi Hunshurger

Deputy Superintendent

S.C.I. Laurel Highlands

Somerset Pa., 15501-0631

Kowalewski

Ms Annetta Kowalewski

Corrections Hlth., Care Admin.,

S.C.I. LAUREL HIGHLANDS

5706 GLADES PIKE

SOMERSET, PA., 15501-0631

FROM.........................................................Richard Wojtczak ....Inmate ..AF-5977

S.C.I. LAUREL HIGHLANDS

5706 GLADES PIKE

SOMERSET, PA., 15501-0631

B-A BLOCK

FROM THE FOLLOWING FACTS, IT IS OBVIOUS THAT S.C.I. LAUREL HIGHLANDS IS NOT A
MINIMUM SECURITY FACILITY:

FROM 05-21-02, To 08-31-02, Just A Three (3) Month Period, S.C.I. LAurel Highlands,
Subjected Me To The Following:

(A) STOPPED MEDICATION TREATMENT THAT: "I Was Taking For Long Standing Chronic Med-
    Medical Problems (Cyston Scalp-Sinus-Acid Reflux, Hiatel Hernia-Prostate Causing
Me Pain And Suffering)"

(B) STOPPED TREATMENT "I Was Receiving For Degenerating Bone Disease In Both Knees,
    Hips, Disc In Spine For Over A Year In S.C.I.'s Huntingdon And Smithfield; I
    Cannot Walk, I Require A Wheel-Chair. ( Causeing Me Pain And Suffering)

(C) STOPPED TREATMENT: That I Was Receiving For Eye Problems From An Eye Special-
    ist, A Qualified Licensed OPTHOMOLOGIST, (Causing Me Pain And Suffering)

(D) DENYING ME OUTDOOR RECREATION.........Yard;

(E) DENY ME ....Purchasing Items From The Commissary;

(F) PROPERTY SEARCHES ....Three (3) Times In A Week: 08-07-02, To 08-13-02....This
    IS NOT A SEARCH FOR CONTRABAND...It Is PURE HARRASSMENT And ATTEMPTED INTIMIDATION
    And BULLY SCARE TACTICS By GUARDS: K. CRISSEY, RITERNOUR (Sic) URBAN; I Was Also
    THREATENED By The Guards"; I Took This Problem To C.O. SHAFFER: LT., TURNER
    CAPT., HILES; The Guards Behavior Was Totally Unpro fessional .;

(G) EVENTHOUGH, I'M IN A WHEELCHAIR AND A LEVEL TWO (2) INMATE:
    When I'm Taken Outside The Prison (To A Doctor Etc.,) I'm Handcuffed With The
    "BL."BLACK BOX". CHAINS AND LEG IRONS (Causing Me Pain And Suffering).

(F) my property WAS ALSO SEARCHED TWICE in JUNE 2002 while I was on AC block
in 3 MONTHS (MAY To AUGUST 2002) My PROPERTY SEARCHED
5 TIMES !!

Re: Inmate Richard Wojtczak, Official Request To Be Immediately Transferred To A Level Two (2) Minimum Security Facility.........

The Pennsylvania Department Of Corrections (D O C ) Has Classified Me As A Level Two (2), Minimum Security Inmate; I'm Not A Security Risk.    A Custody Level (2) (Minimum Security Inmate), Is One Who Demonstrates Patterns Of Non-Aggressive Behavior:

1. By Their Behavior And Record They, Require Less Observation By The Staff;

2. Security Level Two (2), Facilities Have A Less Restrictive Inviorment;

3. Security Level Two (2) Facilities Have Less Restriction Of Activities;

4. As A Custody Level Two (2) Case, You Have More Privileges Than Higher Custody Level Inmates....(What Are The More Privileges ?).

THESE ARE THE CRITERIA SET FORTH BY THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS (D O C )  AS PER MR. DONALD WILLIAMSON

Coordinator - Diagnostic And Classification,

Bureau Of Inmate Services

P.O. BOX 598

Camp Hill, Pa., 17001-0598  Telephone..(717) 975-4859,

Describing Level (2) Minimum Security.

I'm Presently Housed At S.C.I. Laurel Highlands....Somerset Pa.,..S.C.I. Laurel-Highlands Does Not  Meet The Above Mentioned Criteria, For A Level Two (2) Minimum Security Facility,  And Is Therefore, Not Minimum Security.

I'm Formally Requesting In Writing (AGAIN), To Be Immediatly Transferred To A Level Two (2) Minimum Security Facility.

IT IS OBVIOUS, FROM THESE FACTS, AS A LEVEL TWO (2) MINIMUM SECURITY INMATE:
HERE AT S.C.I. LAUREL HIGHLANDS:

(1) I DO NOT Receive....LESS OBSERVATION BY THE STAFF;

(2) I AM NOT IN A LESS....RESTRICTED INVIORMENT

(3) I DO NOT HAVE.........LESS RESTRICTIONS ON ACTIVITIES

(4) I DO NOT HAVE.........MORE PRIVILEGES....Than Higher Custody Level Inmates;


MY HAVING TO USE A WHEELCHAIR, BECAUSE OF MY DISABLING BONE DISEASE (CAN NOT WALK)
Does Not NEGATE  The Rights And More Privileges I Am To Receive As A LEVEL 2 Minim-
um Security Inmate, As Per Mr. Donald Williamson, Penna. Dept Of Corrections (DOC),
SUPRA..

PLUS: The Above Is Without Applying The AMERICANS WITH DISABILITIES ACT OF 1992,
REHABILITATION ACT 1973, To My Situation........THESE FEDERAL LAWS DO    APPLY
To The PENNSYLVANIA DEPARTMENT OF CORRECTIONS (DOC) AT  S.C.I. LAUREL HIGHLANDS



I Am Again Requesting To

Be Immediately Transferred

To A Level Two (2), Minimum Security

Facility.


Sincerely,

# Managing the Twilight Years

## Prison Specializes in Treating the Elderly and Disabled

by Becky Beane

A few months ago a Pennsylvania prisoner died suddenly in the middle of his dialysis treatment. Patients hooked up to the other eight dialysis machines watched in shock as medical staff rushed in to try to revive him—with no success. Some of the onlookers started to weep, a rare display of feelings for prisoners. And almost immediately, prison counselors and chaplains arrived to offer comfort and presence.

"This is a prison of compassion," describes Fredric Rosemeyer, superintendent of the State Correctional Institution at Laurel Highlands. It's also a respected pioneer in the specialized care of elderly and severely disabled prisoners.

Laurel Highlands opened in July 1996, converted from a state mental hospital in Somerset, southeast of Pittsburgh. Most of the hospital nursing staff stayed on, equipped with several weeks of instruction from the corrections training academy and on-the-job experience at other prison facilities. Rosemeyer praises their excellent professionalism and caring attitudes.

Jan Kowalewski, a registered nurse, says, "We don't have access to the men's criminal jackets; these charts are strictly *medical* charts. We treat them as we would in any hospital, regardless of what they've done."

Rosemeyer reminds them not to forget that this is a prison, with strict security requirements. Staff must account for every needle, every drug, and piece of equipment. Serious disciplinary problems can lead to a prisoner's solitary lockdown.

