**Wojtczak v. Pennsylvania Department of Corrections**
No. 1:01-CV-1163

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD WOJTCZAK,** | : | |
| **Plaintiff,** | : | **No.  1:01-CV-1163** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **PENNSYLVANIA, DEP'T** | : | **(Magistrate Judge Mannion)** |
| **OF CORRECTIONS, et al.** | : | |
| **Defendants,** | : | **(Electronically Filed)** |
| | : | |

### <u>UNSWORN DECLARATION OF TSHANNA KYLER</u>

I, TSHANNA C. KYLER, declare under penalty of perjury in accordance with 28 U.S.C. § 1746, that the following facts are true and correct based upon my personal knowledge or from records routinely maintained during the operation of the Pennsylvania Department of Corrections:

1.    I am the Grievance Review Officer in the Secretary's Office of Grievances and Appeals of the Department of Corrections (DOC) and have been so employed since September 2001.  I have been employed with the DOC in other capacities since January 1991.

2.    As the Grievance Review Officer, I am familiar with DOC procedures and policies.

3.    On October 20, 1994, DOC policy DC-ADM 804, regarding the

**Wojtczak v. D.O.C., et al.**                        Declaration of Tshanna Kyler
No. 01-CV-1163

Consolidated Inmate Grievance Review System, went into effect. A copy of

this policy has been attached to Defendants' Statement of Material and

Undisputed Facts as Exhibit B.

     4.     Under the Consolidated Inmate Grievance Review System,

inmates under the jurisdiction of the DOC had access to a system to resolve

problems or other issues of concern arising during the course of

confinement. Under the policy, as amended in November of 1997, an

inmate could (1) file a grievance for initial review; (2) file an appeal to the

facility manager from the initial grievance review, and (3) file a final appeal

of the grievance to the Chief Hearing Examiner. (See Ex. B.)

     5.     Beginning November 1, 2000, through the present, all final

appeals of grievances are handled by the Secretary's Office of Inmate

Grievances and Appeals rather than the Chief Hearing Examiner. (See Ex.

B.)

     6.     Beginning November 1, 2000, through the present, all final

appeals of grievances, including those from inmates who believe they have

disabilities that the DOC has not reasonable accommodated, are handled by

the Secretary's Office of Inmate Grievances and Appeals.

     7.     The Chief Hearing Examiner's Office had maintained a

<u>Wojtczak v. D.O.C., et al.</u>                    Declaration of Tshanna Kyler
No. 01-CV-1163

computerized database entitled the "Inmate Correspondence Tracking

System," in which all of the records and correspondences relating to

grievance and misconduct appeals were maintained.

      8.     When the Secretary's Office of Inmate Grievances and Appeals

took over review of final appeals for grievances, the Inmate Correspondence

Tracking System database was split and all of the records and

correspondences relating to grievance appeals were transferred from the

Chief Hearing Examiner's Office to the Secretary's Office of Inmate

Grievances and Appeals.

      9.     As of this date, the Secretary's Office of Inmate Grievances and

Appeals continues to maintain the Inmate Correspondence Tracking System,

in which all of the records and correspondences relating to grievance appeals

are stored.

      10.    On January 1, 2001, a revised policy, DC-ADM 804 – Inmate

Grievance System, was issued.  A copy of this policy has been attached to

Defendants' Statement of Material and Undisputed Facts as Exhibit C.

      11.    The general operation of the grievance system has remained

generally unchanged by the new policy.  Similar to the procedure described

in ¶ 4, the new policy provides that an inmate may file a grievance for initial

<u>**Wojtczak v. D.O.C., et al.**</u>                         **Declaration of Tshanna Kyler**
**No. 01-CV-1163**

review, appeal the decision to the facility manager, and file a final appeal

with the Secretary's Office of Inmate Grievances and Appeals. (<u>See</u> Ex. C.)

12.    In August of 2001, the Secretary's Office of Inmate Grievances

and Appeals began to utilize a second computerized database in addition to

the Inmate Correspondence Tracking System.

13.    The second database is entitled the "Inmate Grievance Tracking

System," in which duplicate copies of the records relating to grievance

appeals are maintained.

14.    As a Grievance Review Officer, I am responsible for

maintaining and protecting the integrity of the records contained in both the

Inmate Correspondence Tracking System and the Inmate Grievance

Tracking System.

15.    As a Grievance Review Officer, I am frequently requested to

verify whether an inmate had exhausted the Inmate Grievance System

appeal process.

16.    Counsel for the defendants in <u>Wojtczak v. DOC.</u>, asked me to

check the grievance appeal records to see if plaintiff Richard Wojtczak (AF-

5977) (Wojtczak) had appealed any grievances to final review.

17.    I have searched the records in both the Inmate Correspondence

4

<u>Wojtczak v. D.O.C., et al.</u>                    Declaration of Tshanna Kyler
No. 01-CV-1163

Tracking System and the Inmate Grievance Tracking System and I have
determined that Wojtczak exhausted five (5) appeals to final review.

    18.    The five grievances that Wojtczak exhausted to final review are
as follows:

    a.  Grievance 0173-96, dated September 1, 1996, in which
Wojtczak complains that he was denied a second mattress.  A
copy of this grievance has been attached to Defendants'
Statement of Material and Undisputed Facts as Exhibit D.

    b.  Grievance 0203-97, dated November 25, 1997, in which
Wojtczak complains on being required to stand in his cell for
count.  A copy of this grievance has been attached to
Defendants' Statement of Material and Undisputed Facts as
Exhibit E.

    c.  Grievance 498, dated July 20, 2001, in which Wojtczak
complains of being denied a transfer to another facility and of
being required to complete a sex offender treatment program.
A copy of this grievance has been attached to Defendants'
Statement of Material and Undisputed Facts as Exhibit F.

    d.  Grievance 57020, dated July 15, 2003, in which Wojtczak

<u>Wojtczak v. D.O.C., et al.</u>                    **Declaration of Tshanna Kyler**
**No. 01-CV-1163**

complains that the showers at SCI-Laurel Highlands are too hot

and lack individual controls to adjust the water temperature. A

copy of this grievance has been attached to Defendants'

Statement of Material and Undisputed Facts as Exhibit G.

e.  Grievance 58172, dated July 30, 2003, in which Wojtczak

complains of how his sentence has been calculated. A copy of

this grievance has been attached to Defendants' Statement of

Material and Undisputed Facts as Exhibit H.