But that seldom happens. Even in the general population unit (Laurel Highlands also houses younger prisoners, who do much of the physical labor), the older

inmates "are more subdued," says Deputy James Henderson. "They have a stabilizing effect on the younger population."

Expected to house 1,500 prisoners when the renovations are completed, Laurel Highlands now holds about 350.

To help ease the bleakness, every prisoner receives a personal treatment plan, designed and reviewed every 90 days by a team of educational, medical, psychological, chaplaincy, and activities staff. For some "it's a plan to make parole," explains Deputy Superintendent David Pitkins. For others "it's a plan to make it through each day. We don't want them to just sit in a room and die."

The prison's medical facilities are state of the art and highly cost-effective. Without the dialysis unit, for example, up to 40 prisoners with kidney problems would have to be transported—under guard—to the local hospital for treatments three times every week. Treating the patients right there in prison saves Pennsylvania taxpayers millions of dollars in medical, transportation, and security costs.

Laurel Highlands—like a growing number of prisons—also takes advantage of tele-med, closed circuit TVs that allow interaction between the prisoner-patient and doctors at participating hospitals.

Medical staff offer some unique resources to help disabled inmates become more independent. A long-handled instrument with clamps at one end (plastic so it can't be used as a weapon) enables arthritic inmates

to put on their socks. Strips of wide elastic allow them to exercise arm muscles in place of weights. Some come for "hot wax" treatments to soothe and revive crippled joints.

A crew of chaplains helps soothe and revive crippled spirits. Says head chaplain Elizabeth Scott: "We would do [for inmates] as discretive [i.e., discernible] for help them see themselves with value and worth—as God sees them."



Mike Ellison

Lies-PROPAGANDA!

It is time to mend relationships we destroyed, and the NAACP is a step in the right direction. It is one of few organizations concerned about prisoners and allowing them to be members. It is trying to unite prisoners' families; improve our communities; improve our living conditions in prison; and educate us about the importance of voting. So I encourage prisoners to support the NAACP through their presence, ideas, participation, time, and donations. To start an NAACP branch or to assist the NAACP in accomplishing its goals, contact Darnell Drinks, President, NAACP Graterford Branch, P.O. Box 2444, Graterford, PA 19426.

*Aaron Christopher Wheeler BZ-2590, SCI-Graterford*

As always, thank you for the wonderful job you are doing, not only to inform, but also to give all of us a place to voice our opinion, ideas, and complaints.

*Anthony Yang AS-3910, SCI-Somerset*

With construction nearing completion, SCI-Laurel Highlands soon will accept more prisoners. They will be asked to come here to work or to get closer to home. Think twice about coming here! We are treated like level 5 prisoners, subject to search at each meal and shake-downs by the team from hell. Intimidation, scare tactics, and threats are normal. Kitchen workers are forced to stay at work for the full 8 hours, even if not working and are not allowed the simplest reading material. Retaliation is immediate for any argument or questioning of orders. This is a work camp. You work or ship out. Our recreation dept. is worthless.

I witnessed nurses mistreating the elderly. The law library is inadequate. A double perimeter fence with high tech sensors surrounds our yard, and a roving vehicle drives around in circles 24-7, but the slightest bit of fog cancels yard. The moment you try to file something, you are harassed or shipped far from home. Think twice about coming here, its no way to do time.!

*Name withheld by editor, SCI-Laurel Highlands*

I lost my father, 79, unexpectedly this spring. He and Mom stood by me my whole life - even during the last 19 years in prison. I will always treasure the time we shared together, which now seems too short. I was unable to go to the funeral– not because of money, but because of policy. Since Dad died on a Saturday, no one could be notified until Monday, and then the sheriff wanted $1,700 by 4 p.m. Monday. Also because they were not notified until Monday, the sheriff said there was no time to plan for my trip to the funeral home because I'm so far away.

However, what the sheriff would have done wasn't worth any money. He would have given me a night in the county jail and some time (handcuffed) alone with my Dad only—no family, no time at the cemetery, nothing. They did not consider I have been in jail for 19 years, and am maxing out in a year, or that this summer I should be in a halfway house this summer (post-minimum pre-release).

While I'm not mad or bitter, I am sad that the sheriff has no plans in place for this need - particularly, no week-end phone number. Something must change. Since no one knows when they will die, the system must change. Change also is needed, because longer sentences make it more likely close family death will enter a prisoner's life. At such a time we should be allowed to grieve and heal with family.

*William Thomas Skinner AM-8585, SCI-Waymart*

I hope to find others in my situation. In 1996 I committed a homicide due to a violent reaction on Prozac, an anti-depressant. Because of lack of research at the time, I

was advised to plead guilty to murder-three. However, since my incarceration I found numerous studies and books on the dangers of anti-depressants such as Prozac, Zoloft, Paxil, and Welbutrin. These studies concluded suicide and violence can be caused by these medications especially in Manic Depressed people. One of the shooters at Columbine High School was on an anti-depressant. If you too have had a similar reaction to one of these drugs or have information to help me please contact me to exchange information.

*Kurt Danysh DL-4879, SCI-Frackville*

Here, about 1100 prisoners get a haircut about every 28 days. Also, 60 staff members get haircuts twice a month. Imagine 120 monthly haircuts given while "on the clock" at a street value of about $10. That is $14,400 a year. Now consider six barbers being paid 42-cents/hour for six hours/day, or about $50.00/month ($3,600/year). This is not fair! It's involuntary servitude. Though incarcerated, we barbers still must maintain our state license and fees, as well as other barbering items. In a community the size of this prison a barber sure could use that $14,400 to feed and clothe a child. We should not give such a financial break to someone who earns three or more times minimum wage as starting pay! Wake up, society! This is criminal.

*Name withheld by editor, SRCF-Mercer*

I'm not a very religious person, but I believe there's a God. Last spring, I listened to a sermon by Bishop David Evans. I can only describe it as being electrifying. I recently learned he is on the radio every Sunday at 7:00 a.m. on 91.3 FM, and 9:00 a.m. on 990 AM on Sunday, and live at noon on 1110 AM. I was once told that when you receive something good pass it on.

*Kevin Everett BF-3380, SCI-Graterford*

# HUGS

*by Jeannette Branham #28388, Corona, CA*

It is wondrous what a hug can do.
A hug can cheer you up when you are blue.
A hug can say "I love you so" or
"Gee, I hate to see you go.
A hug is "Welcome back again" and
"Great to see you, where have you been?"

A hug can soothe a small child's pain,
And bring a rainbow after rain.
The hug, there is just no doubt about it.
We could scarily live without it.
A hug delights and warms and charms,
It must be why God gave us arms.

Hugs are great for fathers and mothers.
Sweet for sisters, swell for brothers.
And chances are your favorite aunts,
Love them more then potted plants.
Kittens crave them, puppies love them.
Heads of state are not above them.

A hug can break the language barrier,
And make your travels so much merrier
No need to fret about your store of them.
The more you give, the more there's more of 'em.
So stretch those arms without delay,
And give someone a big hug today.

To:

See attached List

Soube
etc.