19.     Aside from the five grievances described above, there is no

record of Mr. Wojtczak exhausting any other grievances to final review.


                                        _____
                                        Tshanna C. Kyler
                                        **Grievance Review Officer**
                                        **Secretary's Office of**
                                            **Grievances and Appeals**

**DATE:**   1/8/04

<u>**Wojtczak v. Pennsylvania Department of Corrections**</u>
**No. 1:01-CV-1163**

# EXHIBIT B



| | POLICY STATEMENT<br>Commonwealth of Pennsylvania ● Department of Corrections |
|---|---|

| Policy Subject:<br>**Consolidated Inmate Grievance Review System** | Policy Number:<br>**DC-ADM 804** |
|---|---|
| **Date of Issue:**<br>July 20, 1994 | **Authority:**<br>Joseph D. Lehman<br>Commissioner | **Effective Date:**<br>Oct. 20, 1994 |

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III. APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV. DEFINITIONS

A. Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B. Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit. If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee **(CORC)** -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee **(COMRC)** -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff. The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E). All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review. This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee **(CORC)**, for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

**V. POLICY**

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. Informal Resolution of Problems  -  All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed, however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal.  The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance.  The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review.  Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

   NOTE:   At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

   The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

   All other appeals will be submitted as follows.

2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804



D.  Final Review

1.  Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review.  Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2.  Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3.  Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee **(CORC)** for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA  17001-0598**

4.  Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5.  The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6.  The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7.  For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal.  The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding,  and must include a brief statement of the reasons for the decision.  The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8.  The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E.  Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1.  DC ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.
2.  DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I
3.  DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

DC-ADM 804

4.  DC-ADM 814 - Incoming Publications

See 814-IIIB, Appeal from Initial Review, see 814-IIID.

Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

F.  Admissions and Review

1.  All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

2.  No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

G.  Completion of Review After Transfer

Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII.  SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX.  SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References:   DC-ADM 801, DC-ADM 802

ACA Cross-References:  3-4271

cc:    Executive Deputy Commissioner Reid
       Deputy Commissioner Clymer
       Deputy Commissioner Fulcomer
       Acting Deputy Commissioner Beard
       All Superintendents
       CCC Directors (4)
       File

Joseph D. Lehman,
Commissioner



| To: | Policy Subject: |
|---|---|
| **Superintendents**<br>**Boot Camp Commander**<br>**Regional Directors**<br>**Executive Staff** | **DC-ADM 804**<br>**CONSOLIDATED INMATE GRIEVANCE**<br>**REVIEW SYSTEM** |

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC). .

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

IV.E.:      Definition of COMRC

IV.G.:      "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

V.D.:       "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."



| | | |
|---|---|---|
| | **Bulletin** | |
| | **Commonwealth of Pennsylvania • Department of Corrections** | |

| **To:** | Executive Staff<br>Superintendents<br>Regional Directors | **Policy Subject:** | Consolidated Inmate<br>Grievance Review System |
|---|---|---|---|
| | | **Policy Number:** DC-ADM 804-2 | |
| | | **Policy Issue Date:** July 20, 1994 | |

| **Date of Issue:**<br>October 1, 1997 | **Authority:** | **Effective Date:**<br>November 1, 1997 |
|---|---|---|

The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)    The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously performed by CORC.

(2)    In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)    The Chief Hearing Examiner will review health care related grievances with the Bureau of Health Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)    Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)    In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)    The Chief Hearing Examiner will be responsible for assuring that:

(a)    appeals to final review are responded to in a timely fashion;
(b)    records pertaining to such appeals are maintained properly; and
(c)    counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the ICU vs Shapp Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | Policy Subject: | Consolidated Inmate<br>Grievance Review System |
|---|---|---|---|

**Policy Number:** DC-ADM 804-3

**Policy Issue Date:** July 20, 1994

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| October 21, 1997 | | November 1, 1997 |

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, PA 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response to final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, initial grievance response, and the Superintendent's response. Appeals without proper records will be reviewed, but the review will be delayed until the appropriate paperwork can be obtained.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>CCC Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |
| | **Policy Number:** DC-ADM 804-4 |
| | **Policy Issue Date:** July 20, 1994 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| April 29, 1998 | Martin F. Horn | May 1, 1998 |

The purpose of this bulletin is to amend the section VI. Procedures, A.4. to read,

"All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text must be legible and presented in a courteous manner. The Grievant should identify any persons who may have information which could be helpful in resolving the grievance. The Grievant may specifically raise any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court. The inmate may request to be personally interviewed at initial review. Any inmate who submits a grievance containing false information may be subject to disciplinary action. Inmates who have not already completed final review may request compensation or legal relief on appeal to final review."

And to amend Section VI. Procedures, B. Initial Review, 2. to read:

"Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause. Such extensions will normally be granted if the events complained of would state a claim of violation of federal right.

09/18/02  14:29 FAX 97317114          STANDARDS & PRACTICES                      ☑002



| | BULLETIN |
|---|---|
| | Commonwealth of Pennsylvania • Department of Corrections |

| TO: | Policy Subject: |
|---|---|
| **Executive Staff** | **Consolidated Inmate** |
| **Superintendents** | **Grievance Review System** |
| **Boot Camp Commander** | |
| **Regional Directors** | Policy Number:    DC-ADM 804-05 |
| | Policy Issue Date:    July 20, 1994 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **October 30, 2000** | *[signature]* <br> **Martin F. Horn** | **November 1, 2000** |

Effective November 1, 2000, all final appeals of inmate grievances shall be handled by the Secretary's Office of Inmate Grievances and Appeals. Therefore, any final appeal to be submitted on or after November 1, 2000, should be sent to the following address:

Chief, Secretary's Office of Inmate Grievances and Appeals
Department of Corrections
2520 Lisburn Road, P.O. Box 598
Camp Hill, PA 17001-0598

# EXHIBIT C



| | |
|---|---|
| **POLICY STATEMENT** Commonwealth of Pennsylvania • Department of Corrections | |

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Grievance System** | **DC-ADM 804** |

| Date of Issue | Authority: | Effective Date |
|---|---|---|
| **December 1, 2000** | *[signature]* **Martin F. Horn** | **January 1, 2001** |

## I.  AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206 and 506 of the Administrative Code of 1929, 71 P.S. §§61, 66 and 186, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.  PURPOSE

It is the purpose of this policy to establish procedures for the review of inmate grievances. These procedures ensure that inmates have an avenue through which resolution of specific problems can be sought.