Richard Nistwak AF5977
SCI Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, Pa. 15501-0631
by certificate of Mailing
c/c

When the reality, of the operations of the state Correctional Institution at Laurel Highlands, which is proported to be a SECURITY CUSTODY LEVEL 2, MINIMUM SECURITY FACILITY, is compared to the CRITERIA of a LEVEL 2, MINIMUM SECURITY FACILITY PUBLISHED by the Pa. Dept. of Corrections, SCI Laurel Highlands is NOT a SECURITY CUSTODY LEVEL 2, MINIMUM SECURITY FACILITY!

I am AGAIN requesting to be TRANSFERRED to a LEVEL 2 MINIMUM SECURITY FACILITY. I have been to ALL the STAFF AT SCI Laurel Highlands AND at the Doc Camp Hill, Pa. WITH No ResuLTS!

I have been classified by the Pa. Dept. of Corrections as a SECURITY LEVEL 2 MINIMUM SECURITY INMATE as designated by the Pa. D.O.C.

① I have demonstrated patterns of NON-AGGRESSIVE behaviour
② By my behaviour AND RECORD I require LESS DIRECT OBSERVATION by STAFF

①

③ have more privileges than higher security Level inmates

I am NOT a Security Risk!

The Pa. Dept of Corrections has classified THeir Level 2, MINIMUM SECURITY FACILITIES ... AS FoLLows ...

① a LESS RESTRICTIVE ENVIORNMENT ___
② MoRE OPEN SPACES ___
③ Less ReSTRICTION on ACTiviTies ___

Webster's, NewWORD DicTionaRy ... "MiNiMUM" = smallest, least, lowest, Narrowest, the smallest quantity possible; the lowest degree or point reached ...

SCi Laurel/Highlands has a DOUBLE FENCE WiTH RAZOR WiRE and is classified as a 'Level 2, MiNiMUM SECURiTY FACILiTY ... SCi Smithfield has a DOUBLE FENCE WiTH RAZOR WiRE and is classified as a Level 4, MAXIMUM SECURITY FACILiTY ___ How can they be the same?? Barson windows at SCi Laurel/Highlands Sept. Oct. 2003

# Should ALSo be NoTeD:

Different security custody LeveL inmates CAN NOT be MiXeD TogeTHeR iN THE SAME FACiLiTY! i.e. — LeveL 2, MiNiMUM SECURiTY iNMATeS MiXeD iN with Levels 3-4-5 MAXiMUM SECURiTY iNMATeS ... the Level 2 inmates are then treated like MAXiMUM SECURiTY iNMATeS — Level 2, MiNiMUM SECURiTY iNMATeS LOSE ALL their Level 2 "PRiViLeGeS"!! (whatever they are?)

②

Facility personal are NOT TRAINED in the treatment —
handling of LEVEL 2, MINIMUM SECURITY INMATES _ _ _
_ _ to the detriment of the inmate AND to the detriment
in the operation of the facility!

FACTS: supported by documentation (attached) and by STAFF witness,
and INMATE WITNESSES _ _ _ _ _

SEARCHES OF MY PROPERTY from FEB. 2002 To JAN. 2003
                                              11 MONTHS

1 Time when I LEFT SCI Huntingdon To SCI Smittfield _ _ Feb. 2002
1 Time when I ARRIVED at SCI Smittfield From SCI/Huntingdon _ _ Feb. 2002
1 Time WHILE AT Smittfield _ _ March 2002
1 Time when I LEFT Smittfield to SCI Laurel Highlands _ _ May 21, 2002
1 Time when I ARRIVED at ▓▓▓▓▓ at SCI Laurel/Highlands
▓▓▓▓▓ From SCI Smittfield _ _ _ _ _ _ _ _ _ _ May 21, 2002
2 Times at SCI Laurel/Highlands, JUNE 18, 2002, JULY 2002 on AC Unit Bed 5-2
3 Times at SCI Laurel/Highlands AUG 7, 2002 To AUG 13 2002 on AC Unit Bed 5-4
1 Time at SCI Laurel/Highlands NOV. 8, 2002 on DA unit Bed 18-2
1 Time at SCI Laurel/Highlands Dec. 19, 2002 on DA unit Bed 18-2
1 Time at SCI Laurel/Highlands JAN. 23, 2003 on DA unit Bed 1-1
1 Time AT SCI Laurel/Highlands JAN. 27, 2003 on DA unit Bed 1-1
1 Time at SCI Laurel/Highlands Dec. 13, 2002 on DA unit Bed 18-2

15 SEARCHES in 11 MONTHS !!!

also searched

11-8-02    12-13-02    1-23-03    4-26-03
12-8-02    1-21-03    1-27-03    9-6-03

③

IN ADDITION to the 15 PROPERTY - cell SEARCHES at Laurel Highlands FROM 9-16-02 To 10-12-02 (1 MONTH), I WAS SEARCHED 19 Times when I left dining Hall after I ate! 19 Times

I have been SEARCHED 34 Times in 11 MONTHS !!! and I am supposed to be a LEVEL 2, MINIMUM SECURITY INMATE, at a LEVEL 2, MINIMUM SECURITY FACILITY !

I was moved to DA unit on 9-12-02. The 'Search Team' has 'searched' DA UNIT (Since 9-12-02) Sept. 2002; Oct. 2002; Nov. 2002; Dec. 2002; JAN. 2003 (5 MONTHS)

SCI Laurel/Highlands and Pa. D.O.C. 'SAY' there are 'random' searches _ that they 'search' by BED NUMBER NoT the 'INMATE'. DOC policy is to have a 'cell search (property)' at a MINIMUM OF 'TWICE PER YEAR' unquote (Rosemeyer 10-25-02). The FACTS SHOW my property-cell searched at SCI Laurel/Highlds FROM May 21, 2002 to Jan. 2003 = 8 MONTH Period

11 TIMES : 5-21-02 = 1; June-July 2002 on A unit BED 5-4 = 2Times; Aug. 7 & Aug. 13, 2002 on A Unit BED 5-4 = 3 Times; Nov. 8, 2002 on DA unit BED 18-2; Dec. 10, 2002 on DA unit BED 18-2; Dec. 13, 2002 DA unit BED 18-2; Jan. 23, 2003 DA unit BED 1-1; Jan. 27, 2003 DA unit BED 1-1 = 11 TIMES in a "1 YEAR Period of Time". _ _ _ ALSO _

4

-- when you look at the "DATES" of these 'searches'
I AM BEING SEARCHED EVERY MONTH!
    (this is NOT a "MINIMUM of TWICE PER YEAR (12 month period) )
This is NOT "RANDOM search BY BED NUMBER __ " ____

---- This is NOT a "LESS RESTRICTIVE ENVIRONMENT" of a Level
    2, MINIMUM SECURITY FACILITY ___
--- This is NOT "LESS OBSERVATION BY STAFF" of a Level 2,
    MINIMUM SECURITY FACILITY ___
-- This is NOT the "MORE PRIVILEDGES" of a Level 2, INMATE
--- The 50ft × 50ft "count yard for outdoor recreation is
    NOT "the more open spaces" of a Level 2, MINIMUM
    security facility ----

    Despite the Repeated 'claims and observations' by the Pa.
D.O.C. and sci Laurel/Highlands, that sci Laurel/Highlands
is a Level2, MINIMUM SECURITY, the FACTS belie this
rhetoric.
    sci Laurel/Highlands is NOT operated as a MINIMUM
Security Facility --- you can't talk the world into being FLAT,
when the REALITY is, the world is ROUND,
    Being classified as a Level 2,
    MINIMUM SECURITY INMATE,
    I am AGAIN Requesting to be
    Transferred to a Level 2,
    MINIMUM SECURITY FACILITY.