## III.  APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV.  DEFINITIONS

### A. Automated Inmate Grievance Tracking System

A computerized system maintained by the Secretary's Office of Inmate Grievances and Appeals designed to store and retrieve data and trends pertaining to the Inmate Grievance System.

### B. Appeal to Facility Manager

An appeal of a decision rendered at Initial Review.

### C. Appeal to Secretary's Office of Inmate Grievances and Appeals

The final level of appeal from a grievance.

### D. Chief, Secretary's Office of Inmate Grievances and Appeals

A management level staff, supervised by the Secretary of Corrections, to oversee the inmate grievance and appeal process, train field staff, and respond to appeals.

### E. Department

The Pennsylvania Department of Corrections.

### F. Facility Grievance Coordinator

The Corrections Superintendent's Assistant in a facility, or the designee to the Regional Director in Community Corrections, who is responsible for the overall administration of the Inmate Grievance System in that facility/region. This includes determining whether the grievance was filed in compliance with the policy, as well as the data collection, tracking, and statistical reporting.

### G. Facility Manager

The Superintendent of a State Correctional Facility, State Regional Correctional Facility, Commander of a Motivational Boot Camp, Regional Director of a Community Correction Center and/or the Director of the Training Academy.

### H. Grievance

A formal written complaint by an inmate related to a problem encountered during the course of his/her confinement.

### I. Grievance Rejection Form (DC-804, Part 3)

The form used to return a grievance to an inmate when the grievance cannot be processed. **(See Attachment C)**

### J. Grievance Officer

An appropriate Department Head or Management Level staff person designated by the Facility Grievance Coordinator, to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g. a Unit Manager would be assigned to provide Initial Review of a grievance regarding a housing unit.

**K. Grievance Restriction**

Inmates who deliberately misuse the grievance system by filing frivolous or fabricated grievances may be restricted to filing no more than one grievance each five (5) working days.

**L.   itial Review**

A review of an inmate's initial grievance conducted by a Grievance Officer.  The Facility Manager may direct the Facility Grievance Coordinator to review certain grievances.

**M. Retaliation**

An act of vengeance or threat of action taken against an inmate or staff in response to an inmate complaint of a problem.  Examples include unnecessary discipline, intimidation, unnecessary changes in work or program assignments, unjustified transfers or placements, unjustified denials of privileges and services.

**N. Secretary's Office of Inmate Grievances and Appeals**

The office responsible for review and disposition of all appeals of inmate grievances to Central Office.

**O. Working Days**

For the purposes of this policy, working days are Monday through Friday, excluding state holidays.

## V.  POLICY

It is the policy of the Department that every individual committed to its custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  For every such issue, there shall be a forum for review and one (1) avenue of appeal.  The formal procedure shall be known as the Inmate Grievance System.[1]

## VI.  PROCEDURES

**A. Initial Grievance**

1.  Inmate Responsibilities

    a.  The Department encourages inmates to express their concerns to staff through respectful, constructive, verbal communication in order that problems are resolved as soon as possible.

---

[1] 3-4271, 3-ACRS-3D-07, 1-ABC-3D-08, 2-CO-3C-01

b.  The Inmate Grievance System is intended to deal with a wide range of issues, procedures, or events that may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with an incident of an urgent or emergency nature, the inmate should contact the nearest staff member for immediate assistance.

c.  A grievance must be submitted to the Facility Grievance Coordinator using the **DC-804, Part 1, Grievance Form (See Attachment A).** All grievances must be signed and dated by the inmate. Forms shall be readily available on all housing units. All copies, with the exception of the inmate's copy **(GOLDEN ROD)**, shall be forwarded to the Facility Grievance Coordinator. The **PINK** copy will be returned to the inmate, acknowledging acceptance of the grievance.

d.  The inmate shall include a statement of the facts relevant to the claim. **The text of the grievance shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two (2) pages**. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law. The inmate may include a request for compensation or other legal relief normally available from a court.

e.  Grievances must be submitted by the inmate for Initial Review to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based. The Grievance Officer may grant the inmate additional time to resolve the grievance informally. In those cases, the inmate shall be granted an additional five (5) working days to re-file the initial grievance.

f.  A grievance must be filed with the Facility Grievance Coordinator at the facility where the grievance occurred.

g.  All grievances shall be presented individually. Any grievance submitted by a group of inmates **will not** be processed.

h.  Grievances and appeals based on different events shall be presented separately, unless it is necessary to combine the issues to support the claim.

i.  All grievances and appeals must be presented in good faith and for good cause. No inmate shall be punished, retaliated against, or otherwise harmed for good faith use of this grievance system. Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager/designee.

j.  Only an inmate who has been personally affected by a Department or facility action or policy shall be permitted to seek review of a grievance or appeal. The inmate must sign the grievance or appeal.

k.  At any point in the grievance process, the inmate may withdraw the grievance. To withdraw a grievance, an inmate may write on the original grievance "I wish to withdraw this grievance," sign and date the original grievance form or submit a request form to the Facility Grievance Coordinator, identifying the grievance, by number, to be withdrawn.

l.  If a grievance is rejected, when resubmitted, the grievance must be resubmitted under the same grievance number.