⑤

<u>Medical Care - Treatment</u> (sci Laurel/Highlands) ___

As can been seen by the attached <u>letters</u>, <u>articles</u>, <u>documents</u>, the Pa. D.O.C. <u>PRETENDS</u> that sci Laurel /Highlands is designed specifically to provide the utmost care, specialized care, of elderly and disabled prisoners.

The following <u>FACTS</u>, which can be <u>PROVEN</u> with documents, my medical files, inmate and staff witnesses __ reveal that the <u>Medical care - Treatment</u> at sci Laurel/Highlands is far below acceptable, minimal medical standards.

Along with <u>other</u> medical difficulties, I have __
(1) degenerating bone disease of the knees, hips, disc in spine __
(2) Chronic cyst condition on scalp - face - other areas __ (3) Hiatal/Hernia - acid Reflux disease.

(1) <u>Degenerating Bone Disease</u>, this Chronic - painful condition now has me confined to a wheelchair!

While I was housed at sci Huntingdon <u>AND</u> sci Smithfield, (prior to being Transferred to sci Laurel/Highlands) <u>FOR OVER 1 YEAR</u> I received <u>GLUCOSAMINE</u> (by Dr. Kimber, medical director at sci Huntingdon).

This <u>GLUCOSAMINE</u> MUST Be TAKEN LONG TERM To Be EFFECTIVE. The <u>GLUCOSAMINE</u> DID START TO WORK!

When I was Transferred to sci Laurel/Highlands on 5-21-02 (from sci Smithfield) the <u>GLUCOSAMINE</u> was IMMEDIATELY STOPPED - DisconTinued BY ___ Dr. JAWAD Salameh medical director, Physician's Assistants

(6)

ELLIS KAUFMAN, JEFF TURGEON!

I was 'told' - - "We can't get that"! I told Dr. JAWAD Solameh, Kaufman, Turgeon to contact Sci/Huntingdon - Sci/Smithfield and the Doc at Camp/Hill AND FIND OUT HOW THEY GOT THE GLUCOSAMINE for me "overriding the Doc" "formulary" for drugs", and do what they did!

I Received NO RESPONSE!

The RELIEF I received from the GLUCOSAMINE has now disappeared in the 9 MONTHS it was STOPPED!

The Severe Pain and Suffering has now returned!

Solameh, Kaufman, Turgeon have caused me severe pain and suffering intentionally! Deliberate indifference to my suffering --- NEGLIGENCE.

"Regular Tylenol" 3x day gives Very Little Relief (some days No Relief at ALL)!

② Cyst condition, Scalp - Face _ _ _ _ this chronic condition can not be cured. It can Only be PROPERLY TREATED to keep the CYSTS under Control. Not properly Treated the CYSTS SCAR. SCAR scalp AND SCAR FACE. Not properly Treated CYSTS get large, bleed and are extremely Painful.

After seeing Dr. Wingert, a specialist in dermatology, and years of "Trial and error" of different types of treatment, it was discovered the PROPER TREATMENT FOR THE CYSTS THAT WORKS IS _ _ _ _ _ _ _

⑦

① Shave scalp with ELECTRIC RAZOR . . . ② apply CLeocin-T to cysts . . . ③ when cysts get out of control . . . ④ Take ANTIBIOTIC KEFLEX, 500mg 3x day for 20 days (or longer).

XXX This 3 Part TREATMENT HAS PROVEN To WORK on this cyst condition! This is well documented in my PRISON MEDICAL FILES!

I have had an ELECTRIC RAZOR (which I purchased) for approx. 20 years (for cyst problem) . . . In FEB 2002 my ELECTRIC RAZOR broke, AFTER NUMEROUS ARGUMENTS hereat SCI Laurel/Highlands, AND DISPITE the Medical approval for RAZOR from the D.O.C. at Camp Hill — Dr. Biesel Arthur — SCI Laurel/Highlands REFUSED to allow me to PURCHASE A REPLACEMENT ELECTRIC RAZOR AND CONFISCATED my old RAZOR so I could not get it repaired! I finally PURCHASED a New RAZOR 10-1-02. 8 MONTHS WITHOUT PROPER TREATMENT FOR CYSTS.

WITHOUT TREATMENT I BROKE out in very large and painful CYSTS — they SCARRED MY SCALP AND SCARRED MY FACE! causing me severe PAIN AND SUFFERING! I then could shave my scalp but I did NOT receive the Cleocin T and Keflex antibiotic. Cysts still out of Control.

On 12-10-02 I received Doxycline 100mg 2x day for replacement for KEFLEX . . . Doxycline DID NOT WORK!

Finally on 1-10-03 I received Cleocin T BUT STILL NO Keflex antibiotic.

Without the 3 PART TREATMENT (see above) (shave scalp; apply Cleocin T; Take Keflex antibiotic) cysts are still

⑧

Very Bad (as of 2-19-03).

I have repeated this Cyst situation to Dr. JAWAD Salameh; Ellis Kaufman; Jeff Turgeon __ I was TOLD __ "you don't tell us what to do"!

They have caused me severe Pain and Suffering __, Intentionally __! Deliberate indifference to my suffering __ Negligent! And Causing my Scalp and FACE to be scarred.

③ Hiatal Hernia - Acid Reflux disease ___ I was taking PRILOSEC (sic) for this very painful Condition.

The PRILOSEC (sic) was STOPPED - DisconTinued and I was placed on PROTONIX, which gives very little relief. On PROTONIX I now have Stomach pain AND diarrhea for the last 9 MONTHS.

Dr. Jawad Salameh, Ellis Kaufman, Jeff Turgeon have refused to put me back on PRILOSEC (sic) ... this is Deliberate indifference to my Suffering, it is Intentional Negligence causing me pain and Suffering.

I direct your attention now to the attached article Concerning SCI Laurel Highlands .. "Managing the Twilight Years" Contrary to the PROPAGANDA - PUBLICITY, SCI Laurel Highlands __ is NOT A PRISON of COMPASSION __ __ NOT ALL THE STAFF HAVE PROFESSIONALISM AND CARING ATTITUDE __ WE ARE NOT TREATED AS we would in ANY HOSPITAL __ __ __ THE PRISON's MEDICAL FACILITIES ARE NOT STATE of TH ART __ __

⑨

- - - - SCI Laurel/Highlands <u>is **NOT**</u> a respected pioneer in the <u>SPECIALIZED CARE</u> of <u>ELDERLY</u> and <u>DISABLED PRISONERS</u>.

- - - Also, the "Article from Graterfriends" (attached) about SCI Laurel/Highlands <u>IS TRUE</u> - - -

This is just a 'tiny glimpse' past the <u>MAZE OF MIRRORS</u> the D.O.C. and SCI Laurel/Highlands uses! Come here, <u>Talk to the INMATES</u>, ESPECIALLY <u>A unit and D unit</u>!

They can push an inmate into the day room for a "fire drill" - - - - yet they can't push him <u>OUTSIDe FOR SOME FRESH AIR AND Sunshine</u>. So this INMATE, is on his back - IN A BED - HASN'T been <u>OUTSIDe for YEARS</u>.