**B. Initial Review**

1.  Staff Responsibilities

    a.  The Facility Grievance Coordinator shall assign a grievance tracking number to all grievances (even rejected grievances) upon receipt and enter all grievances into the Automated Inmate Grievance Tracking System. The Facility Grievance Coordinator is also responsible for entering the facility's disposition of the grievance at each step of the grievance process.

    b.  The Facility Grievance Coordinator may combine multiple grievances that relate to the same subject.

    c.  The Facility Grievance Coordinator, based on the Grievant's situation, may grant an extension of time for filing the grievance.

    d.  If the grievance is determined to be improperly submitted, it shall be returned to the Grievant unprocessed with a **DC-804 Part 3, Grievance Rejection Form** enumerating the reason(s) the grievance was not accepted. **(See Attachment C)** The grievance, if resubmitted, must be resubmitted under the same grievance number within five (5) working days.

    e.  If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with **DC-ADM 804**, it will be referred to an appropriate Grievance Officer for review.

    f.  The Grievance Officer may submit the grievance for formal resolution or meet with the inmate to suggest ways in which the grievance can be resolved. The Grievance Officer may grant the inmate a maximum of five working days to resolve the grievance informally.

    g.  If the Grievance Officer submits the grievance for formal resolution, within ten (10) working days of receipt of the grievance, the Grievance Officer shall provide a written response to the Grievant, using a **DC-804 Part 2 (See Attachment B)** and include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the incident raised in the grievance. A copy of the response shall be sent to the Facility Grievance Coordinator for tracking purposes.

h.  The Facility Manager/designee may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is ongoing. If an extension is necessary, the Grievant shall be so advised in writing.

i.  Grievances dealing with allegations of abuse shall be handled in accordance with Department policy **1.2.4, "Inmate Abuse Allegation Monitoring Process."**

j.  Each Facility Manager/designee shall make provisions for illiterate or non-English speaking inmates to submit grievances, be interviewed, and have translated, any portion of the grievance policy.  Extension to the timelines shall be granted in order to secure these services.  Facility Managers are authorized to use existing contracts and/or dial-up translation services to provide this service.

## C. Appeal to Facility Manager

1.  Inmate Responsibilities

    a.  The Initial Review decision from the Grievance Officer must be received by the inmate before any appeal to the Facility Manager can be sought.

    b.  Grievant may appeal an Initial Review decision to the Facility Manager in writing, within five (5) working days from the date of receipt by the inmate of the Initial Review decision.  Only issues that were raised for initial review may be appealed.  Every appeal to the Facility Manager shall be clearly labeled as an appeal at the top of the document with the grievance number included.

    c.  The text of the appeal shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two (2) pages.

    d.  The appeal must clearly identify the Initial Review Decision and the basis for the appeal.  Only one appeal of any Initial Review Decision will be permitted. Failure to comply may result in the appeal being rejected.

2.  Staff Responsibilities

    a.  The Facility Manager may make exceptions to the five (5) working day appeal requirement.  An allowance shall be made for delays with mail delivery.

    b.  The Facility Manager shall notify the inmate of his/her decision within fifteen (15) working days of receiving the appeal.  This decision may consist of upholding the decision, modification, reversal, remand, or reassignment for further fact-finding.  A brief statement of the reasons for the decision must be included.

    c.  The Grievance Coordinator shall enter the Facility Manager's decision into the Automated Inmate Grievance Tracking System.

    d.  When the Facility Manger remands a grievance, the Grievance Officer shall respond within five (5) working days.

## D. Appeal to Secretary's Office of Inmate Grievances and Appeals

1. Inmate Responsibilities

   a. The decision from appeal to the Facility Manager must be received by the inmate before an appeal to the Secretary's Office of Inmate Grievances and Appeals can be sought.

   b. Any Grievant, who is dissatisfied with the disposition of an appeal from the Facility Manager, may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals, within five (5) working days of receiving the decision. An allowance shall be made for delays with mail delivery. Only issues raised at the Initial Review and appeal to the Facility Manager may be appealed at this level.

   c. An appeal at this level will not be permitted until the Grievant has complied with all procedures established for Initial Review and Appeal to Facility Manager.

   d. The text of the appeal shall be legible, presented in a courteous manner, and the statement of facts shall not exceed two (2) pages.

   e. All appeals to the Secretary's Office of Inmate Grievances and Appeals must be addressed to the following:

   > **Chief, Secretary's Office of Inmate Grievances and Appeals**
   > **Department of Corrections**
   > **2520 Lisburn Road, P. O. Box 598**
   > **Camp Hill, PA  17001-0598**

   Failure to properly address the appeal will delay the process.

   f. Inmates appealing to final review are responsible for providing the Secretary's Office of Inmate Grievances and Appeals with all available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, Initial Review, and the Appeal to Facility Manager along with the Facility Manager's decision.

   g. Indigent inmates as defined in Department policy **DC-ADM 803, "Inmate Mail and Incoming Publications,"** shall be afforded copy service at no charge in order to submit the required documentation for appeal purposes. Non-indigent inmates shall incur copying charges in accordance with Department policy **3.4.5, "Photocopying Charges for Inmates."**

### 2. Staff Responsibilities

a. The Secretary's Office of Inmate Grievances and Appeals will ensure that:

 (1) appeals to final review are responded to within thirty (30) working days; and

 (2) appeals and responses are properly maintainc ┄ the Automated Inmate Grievance Tracking System.

b. Upon request, the Facility Manager will forward to the Secretary's Office of Inmate Grievances and Appeals a copy of any formal investigation related to a grievance and conducted by the security office.

c. The Secretary's Office of Inmate Grievances and Appeals will review the initial grievance and response, the Appeal to the Facility Manager and response, and any investigative reports and the appeal to final review.

d. The Secretary's Office of Inmate Grievances and Appeals may review appeals with the relevant bureau i.e., health care issues with the Bureau of Health Care Services, education issues with the Bureau of Corrections Education, etc.

e. Upon completion of review, the Secretary's Office of Inmate Grievances and Appeals will respond directly to the inmate in all cases.

f. The Secretary's Office of Inmate Grievances and Appeals will issue a decision within thirty (30) working days after receipt of an appeal. The decision may consist of upholding the decision, modification, reversal, remand, or reassignment for further fact-finding, and must include a brief statement of the reasons for the decision. The Chief, Secretary's Office of Inmate Grievances and Appeals, shall notify the Grievant, Facility Manager, and the appropriate Regional Deputy of the decision and rationale.

g. When the Chief, Secretary's Office of Inmate Grievances and Appeals or designee remands a grievance, the Facility Manager shall respond within ten (10) working days.

h. The Chief, Secretary's Office of Inmate Grievances and Appeals, in consultation with the Secretary of Corrections, shall take any action deemed necessary to ensure the integrity of this policy. This includes:

 (1) prohibiting the transfer of an inmate until the grievance procedure has been completed, including the appeal process; and

 (2) lifting a previously imposed grievance restriction.

i. The Chief, Secretary's Office of Inmate Grievances and Appeals/designee shall notify the Facility Manager in those cases where the suspension of an inmate's transfer is being considered pending the disposition of the appeal process.

j.  Any inmate, who is transferred after filing a grievance or an appeal, but prior to completing the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager of the facility in which confined when the grievance was filed. Adjustments shall be made to the various time limitations in order to facilitate review.