"Compassion"? "PROFESSIONALISM"? "caring attitude"? "STATE of THE ART"? "respected pioneer"? "SPECIALIZED CARE"? <u>Where?</u>

All of this is just the tip of the iceberg here at SCI Laurel/Highlands and the Pa. Dept of Corrections. SCI Laurel/Highlands <u>IS NOT / HAS NOT</u> been in compliance with <u>Rehabilitation Act / Americans with Disabilities Act</u> — Since it "opened in 1996" (7 years) — And the Pa. D.O.C. has <u>Never</u> been in compliance with the Rehabilitation Act / American with Disabilities Act / Yet the D.O.C. and Laurel Highlands <u>CONTINUE</u> to Receive FeDeRAL FINANCIAL ASSISTANCE —

(10)

<u>FEDERAL FUNDING</u> — How can the Pa. D.O.C. and SCi Laurel/Highlands <u>VIOLATE FEDERAL LAW AND STILL Receive FEDERAL FUNDING</u>???

I have written to <u>EVERYONE</u> within the Pa. Dept. of Corrections concerning these issues <u>AND</u> I have written to individuals <u>OUTSIDE</u> the Pa. Dept. of Corrections concerning these issues ____

____ <u>ALL</u> I <u>Receive</u> are <u>DENIALS</u>, "<u>Lies</u>", and everything is just fine, <u>meaningless RHETORIC</u>, <u>NOTHING</u> is done to correct <u>all</u> the problems! ALL TALK, NO ACTION!!

To bring this segment to a close, I would just add a sprinkling of bits of information (in addition) that <u>EVERYONE</u>, and I do mean <u>EVERYONE</u> will <u>NOT</u> look into — discuss !!

1. I have been at SCi Laurel/Highlands since 5-21-02 (<u>9 MONTHS</u>) and I have <u>NOT</u> received a <u>HOT MEAL YET</u> ___

2. SCi Laurel/Highlands, allegedly, a Minimum Security Facility, tries to 'excuse' 'all the <u>SEARCHES</u>' by saying — they don't have all the violence and assaults by inmates as other prisons because they 'continually' <u>SEARCH</u> the prison.
At first 'impression' — 'blush' this reasoning would seem to be <u>True</u> ___ However it <del>is</del> <u>NOT</u>!

⑪

The _real TRUTH_, is not far away, it is found in the Pa. Dept. of Corrections' Criteria for a _Custody Level 2, Minimum security inmate_

- - - - "the inmate's RECORDED BEHAVIOUR have DEMONSTRATED patterns of NON-AGGRESSIVE BEHAVIOUR - - -
- - - "inmate requires LESS DIRECT OBSERVATION BY STAFF - - - "
- - - "inmate NOT A SECURITY RISK - - - "

Supplementary to this, the inmates here at SCI Laurel Highlands are getting close to _parole_ or _completing their sentences_. In other words, they are very close to getting out of prison! They are NOT going to risk getting out of prison by "causing trouble", they DO NOT want to be Transferred to a "Maximum Security" facility (SCI Huntingdon - SCI Graterford - SCI Pittsburgh etc.).

If an inmate is a "security risk", cause "security problems" - - - he would NOT be a Laurel Highlands, would he!

3. About a year ago, a Pa. state representative was here at SCI Laurel Highlands, a convicted felon - an inmate. His name - - - THOMAS DRUCE ⓐ was his "bed-randomly search-ed" was he "randomly searched out of dining hall" - - - , 34 TIMES IN 4 MONTHS? (15 property searches; 19 searches out of dining hall) NO HE WAS NOT SEARCHED 34 TIMES!!! WHY?

ⓑ Was his Medical TREATMENT STOPPED causing him unnecessary _Pain and Suffering_? NO IT WAS NOT!!! why?

⑫

<u>4.</u> the Pa. D.O.C. complains that they "do not have enough money" (see attached article) __ Yet the Pa. Doc. takes money <u>FROM THEIR YEARLY BUDGET</u> __ and gives it to <u>other AGENCIES WHO HAVE THEIR OWN BUDGETS</u> __ Why?

_ _ _ _ <u>$6 MILLION</u> _ <u>from Pa. D.O.C.</u> <u>to Governor Ridge's</u>
juvenile community Programs _ _ _ _

_ _ _ _ $2 MILLION _ from Pa. D.O.C. to Pa. State Police for
safety equipment _ _ _ _

_ _ _ $15 MILLION _ from Pa. D.O.C. <u>To Volunteer fire companies</u>

<u>TOTAL $23 MILLION</u>

<u>$500,000.<sup>XX</sup></u>, new elevator at SCI/Huntingdon _ _ <u>Never</u>
<u>USUED</u> _ _

<u>5.</u> Now the <u>issue</u> that <u>No one</u> in the Pa. Doc - Pa. state
government <u>TALKS ABOUT</u> _ _ _ the Pa. <u>TAXPAYERS</u>
<u>ARE NEVER TOLD) ABOUT</u> _ _ _ _ _ _
<u>MONEY DAMAGES</u> _ _ _ taxpayers dollars, paid
out of the Pa. Treasury for <u>Unnecessary injuries</u> caused
by <u>INCOMPETANT</u> and <u>ILL TRAINED</u> STAFF.
How much does this amount to for the LAST <u>10 YEARS?</u>

(a) <u>WILLiams V. SYED</u>, 782 A2d 1090 (Pa. Comwlth <u>2001</u>)
(attached herto)
$260,000.<sup>XX</sup> awarded to <u>Williams</u> for <u>INCOMPETENT MEDICAL</u>
<u>TREATMENT</u> _ _ _ _
<u>SCI PiTTSBURGH</u> _ court mentions, MEDICAL care <u>STINKS</u> _
<u>SCI HUNTINGDON</u> _ court mentions, MEDICAL CARE <u>STINKS</u> _ _

(13)

SCI Laurel Highlands is ALSO IN THIS GROUP ____
about a year ago there was an inmate at
sci Laurel/Highlands -- his last name was 'HAZEL'
(sic) (not sure of spelling)

$600,000.ᵡᵡ (plus) awarded to HAZEL for INCOMPETENT
MEDICAL TREATMENT.
    I don't have the resources to get all the INFORMATION
on these issues, yet in 6 different instances --

-- $24,360.ᵡᵡ (24 Million) of WASTE! TAXPAYERS
DOLLARS.

    In the attached article, "Managing the Twilight Years" --
QuoTes --- "-- this is a prison of compassion --- praises their excellent
professionalism and caring attitudes --- we treat them as we
would in any hospital --- the prison's medical facilities
are state of the art ---" Yeah, $600,000.ᵡᵡ worth
of INCOMPETENCE at sci Laurel/Highlands ALONE!

Are there any Taxpayers listening out there?
Governor Rendell, are you listening?