## E. Grievance Restriction

1.  The Facility Grievance Coordinator will provide the inmate with written notice of the restriction and the reason(s) for it. The Facility Manager shall approve the restriction and a copy of the notice will be forwarded to the Secretary's Office of Inmate Grievances and Appeals.

2.  Inmates who deliberately misuse the grievance system by filing frivolous or fabricated grievances may be restricted to filing no more than one grievance each five (5) working days.

3.  Upon request of the inmate, the Facility Manager may review the restriction every ninety (90) working days and shall provide notice to the inmate and the Chief, Secretary's Office of Inmate Grievances and Appeals, of the determination to continue or discontinue the restriction and the rationale for the determination.

4.  If the inmate continues to abuse the grievance system, the Facility Manager may request a longer period of restriction between grievances through their Regional Deputy Secretary. A copy of the request shall be forwarded to the Secretary's Office of Inmates Grievances and Appeals for tracking purposes.

5.  Any grievance restriction may be appealed to the Secretary's Office of Inmate Grievances and Appeals. Appeals must comply with **Section D, 1** above.

## F. Exceptions

1.  Initial Review of issues relating to the following Department policies shall be in accordance with procedures outlined therein, and will not be reviewed by a Facility Grievance Coordinator.

    a.  **DC-ADM 801, Inmate Discipline**;

    b.  **DC-ADM 802, Administrative Custody Procedures**; and

    c.  any other Department policy that specifically states that the **DC-ADM 804** is not applicable.

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary, or designee may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

#### 1. Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

#### 2. Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B. Distribution of Policy

#### 1. General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X. SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

#### 1. Department Policy

a. DC-ADM 804 issued July 20, 1994 by former Secretary Joseph D. Lehman.

b. DC-ADM 804-1 issued April 2, 1996 by Secretary Martin F. Horn.

c. DC-ADM 804-2 issued October 21, 1997 by Secretary Martin F. Horn.

d. DC-ADM 804-3 issued October 21, 1997 by Secretary Martin F. Horn.

e. DC-ADM 804-4 issued April 29, 1998 by Secretary Martin F. Horn.

f. DC-ADM 804-5 issued October 30, 2000 by Secretary Martin F. Horn.

**2. Facility Policy and Procedures**

This document supersedes all facility policy and procedures on this subject.

**B. Cross Reference(s)**

1. Administrative Manuals

a. DC-ADM 801, Inmate Discipline

b. DC-ADM 802, Administrative Custody Procedures

c. DC-ADM 803, Inmate Mail and Incoming Publications

d. 1.2.4, Inmate Abuse Allegation Monitoring Process

e. 3.4.5, Photocopying Charges for Inmates

2. ACA Standards

a. Administration of Correctional Agencies: 2-CO-3C-01

b. Adult Correctional Institutions: 3-4271

c. Adult Community Residential Services: 3-ACRS-3D-07

d. Adult Correctional Boot Camp Programs: 1-ABC-3D-08

e. Correctional Training Academies: None

*DC-ADM 804, Inmate Grievance System*                                        ***Attachment A***

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P. O. BOX 598**
**CAMP HILL, PA  17001-0598**

| FOR OFFICIAL USE ONLY |
| --- |
| _____ |
| GRIEVANCE NUMBER |

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
| --- | --- | --- |
| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: | |
| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: | |

INSTRUCTIONS:
1.  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2.  State your grievance in Block A in a brief and understandable manner
3.  List in Block B any actions you may have taken to resolve this matter.  Be sure to include the identity of staff members you have contacted.

   **A.**   Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

   **B.**   List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____

Signature of Facility Grievance Coordinator                                         Date

WHITE Facility Grievance Coordinator Copy  CANARY File Copy   PINK Action Return Copy  GOLDEN ROD  Inmate Copy
Revised September 2000

**DC-ADM 804, Inmate Grievance System**                                   *Attachment B*

DC-804
Part 2

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE
TIAL REVIEW RESPONSE

GRIEVANCE NO.

| TO: (Inmate Name & DC No.) | FACILITY | HOUSING LOCATION | GRIEVANCE DATE |
|---|---|---|---|
| | | | |

The following is a summary of my findings regarding your grievance:

| it Name and Title of Grievance Officer | SIGNATURE OF GRIEVANCE OFFICER | DATE |
|---|---|---|
| | | |

**DC-ADM 804, Inmate Grievance System**
DC-804
Part 3

*Attachment C*
**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-** _____

DATE: _____
SUBJECT:   Grievance Rejection Form
TO: _____

| FOR OFFICIAL USE ONLY |
| --- |
| _____ |
| GRIEVANCE NUMBER |

FROM:   Facility Grievance Coordinator

The attached grievance is being returned to you because you have failed to comply with the provision(s) of DC-ADM 804, Inmate Grievance System:

1.  _____    Grievances related to the following issues shall be handled according to procedures specified in the policies listed and shall not be reviewed by the Facility Grievance Coordinator:

a.  DC-ADM 801-Inmate Disciplinary and Restricted Housing Unit Procedures
b.  DC-ADM 802-Administrative Custody Procedures
c.  other policies not applicable to DC-ADM 804.

2.  _____    Block B must be completed, as per the Instruction #3 of the Official Inmate Grievance Form.

3.  _____    The grievance does not indicate that you were personally affected by a Department or facility action or policy.

4.  _____    Group grievances are prohibited.

5.  _____    The grievance was not signed and/or dated.

6.  _____    Grievances must be legible and presented in a courteous manner.

7.  _____    The grievance exceeded the two (2) page limit.  Description needs to be brief.

8.  _____    Grievances based upon different events shall be presented separately.

9.  _____    The grievance was not submitted within fifteen (15) working days after the events upon which claims are based.

10. _____    You are currently under grievance restriction. You may not file any grievances until _____
                                                                                                      Date

11. _____    Grievance involves matter(s) that occurred at another facility and should be directed by the inmate to the appropriate facility.

12. _____    The issue(s) presented on the attached grievance has been reviewed and addressed previously.