                    Richard Snytrak AF5977
                    SCI Laurel/Highlands
                        c/c

                                        ⑭

The attached information AND another request for a Transfer to a Custody Level 2 Minimum Security facility has been sent TO THE FOLLOWING by Certificate of Mailing or by intra prison mail _ _ _ _ _

MR. E Rendell
  Governor of Penna.
  225 Main Capitol
  Harrisburg, Pa. 17120

Mr. H. Clifford O'Hara
  Director
  Office of Professional Responsibility
  Pa. Dept. of Corrections
  Camp/Hill, Pa. 17001-0598

Mr. Jeffrey A. Beard, Ph.D.
  Secretary
  Pa. Dept. of Corrections
  2520 Lisburn Rd. P.O. Box 598
  Camp/Hill, Pa. 17001-0598

Mrs. Catherine McVey
  Director
  Bureau of Health Care Services
  Pa. Dept. of Corrections
  2520 Lisburn Rd. P.O. Box 598
  Camp Hill, Pa. 17001-0598

Mr. John Thomas
  Executive assist. to the Secretary
  Pa. Dept. of Corrections
  2520 Lisburn Rd. PO Box 598
  Camp/Hill, Pa. 17001-0598

Dr. Maue
  Medical Director
  Pa. Dept. of Corrections
  2520 Lisburn Rd. PO Box 598
  Camp/Hill, Pa. 17001-0598

Mr. William D. Sprenkle
  Director
  Office of Staff Development &
    Training
  Pa. Dept of Corrections
  2520 Lisburn Rd. P.O. Box 598
  Camp/Hill, Pa. 17001-0598

  per buch from Doy
    3-24-03
  His letter 3-19-03
  sent to all 19 people

(A)

Mr. Michael Farnan
Office of Chief Legal Counsel
Pa. Dept. of Corrections
2520 Lisburn Rd. P.O. Box 598
Camp Hill, Pa. 17001-0598

Ms. Joan Trees
Corrections Health Care Adm.
Bureau of Health Care
Pa. Dept. of Corrections
2520 Lisburn Rd. P.O. Box 598
Camp Hill, Pa. 17001-0598

Mr. Robert J. Da Sousa
Pa. Inspector General
9th fl. Harristown 2
333 Market St.
Harrisburg, Pa. 17126

Mr. Ernie Preate Jr. Esq.
Attorney at Law
507 Linden St. Suite 600
Scranton, Pa. 18503

Graterfriends Inc.
Ms. Joan Dauber, Managing Editor
541 Swede St.
Norristown, Pa. 19401

Senator Stewart J. Greenleaf
Penna. Judiciary Committee
27 North York Rd.
Willow Grove, Pa. 19090

Senator John Wozniak
Somerset County Pa.
2307 Bedford St.
Johnstown, Pa. 15904

Mr. Fredric A. Rosemeyer
Superintendant
SCI Laurel Highlands
5706 Glades Pike  P.O. Box 631
Somerset, Pa. 15501-0631

Mardi Hunsberger
Deputy Superintendent
SCI Laurel Highlands
Somerset, Pa. 15501-0631

Mr. John Paul
Classification & Program Manager
SCI Laurel Highlands
Somerset, Pa. 15501-0631

(6)

Dr. Jawad Salameh
Medical Director
SCI Laurel/Highlands
Somerset, Pa. 15501 - 0631

Ms. Annette Kowalewski
Corrections/Health Care Adm.
SCI Laurel Highlands
Somerset, Pa. 15501 - 0631

S/ Richard Noftzah AF5977
SCI Laurel Highlands
5706 Glades Pike
P.O. Box 631
Somerset, Pa. 15501 - 0631
c/c

...am taking 3 medications per day which cause DROWSINESS (SLEEP!)

TERAZOSIN 5mg capsule (for HYTRIN) once a day
CLONIDINE 0.3mg Tablet (for CATAPRES) Twice a day  : (6 pills per day
CHLORPHENIRAMINE 4mg Tablet (for CHLORTRIMETON) 3x a day

I am also Diabetic (194 units of insulin per day)

on 10-17-03 guard EVENESCO (sic) came to my cell with another guard that was on duty. EVENESCO (sic) told me that he has "let me go" on being "down for 9PM count" (asleep) the next time I am "down" for 9PM count he will give me a MISCONDUCT! I told him I am taking 3 medications — 6 pills per day THAT MAKE ME SLEEPY! Also I am an INSULIN DEPENDANT DIABETIC (large injections of insulin) DIABETIC FATIGUE ALSO.

EVENESCO told me to get a slip from MEDICAL that says I take Medication and may not be "up for count"! "Twilight YEARS" article = TO MEDIA

"this is a prison of compassion = per Rosemeyer

"excellent professionalism and caring attitudes = Rosemeyer praises STAFF
"we treat them as we would in any hospital, regardless of what they've done" per Jan Kowalewski, registered nurse

a "MISCONDUCT for my DISABILITIES! I take pills, 6x per day, that make me sleepy, and I will get a MISCONDUCT for being asleep?

"Hospital"?
"LeveL 2 Facility"?
"Minimum Security"?

Richard Wojtczak AF5977

SCI Laurel Highlands

EX 7

c/c **SICK CALL REQUEST** c/c

**DATE:** 10-18-03 (Saturday)          **TIME:** 8AM

**INMATE NUMBER:** AF5977

**INMATE NAME:** Richard Wojtczak

**HOUSING UNIT:** DA    1-1

**WORK AREA:** _____          **SHIFT YOU WORK:** _____

☒ **MEDICAL**          _____ **DENTAL**
Please check one.

**PROBLEM:** ① I must see Dr. Chaudary - psychiatrist.

② As per Nurse Evenesca (sic) - I write to get a slip
from Medical that says to Medistat that
I may be asleep for "I'm count".

I am to take Terazosin, CLONIDINE, CHLORPHENIRAMINE -
once - twice - 3x p/day - 6 pills p/day - _____
doses of Insulin p/day (1 unit) as I also take large
first shot. as I have DIABETIC FATIGUE
I will get a "Misconduct" because of my DISABILITIES!

**I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE
SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA
CODE § 93.12 ET.SEQ.**

**INMATE SIGNATURE:** _Richard Wojtczak AF5977_ c/c
Place this request form in the locked medical box on the
housing unit.

1st sick call slip



c/ Second
c/c **SICK CALL REQUEST** c/c        Dated 10-18-03
w/ attachments

**DATE:** 10-22-03 (Wednesday)            **TIME:** 11 AM

**INMATE NUMBER:** AF5977

**INMATE NAME:** Richard Wojtczak

**HOUSING UNIT:** DA 1-1

**WORK AREA:** _____        **SHIFT YOU WORK:** _____

___X___ **MEDICAL**            _____ **DENTAL**
Please check one.

**PROBLEM:** ① I must see Dr. Chowdrey - psychiatrist ___

② As per Capt Hiller & Guard EVenosco — I take 6 PILLS per day that make me sleepy — I may be a sleep for count — if I am I will get a Misconduct (from EVenosco). I am also an insulin dependent DIABETIC (DIABETES MELLITUS) I need a slip (as per Capt Hiller) that explains me being down for count — me being down for count doesn't require that I don't want to be written a Misconduct for my DIABETES etc ___

③ I need a new pair of D CANVASS SHOES (as medically approved) ___

**I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE
SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA
CODE § 93.12 ET.SEQ.**

**INMATE SIGNATURE:** _Richard Wojtczak_
Place this request form in the locked medical box on the
housing unit.

Second sick call slip. First sick call slip with
attachments. Dated 10-18-03. Witness
refused to sign

c/c Second ②    **SICK CALL REQUEST**  c/c    Date 10-18-03
                                                    w/attachment

**DATE:** 10-22-03                        **TIME:** 11 AM

**INMATE NUMBER:** AF5299

**INMATE NAME:** Richard WojTczak

**HOUSING UNIT:** DA 1-1

**WORK AREA:** _____    **SHIFT YOU WORK:** _____

 ✗  MEDICAL            _____ DENTAL
Please check one.