# EXHIBIT D

4

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

IAL INMATE GRIEVANCE

GRIEVANCE NO. | 0173-96

| RIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| I, G, Baney | S.C.i. Huntingdon | 9-1-96 |

| (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Richard Wojtysak AF5977 | Richard Wojtysak |

| K ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| dically unable to work | C Block 136 cell |

TRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

Brief, clear statement of grievance:

Due to severe back, hip and leg pain I have had 2 mattresses for 20 years. In January 1995 my second mattress was taken. Since March 1, 1995 --- 1½ years --- I have tried to get my 2 mattresses back, with No results. S.C.i. Huntingdon refuses to Re-issue my second mattress to me, pain and suffering is not part of the sentence the courts imposed on me ----- 3-1-95 Dr. Misra Re approved 2 mattresses for me; 8-24-95 Dr. Misra again Re approved my 2 mattresses; 8-8-96 Dr. Mangino again Re approved my 2 mattresses ----- 8-30-96 Dr. Mohadjerin told me the X rays taken early August 1996 showed I have a degenerated disc in my spine also a curvature of the spine this is causing all the pain ----- this is the medical reason for 2 mattresses, a "medical necessity". S.C.i. Huntingdon Refuses to Re-issue my 2 mattresses. Talked with the following Staff: 3-1-95 Dr. Misra; 8-24-95 Dr. Misra; 12-19-95 Mrs Yarger;

B. Actions taken and staff you have contacted before submitting this grievance:

1-2-96 Mrs Yarger; March 1996 Mr Crilly; July 1996 Mrs Yarger; 8-8-96 Dr. Mangino; 8-12-96 Mrs Yarger; 8-12-96 Supt. Frank; 8-15-96 Mrs Yarger; 8-30-96 Dr. Mohadjerin; 9-3-96 Dr. Mangino ---- 1½ years to get my 2 mattresses BACK with No Results.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Kate R. Hall     9/10/96
Signature of Grievance Coordinator     Date

# EXHIBIT E

**DC-804**
**PART 1**

*11-29-97w*
*Cam Hill*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL PA. 17001-0598

0203-97

**OFFICIAL INMATE GRIEVANCE**    GRIEVANCE NO. | 0203-97

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Ms. Barey | S.C.i. Huntingdon Pa. | 11-25-97 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | c/c |
| Richard Wojtycak AF5977 | Richard Wojtyck | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| Medically unable to work | B-1-058 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

**A. Brief, clear statement of grievance**

On 11-24-97 Ms. K. Crilly unit manager told me I received another Memo for not being ready for count on 11-22-97. With Memo on 10-10-97 for same thing means I get more Memo and receive another Misconduct and I get 30 days in the hole. I received a class I Misconduct for same thing on 1-24-97 #961326 by C.O. J. Harris. I am penalized for a medical condition I did receive this... I am an insulin dependent diabetic. One of the problems with diabetes is Diabetic Fatigue. I get so extremely fatigued I fall asleep, there is No cure. This extreme fatigue can occur at any time night or day and there is Nothing I can do about it. I have explained this medical condition to Ms. Crilly - guards - doctors (Molodjian - Reiners) and hearing examiner - I was told - too bad. If you do not stand for count, you will receive a misconduct and threaten with a Transfer to "Far or Highlands". Doctors at other institutions in Penna. issue SLIPS to the Diabetic inmates stating iF they are asleep for count NO Misconduct Memo will be issued. Dr. Molodjian - Dr. Reiners - Med. Dept. REFUSE to issue me such a slip. It is not a question of iF I will fall asleep for count... BUT when I will fall asleep. I am being penalized for a medical condition which I have No control over. Why won't the Doctors - Med Dept. issue me a SLiP as

**B. Actions taken and staff you have contacted before submitting this grievance:**

I have talked with Dr. Molodjian - Dr. Reiners, P. Yaeger on numerous occasions, with Nurses etc.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____    11/26/97
Signature of Grievance Coordinator    Date

<u>**Wojtczak v. Pennsylvania Department of Corrections**</u>
**No. 1:01-CV-1163**

# EXHIBIT F

DC-804
Part 1    *1040*

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001-0598

FOR OFFICIAL USE ONLY
# 498
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Mr. Baney | SCI Huntingdon | 7-20-2001 |

FROM: (INMATE NAME & NUMBER)
Richard Wojtysk AF5977

SIGNATURE of INMATE:

WORK ASSIGNMENT:
medically unable to work

HOUSING ASSIGNMENT:
BA 1040 cell

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any actions you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

I have been classified as a Level 2 minimum security inmate. My behavior has demonstrated that I am not a security risk. I am housed at SCI Huntingdon a Level 3-4-5 maximum security facility. I have talked with my counselor, Mr. R. Leighty, and requested a transfer to a Level 2 minimum security facility. Mr. Leighty told me that he would send a VOTE SHEET to SCIH personel to approve or deny this transfer. Mr. Leighty did not tell me which personel. Also, Mr. Leighty told me that I must attend & complete the Sex Offenders program group program in which I must admit guilt to the crime of which I have been convicted before my transfer would be approved.

① Please tell me specifically which SCIH personel recieve this VOTE SHEET to approve or deny this transfer. AND

② Please tell me specifically which adm. directive states that I must complete this Sex offender/care group in which I have to admit guilt. I can not find this administrative directive in my inmate handbook.    Thank you

B. List actions taken and staff you have contacted, before submitting this grievance.

Mr. R. Leighty, counselor.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

D. Baney
Signature of Facility Grievance Coordinator

7-23-01
Date

# EXHIBIT G

7 Pages

DC-804
Part 1

RECEIVED
JUL 1 6 2003

SUPERINTENDENT'S ASST.

OFFICAL INMATE GRIEVANCE

C/c

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001-0598

C/c

FOR OFFICIAL USE ONLY

57020

GRIEVANCE NUMBER

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| Ms. Nightengale | SCi Lewikyllenh | 7-15-03 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE |
|---|---|
| Richard Wojtczak AF5977 | Richard Wojtczak AF5977 |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| medically unable to work | DA 1-1 |

INSTRUCTIONS:
1  Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2  State your grievance in Block A in a brief and understandable manner.
3  List in Block B the specific actions you have taken to resolve this matter informally.  Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance.  Additional paper may be used, maximum two pages.

Issue / subject : DA unit Showers _ _ _ _ _

I have several repiratory Conditions = COPD; some emphysema; shortness of breath. Other inmates have severe heart conditions.