**PROBLEM:** ① I must see Dr. Chaudry - psychiatrist _____

② as per Capt Miller & guard E Venosco — I take 6 pills per
day the Amla medical staff "amy bearing for count if I am
will get a Misconduct from E Venosco you are also an
insulin depandant DIABETIC (DIABETIC type) I need a SLIP
(against all odds) that explains me from the... I don't
Medical down for count does not happen to... 
✗ I be written a Misconduct for my DISABILITY

㉒ I need a pair Age 13 CANVIS SHOES (flat sneakers)
_____

**I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE
SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA
CODE § 93.12 ET.SEQ.**

**INMATE SIGNATURE:** _Richard Wojtczak_
Place this request form in the locked medical box on the
housing unit.

Second sick call slip. First sick call slip with
attachments Date 10-18-03. Witness
                                        signed of slip

i3 05    Was called to Medical 8 AM I spoke
Thursday    with a Dr. Waterson (SIC). I had my papers
and pill cards on file with me. Nurse asked me if I had
PERMISSION to bring them with me (I have had trouble with this nurse
before) (MINIMUM Security - Level 2 facility ???) I was talking to
the Doctor — she was not involved! She just butted in !!!!

To make a long story short = Waterson (sic) said there is NO
problem! This was referred to Dr. Chowdrey PSYCHIATRIST and
Chowdrey said there is Nothing that should make me sleepy
at 9PM count!!    This is NOT a psychiatric ISSUE!

Hey Waterson (sic) That it is marked on the 3 pill cards —
pill cause drowsiness ① and sometimes I am 'asleep' for 9PM —
③ Evenesco guard, said his going to give me a Misconduct !!!!
They are the facts! Saying there is NO problem DOES NOT make
the problem go away! Also I told him this is not a psychiatric problem
to begin with! Waterson (sic) said NO SLIP — He could
put me on A Block — I said how does that solve the problem?
NO Response from Waterson (sic) He said he would put
me on list to see Chowdrey (psychiatrist = I will be called to
pick up size 13 canvas shoes. (A Total waste of time) Capt.
Heiler said a lot of inmates get these slips! ___ me — I don't
get sleep! (Typical DOC — Inmate is always WRONG!!)

①

#3 - 03 (Con't) 10-23-03

The 1st Sick call slip dated 10-18-03 (Saturday) no one knows what happened to that one — by Wednesday 10-22-03 I wasn't called + I was not on sick call list — Told a nurse on ① A unit — nurse called Medical, talked to a Mrs. Smith - Smith said that Medical didn't know anything about the 10-18-03 sick call slip — for me to Fill out Another Slip = see 10-22-03 slip! The point of all this is = Dr. Waterson (Sic) said they would go this to Dr. Chaudrey and Chaudrey said pill would Not make me sleepy [although ruled that way] that taking 6 pills per day would not make me "drowsey" — Chaudrey said NO Slip! for Count !

I then asked Waterson (Sic) = I filled out + turned in 10-22-03 on Wednesday 10-22-03 and I am here on 10-23-03 at 8:15 AM the next day = How did Dr. Chaudrey do All of this "OVERNIGHT"?

**No** Response from Dr. Waterson (Sic).

ᵒⁿ = 10-22-03 I talked with Capt. Hiler, he was the one who told me That Dr. would give me Sleep for count ! 10-24-03 Capt. Hiler didn't come on unit = 10-25-03 **No** Capt. Hiler - **No** Capt Ronelin

ᵐ = 10-24-03 I talked with my Counselor Ms. Sures about all this, she didn't know what to do about all this = **SHE** called J. Wiser unit Manager —— Wiser told Sures

⓪ First Solution from Wiser ▬ that I take the Misconduct and on ♥"informal resolution" Wiser will find me Not guilty and throw out Misconduct

②

or to ~~~ with this solution — if the guard does not write the Misconduct as an "informal resolution" (not a close!) it will not go to Wiser. So Wiser won't be involved at all! and I get a Misconduct in my file!

(A) Second solution from Wiser = I write to Rosemeyer and ask him what I should do! (Wiser passes the Buck — typical DOC) Rosemeyer will tell me to file an "inmate Grievance" (a waste of time)

All they have to do is give me a Slip which says that I am taking medication which can make me sleepy — AND MIGHT put me to sleep for count — **NO** misconducts to be written. "Not that I will be asleep — but MIGHT be"!

How hard is this **???**

10-24-03; 10-25-03 = **NO** Capt. Kileo; **NO** Capt. Positions on JA unit.     I Need a Single Cell on unit    **A!**

I will get a MISCONDUCT
because of my DISABILITIES??
and I am at SCI Laurel/Highlands
because of my DISABILITIES!

(Explain this!)

③

10-26-03 (Sunday) I saw Dr. CHOWDHURY, this is

not right doctor —— Dr. CHAUDHARY is the psychiatrist

I need to see. Chowdhury said he would put me down

to see CHAUDHARY on 10-31-03. (the other chaudhary)

check my files —— when I saw Dr. Waterson 10-23-03 — he looking my

file and SAID that I SAW CHAUDHARY (or CHOWDHURY) on

( or 10-15-03 or 10-8-03) I told him I did not see ANYONE,

somewhere in there

celetis written in my file? He would NOT let me see my FILE !

10-28-03 Capt. Taylor on block —
I didn't feel like going over this entire
story with Him!

2 psychiatrists
① CHOWDHURY (saw on 10-26-03
② CHAUDHRRY is one they are saying is writing in my files

I am still waiting to talk to Capt. Hiler !

Even esco (sic) gave a Misconduct to inmate T. Purcell for Sleeping
during 9 PM count ! Purcell takes about 7 different pills that make
him sleepy ! Purcell told pill J. Wiser – med Manager,
Wiser called Dr. Waterson, Waterson told Wiser to tell Purcell
To take ALL 7 pills AFTER 9 PM count !

④

Wiser WROTE this on Purcell's Misconduct. Wiser Told Purcell TO Tell ME!

Taking All these chemicals at one Time — can't be good for you! these pills are not prescribed by drug company to be taken All at once!!!

They (DOC) are saying to do this — do that — everything & everything EXCEPT GIVE ME a SLIP!! TYPICAL DOC!

this solves the problem

10-31-03 (Friday)
5 PM I talked to Dr. CHAUDHARY psychiatrist (the right one)
singlecell
He said, "I'm sorry, I can't help you" (see Capt Heiler
11-6-03
10-22-03)

I am sent to Laurel/Highlands because of my Disabilities - Special Needs — then they give me Misconducts because of my Disabilities AND TAKE AWAY Medication - treatments for my Special Needs — Why ??? Please Explain

A Level 2 - Minimum security it is NOT!