The Showers Do Not have individual controls to adjust the hot and cold water. The water is too hot, and I get dizzy, short of breath, I almost pass out! Also there is No exhaust fan to Ventilate the heat and steam. If two or 3 inmates use the shower the heat and steam are even worse.

This situation presents a dangerous health condition!

Also there is now only one (1) shower hose w/ nozzle for at least ten (10) inmates who need to use this type of hose as I do.

on A unit the shower water (hot+cold) can be adjusted by the inmate.

B. List actions taken and staff you have contacted, before submitting this grievance. ~~Attach the copy of the DC-135A with the staff members office's response of your informal resolution attempt.~~

Officer Carter ; Officer Webb ; Capt. Williams.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Betsy Nightingale

Signature of Facility Grievance Coordinator

Due 7/29/03

7-16-03

Date

WHITE - Facility Grievance Coordinator Copy    CANARY - File Copy    PINK - Action Return Copy

<u>**Wojtczak v. Pennsylvania Department of Corrections**</u>
**No. 1:01-CV-1163**

# EXHIBIT H

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

| FOR OFFICIAL USE ONLY |
|---|
| 58172 |
| GRIEVANCE NUMBER |

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| MS. NIGHTINGALE | SCI (Appeal Highland) | 7-30-03 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE |
|---|---|
| Richard Wojtczak AFSTT | Richard Wojtczak |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| Included while at Work | RA 1-1 |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B the specific actions you have taken to resolve this matter informally. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages.

On July 29, 2003, Ms. STAIRS, records officer, gave me a DC-16E sentence status summary. This sentence status summary AGGREGATES the three (3) consecutive sentences I have. The sentences were imposed by the Court of Common Pleas in 1976 - 1977. The Pa. Dept. of Corrections / sd Jaw (Highland) Does NOT have the authority to AGGREGATE these sentences. 42 PA. C.S. 9757. Also, the "aggregation" of these sentences Violates and is in Violation of the EX POST FACTO CLAUSE of the United States Constitution. Please change my sentences to reflect the Actual sentences imposed by the Trial Court. ____ V. Comm. Pa Bureau Corrections, 450 A2d 392 (Pa Cmwlth 1982), US ex rel D'Agostino V. Keohane, 877 FD.1 1167, 1173 (3 Cir. 1989); Weaver V. Graham, 101 S.Ct 960 (1981)

**B.** List actions taken and staff you have contacted, before submitting this grievance. Attach the copy of the DC-135A with the staff member's response of your informal resolution attempt.

MS. STAIRS - Records Office
MS. SINES - Counselor

per
8-1-03
RW

Your grievance has been received and will be processed in accordance with DC-ADM 804.

| Betsy Nightingale | Rec 8/13/03 | 7-31-03 |
|---|---|---|
| Signature of Facility Grievance Coordinator | | Date |

EX 5

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy
Revised

# EXHIBIT I



| | |
|---|---|
| **POLICY STATEMENT** | |
| **Commonwealth of Pennsylvania ● Department of Corrections** | |

| Policy Subject: | Policy Number: |
|---|---|
| **REASONABLE ACCOMMODATIONS FOR INMATES WITH DISABILITIES** | **DC-ADM 006** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **June 28, 1999** | *[signature]*<br>**Martin F. Horn** | **August 16, 1999** |

## I. AUTHORITY

The authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

The purpose of this document is to establish policy and procedure regarding reasonable accommodations for disabled inmates who qualify under the Americans with Disabilities Act (ADA).

## III. APPLICABILITY

This policy is applicable to all Department of Corrections employees, contract staff, and inmates.

## IV. DEFINITIONS

### A. ADA

The Americans with Disabilities Act (ADA) is a comprehensive civil rights law for people with disabilities. The Act prohibits a "public entity" from discriminating against a "qualified individual with a disability" because of that individual's disability.[1]

---

1 Federal Register, Vol. 56, No. 144, Friday, July 26, 1991 (28 C.F.R. §35.102)

**B. Auxiliary Aids and Services**

Refers to qualified interpreters, note takers, transcription services, written materials, telephone handset amplifiers, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions.[2]

**C. Centralized ADA Coordinator**

The Chief Hearing Examiner will serve as the Centralized ADA Coordinator for reviewing ADA grievances pursuant to Department policy **DC-ADM 804, "Consolidated Inmate Grievance Review System"**. At the time of this publication, the Centralized ADA Coordinator is Chief Hearing Examiner Robert S. Bitner. The address for the Centralized ADA Coordinator is Training Academy, 1451 North Market Street, Elizabethtown, PA, 17022-1299. His phone number is (717) 367-9070.

**D. Department**

The Pennsylvania Department of Corrections.

**E. Direct Threat**

A significant risk of substantial harm to the health or safety of any person with a disability that cannot be eliminated or reduced by reasonable accommodation.

**F. Disability**

**For purposes of coverage** under the Americans with Disabilities Act (ADA) a person with a **qualified disability** is defined as an individual who: [3]

1.    has a **physical or mental impairment** that **substantially limits one or more major life activities**; or

2.    has a record or history of such an impairment; or

3.    is perceived or regarded as having such an impairment.

The following conditions **do not** constitute disabilities: transvestitism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, other sexual disorders, compulsive gambling, kleptomania,

---

2 ADA Title II Action Guide (28 C.F.R. §35.104)
3 ADA Title II Action Guide (28 C.F.R. §35.104)

pyromania, psychoactive substance abuse disorders resulting from current illegal use of drugs, the current use of illegal drugs, homosexuality or bisexuality.[4]

## G. Essential Job Function

The fundamental job duties of the position the individual with a disability holds or seeks. The term underline essential function does not include the marginal functions of the position.

## H. Facility ADA Coordinator

The Facility Health Care Administrator will serve as the Facility ADA Coordinator for reviewing ADA claims submitted by inmates.