11-6-03 Saw Capt Heiler this morning — told him about NO Slip — Taking pills all at once after 9 PM count instruction — He said there is NOTHING he CAN DO! (see psychiatrist) see 10-22-03

⑤

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICE USE ONLY



68280

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nightengale | Sci LAU | 11-21-03 |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| Richard Wojtezak AF5977 | _(signature)_ | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |
| medically unable to work | DA    1-1 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

I am Taking Terazosin; Clonidine; chlorpheniramine 6 pills per day for some of my Disabilities. This medication makes me sleep. On 10-16-03 9 p.m. count I was asleep when I was not guard PLS did count. I was asleep for count — This has not happen after — but it has happen also four Diabetic fatigue. Grievanced had told me if I found asleep for count again I would get a Misconduct.

I talked with Cpt. Hiler to hopefully get relief from the Doctor. Other inmates have slips excusing them if they asleep for count. I asked Dr. Waterson for slip. He said NO SLIP! Me being down for count will happen in the future. Both what Sci Laurel Highlands does? Punish the inmates with a Misconduct. Sci Laurel Highlands provide Ada (Misconduct) for my Disabilities! What do I do.

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Cpt. Hiler; Dr. Watson; Dr. Blumberg; M. Jordan; P. Sine Co, Grievance(Da).

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_(signature)_ _____        11-24-03
Signature of Facility Grievance Coordinator                              Date

Dec 12/7/03

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised
December 2000

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICE USE ONLY

**68280**

GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nightengale | Sci LAU | 11-21-03 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Richard Wojteak AF5977 | |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| medically unable to work | NA    1-1 |

**INSTRUCTIONS:**
1   Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner.
3.  List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

I am taking Trazodone, Clonidine, Chlorpromazine & pill for sleep for my Diabetes — These medication make me sleep, on 10-17-03 When I went for my 4 o'clock count I was in a PLS & I never went to sleep for count — this has just happen again — I will take this up when I am on the Diabetic Fatigue. I missed one (1) of my 4 times everyday count & I am being wrote up with a Misconduct.

I talked with Cpt. McLee — to get a fatigue slip from the Doctor — Other inmates have slips excusing them if they are asleep for count. I asked Dr. Watson for slip He said No Slip! Nothing being done for count will happen in the future — to this idiot Sci Laurel Highland, doc? Purish the inmates with a Misconduct. Sci Laurel Highland, will be punishing me (Misconduct) for my Diabetes! What do I do?

**B.** List actions taken and staff you have contacted, before submitting this grievance.

Cpt. McLee; Dr. Watson; Dr. Anthony; Ms. JWiser; P. Sieter
CO Eramer (s).

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Ef 80

Signature of Facility Grievance Coordinator                                    Date

**WHITE** - Facility Grievance Coordinator Copy   **CANARY** - File Copy   **PINK** - Action Return Copy   **GOLDENROD** - Inmate Copy

Revised
December 2000

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA 17001-0598



FOR OFFICIAL USE ONLY
68280
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nightengale | SCi Lau | 11-21-03 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| Richard Wojtczak AF5977 | _(signature)_ |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| medically unable to work | NA    1-1 |

**INSTRUCTIONS:**
1   Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2   State your grievance in Block A in a brief and understandable manner.
3   List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

_I am taking Trazodone; Clonidine; Chlorpromazine + Haldol for lack of sleep and Disability — These medications make me sleep, on 10/17/03 9 pm count. I passed out and they wrote me up (PLUS I passed out, I was asleep for count — this does not happen yet — it will happen. I am on low Diabetic diet. General (A) Absey of being asleep for count again I was given a Misconduct._

_I talked with Capt. M. Lee — told him I spoke from the Doctor — Other inmates have slips excusing them / plus me asleep for count. I asked Dr. Watson for Slip, He said "NO SLIP!" Me being drawn for count will happen in the future — so why what SCi Laurel Highlands does? — Punish the inmate well a Misconduct, SCi Laurel Highlands punishs me (Misconduct) for my Disease! What do I do?_

**B.** List actions taken and staff you have contacted, before submitting this grievance.

_Capt. M. Lee; Dr. Watson; Dr. Chang; Mr. Gordon; R. Sims, + General (A)._

**EXTRA COPY**

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____
Signature of Facility Grievance Coordinator                    Date

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised
December 2000

DC-ADM 804, Inmate Grievance System                                         Attachment B

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE
INITIAL REVIEW RESPONSE

GRIEVANCE NO.   68280

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| Woitczak, Richard | LAU | DA-1/1 | 11/21/2003 |

The following is a summary of my findings regarding your grievance:

I have received your grievance dated 11/21/03 # 68280. I have met with you reviewed your pill packs, and discussed this with the medical dept. I have also discussed this with Officer Plis, he is now aware that you are taking meds that cause drowsiness. He told me that had you shown him the pill packs it never would have been an issue. You can not expect the Staff to just excuse you from following a rule with out just cause. Based on this I am denying your grievance.

*See Ex 79 ; Ex 80 and 1-2-3-4-5 attached herein ─ ─ ─*
*Ex 70*

Cc:    Supt. Rosemeyer
       Deputy Hunsberger
       Deputy Gates
       DC-15
       Betsy Nightingale
       Officer Plis

this is the typical D.O.C. Rhetoric non answer ─ No solution to the situation + a careful review of the Facts ─ Truth clearly show ① CO, PLIS IS LYING ② I WILL get A Misconduct Because of MY DISABILITIES ③ SCI LAU is NOT a prison of Compassion ─ ─ ─ is NOT a pioneer ─ in caring for the elderly and severely DISABLED prisoners ─ ─ ─ staff DOES NOT lose professionalism and caring attitudes ─ ─ ─ inmate are NOT TREATED as they would be in ANY HospiTAL

See Ex 7 & 70 attached.

on 10-17-03 ─ CO, Evenesco came to my cell and told me if I was asleep for 9PM Count again he would issue me a MisconducT. CO, I told CO Evenesco about the 3 MEDICATIONS that I take that make me sleepy, CO, Evenesco told me to get a SLIP from MEDICAL ─ (No Misconduct if I am asleep for Count) Capt. Hiler told me the SAME thing ─ get a SLIP from MEDICAL ─ that a lot of inmates have this SLIP

CO, PLIS was with CO, Evenesco on 10-17-03 and he heard ALL about the 3 Medications that make me sleep ─ Co, Plis Knew about Meds on 10-17-03 I received NO SLIP from Medical Dept. ─ DR WALKerson !!

| Print Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| John D. Wiser | John D. Wiser | 12/5/2003 |

## Certificate of Service

I, Richard Noftzyck hereby certify that I have mailed a true and correct copy of this Amended Complaint To:

Pa. Dept. of Corrections
P.O. Box 598
2520 Lisburn Rd,
Camp Hill, Pa. 17001-0598
Jeffery A. Beard Ph. D.

MR. Kenneth Kyler
Superintendent
Sci Huntingdon
1100 Pike St.
Huntingdon, Pa. 16652

On this 17th day of January, 2004

Respectfully,

s/ Richard Noftzyck

Richard Noftzyck DF-5977

56

1: CV 01-1163



From: Rev. Dr. Donald E. Moyer
2085 Swamp Pike
Gilbertsville, Pa. 19525

RECEIVED
SCRANTON

JAN 2 1 2004

MARY E. O'ANDREA, CLERK
Per_____
DEPUTY CLERK