## I. Major Life Activities

Means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[5]

## J. Physical or Mental Impairments (which affects a major life activity)

Physical impairments include physiological disorders or conditions; cosmetic disfigurement; or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs (which would include speech organs that are not respiratory such as vocal cords, soft palate, tongue, etc.); respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.[6]

Specific examples of physical impairments include orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, HIV disease (symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.[7]

Mental impairments include mental or psychological disorders, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.[8]

## K. Qualified Individual with a Disability

An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

---

4 ADA Title II Action Guide (28 C.F.R. §35.104)
5 ADA Title II Action Guide (28 C.F.R. §35.104)
6 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
7 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)
8 Department of Justice Code of Federal Regulations reprint (28 C.F.R. §36.104)

requirements for the receipt of services or the participation in programs or activities provided by a public entity.[9]

### L. Reasonable Accommodation

A modification or adjustment to a job or work environment that will enable a qualified applicant or employee with a disability to participate in the application process or perform all the essential job functions and which does not create an undue hardship for the employer.

### M. Undue Hardship

An action requiring significant difficulty or expense in this implementation of an accommodation under this Act.

## V.  POLICY

It is the policy of the Department of Corrections to establish procedure for an inmate to request an accommodation for a qualified disability under the Americans with Disabilities Act (ADA) that affects a major life activity and to ensure that:

A. Every inmate, including an inmate with an ADA qualified disability, shall be housed in a manner that provides for his or her safety and security, with security being the overriding concern; and that

B. Reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on the Department; and that

C. Reasonable accommodations will be made to the physical structure of housing used by inmates with ADA qualified disabilities to accommodate for the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;[10] and that

D. Reasonable accommodations will be made to facility programs and activities to permit participation by ADA qualified inmates with disabilities;[11] and that

E. No ADA qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department.[12]

---

9 ADA Title II Action Guide (28 C.F.R. §35.104)
10 ACA Standard ACI-3-4137, 1-ABC-2C-08, 3-ACRS-2C-04
11 ACA Standard 1-ABC-3D-04
12 ACA Standard ACI Supplement 1998 3-4265, 3-4380-1, 3-ACRS-3D-03

## VI. PROCEDURES

### A. Facility Placement

#### 1. Facility Placement[13]

In addition to all other factors considered by the Department in making facility assignments of inmates, consideration may be given to facilities and programming available at various facilities to accommodate an inmate's particular disability(s).[14]

#### 2. Community Corrections Center Placement

In addition to all other factors considered by the Department in making assignments of inmates for Community Corrections Placement, disabled inmates who are accepted for Community Corrections Placement, shall be placed in Community Corrections Centers or contracted facilities that provide accommodations according to the individual needs of the inmate.

#### 3. Transfers

The sending facility is responsible for material submitted requesting the transfer of disabled inmates from one facility to another. Clear indication that the inmate is disabled and the proposed level of accommodation and resulting services needed must be included.[15]

#### 4. Request for Accommodation

a. An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department shall submit a written request for accommodation on form **DC-135A, "Inmate's Request to Staff Member"** to the Facility ADA Coordinator or designee.

b. The **DC-135A** must include the inmate's specific disability(s) and the specific accommodation or service the inmate seeks.

c. The Facility ADA Coordinator or designee shall evaluate the request, assess the claim for medical validity, evaluate the inmate's needs (if any), and recommend accommodations that may be necessary.

d. The Facility ADA Coordinator will submit the recommendations to the Facility Manager and the Regional Deputy Secretary for final determination. The safety and security of the inmate and the security of the facility will always be the overriding concern.

---

13 ACA Standard ACI 3-4360
14 ACA Standard 3-ACRS-4A-01, 3-ACRS-5A-01
15 ACA Standard ACI 3-4360

e. The Facility Manager will notify the inmate in writing of the final determination within 20 working days of the inmate making the initial request.

f. An inmate who has a disability that he or she believes is not being reasonably accommodated by the Department may submit a grievance under Department policy **DC-ADM 804, "Consolidated Inmate Grievance Review System"**. Such grievance must state the inmate's specific disability or disabilities and the specific accommodation or service the inmate seeks. The Centralized ADA Coordinator will conduct final review of all ADA grievances pursuant to **DC-ADM 804**.

## B. Inmate Work Programs

1. No inmate will be discriminated against from participating in work programs due to a disability. The Department is required to make reasonable accommodations to the known disability of qualified inmate applicants with disabilities. Compensation and job titles will be in accordance with Department policy, **7.9.1, "Inmate Compensation System"**.[16]

2. Accommodations that pose undue hardships for the Department or pose a threat to security need not be provided. Inmates will not be placed in a work program which clearly jeopardizes their safety or security.

## VII. SUSPENSION DURING EMERGENCY

In an emergency or extended disruption of normal facility operation, any provision or section of this policy may be suspended by the Secretary or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

---

16 ACA Standard 1-ABC-5A-03, ACI 3-4396

## IX.  RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

#### 1. Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

#### 2. Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee.  This manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

### B. Distribution of Policy

#### 1. General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.  SUPERSEDED POLICY AND CROSS-REFERENCE

### A. Superseded Policy

#### 1. Department Policy

08.02.18, Americans with Disabilities Act of 1990 , issued June 17, 1996 by Secretary Martin F. Horn

#### 2. Facility Policy and Procedure

This document supersedes all facility policy and procedures on this subject.

**B. Cross References**

   **1. Administrative Manuals**

      **a.** DC-ADM 804, "Consolidated Inmate Grievance Review System"

      **b.** 07.09.01, "Inmate Compensation System"

   **2. Accreditation Standards**

      **a. Administration of Correctional Agencies** – 2-CO-4E-01

      **b. Adult Correctional Institutions** - 3-4343, 3-4344, 3-4345, 3-4346, 3-4356, 3-4360, 3-4265, 3-4380-1, 3-4137, 3-4396, 3-4272, 3-4273, 3-4358

      **c. Adult Community Residential Services** – 3-ACRS-4E-28, 3-ACRS-2C-09, 3-ACRS-3D-03, 3-ACRS-4A-01, 3-ACRS-5A-01, 3-ACRS-4E-08, 3-ACRS-4E-11,3-ACRS-2A-01, 3-ACRS-2A-02, 3-ACRS-4E-22

      **d. Adult Correctional Boot Camp Programs** – 1-ABC-4E-19, 1-ABC-4E-20, 1-ABC-4E-21, 1-ABC-4E-23, 1-ABC-2A-01, 1-ABC-2A-02, 1-ABC-2C-08, 1-ABC-3D-04, 1-ABC-4A-03, 1-ABC-5A-03

      **e. Correctional Training Academies** – None